UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MICHIGAN

JENNA RIES, on behalf of herself and all
similarly situated,

            Plaintiffs,

v.

McDONALD'S USA, LLC, McDONALD'S
CORPORATION, and MLMLM CORP.,
d/b/a MCDONALD'S

Case No_____

District Judge_____

Magistrate Judge_____

**NOTICE OF REMOVAL
TO THE UNITED STATES
DISTRICT COURT FOR
THE WESTERN DISTRICT
OF MICHIGAN,
SOUTHERN DIVISION**

<u>Removed from:</u>
Ingham County Circuit Court
Case No.: 19-829-CD
Hon. James S. Jamo

---

**EXHIBIT A**
**NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT
<u>FOR THE WESTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION</u>**

Approved, SCAO

| Original - Court | 2nd copy - Plaintiff |
|---|---|
| 1st copy - Defendant | 3rd copy - Return |

| STATE OF MICHIGAN | | CASE NO. |
|---|---|---|
| 30th | JUDICIAL DISTRICT | *19.829* -CD |
| | JUDICIAL CIRCUIT | **SUMMONS** | |
| | COUNTY PROBATE | | |

Court address
315 S. Jefferson Street, Mason, MI 48854

Court telephone no.
517-483-6500

| Plaintiff's name(s), address(es), and telephone no(s). | | Defendant's name(s), address(es), and telephone no(s). |
|---|---|---|
| Jenna Ries, on behalf of herself and all similarly situated | v | MLMLM Corporation c/o Michael L. Dickinson 200 W. Grand River Avenue Williamston, MI 48895 |

Plaintiff's attorney, bar no., address, and telephone no.
Darcie R. Brault (P43864)
McKnight, Canzano, Smith, Radtke & Brault, P.C.
423 N. Main Street, Suite 200
Royal Oak, MI 48067
248-354-9650

Instructions: Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

## Domestic Relations Case

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

## Civil Case

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court, where

it was given case number _____ and assigned to Judge _____.

The action ☐ remains ☐ is no longer pending.

Summons section completed by court clerk.

| SUMMONS |
|---|

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:

1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date | Expiration date* | Court clerk |
|---|---|---|
| NOV 1 2 2019 | FEB 1 1 2020 | LORI LEAVE |

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01 (9/19) **SUMMONS**

MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

| | SUMMONS |
|---|---|
| **PROOF OF SERVICE** | Case No.        19-829-CD |

TO PROCESS SERVER: You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

## CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE

| ☐ **OFFICER CERTIFICATE** | OR | ☐ **AFFIDAVIT OF PROCESS SERVER** |
|---|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that:  (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult, and I am not a party or an officer of a corporate party (MCR 2.103[A]), and that:  (notarization required) |

☐ I served personally a copy of the summons and complaint,

☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,

together with  Plaintiff's First Set of Interrogatories to Defendant MLMLM Corporation and Plaintiff's First Requests for
_____
         List all documents served with the summons and complaint
Production of Documents to Defendant MLMLM Corporation _____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |

I declare under the penalties of perjury that this proof of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled | Fee $ | | Signature |
|---|---|---|---|---|
| Incorrect address fee $ | Miles traveled | Fee $ | TOTAL FEE $ | Name (type or print) |

Title

Subscribed and sworn to before me on _____ , _____ County, Michigan.
                                                        Date

My commission expires: _____    Signature: _____
                                          Date                    Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

## ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with _____
                                                                                    Attachments

_____ on _____
                                  Day, date, time

_____ on behalf of _____

Signature

STATE OF MICHIGAN
INGHAM COUNTY CIRCUIT COURT

JENNA RIES, on behalf of herself and all
those similarly situated,

      Plaintiffs,

Case No. 19-829 -CD

HON. JUDGE JAMES S. JAMO

v.

McDONALD'S USA, LLC, McDONALD'S
CORPORATION, and MLMLM
CORPORATION d/b/a McDONALD'S

      Defendants.

---

DARCIE R. BRAULT (P43864)
McKnight, Canzano, Smith, Radtke
& Brault, P.C.
423 N. Main Street, Suite 200
Royal Oak, MI 48067
(249) 354-9650
dbrault@michworkerlaw.com

GILLIAN THOMAS*
American Civil Liberties Union
Women's Right Project
125 Borad Street
New York, NY 10004
(212) 284-7356
gthomas@aclu.org

EVE H. CERVANTEZ*
ELIZABETH VISSERS*
Altshuler Berzon, LLP
177 Post Street, Suite 300
San Francisco, CA 94108
(415) 421-7151
ecervantez@altshulerberzon.com
evissers@altshulerberzon.com

Attorneys for Plaintiff and the proposed class

* Pro hac vice motions to be filed

---

## COMPLAINT AND JURY DEMAND

There is no other pending or resolved civil
action arising out of the transaction or
occurrence alleged in this complaint.

NATURE OF THE ACTION

1.      This is a civil rights action brought by Plaintiff Jenna Ries on behalf of herself

and all others similarly situated against her employers McDonald's USA, LLC, McDonald's

Corporation, and MLMLM Corporation d/b/a McDonald's (together "McDonald's" or

"Defendants") for sexual harassment in violation of the Michigan Elliott-Larsen Civil Rights

Act, Mich. Comp. Laws §37.2101, *et seq.* ("ELCRA").

2.      Defendants' conduct complained of herein also violates Title VII of the Civil

Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII").  On November 8, 2019,

Plaintiff Jenna Ries filed a charge of sex discrimination and sexual harassment with the United

States Equal Employment Opportunity Commission ("EEOC").  After the EEOC issues a right to

sue letter, this action will be amended to reflect that the events and conduct giving rise to this

action also violate Title VII.

3.      McDonald's, one of the largest employers in the country, creates and permits a

toxic work culture from the very top—as reflected by former-CEO Steve Easterbrook's recent

firing for an inappropriate relationship with a subordinate in violation of company policy—and

throughout its thousands of restaurants within the United States that employ over one million

workers.

4.      McDonald's workers nationwide are telling their stories of routine, severe abuse.[1]

Among them are teenagers, to whom the company promises "America's best first job" and

instead delivers predation.[2]  McDonald's employees are literally taking to the streets to protest

---

[1]      *See, e.g.*, Áine Cain, *Gretchen Carlson Spotlighted McDonald's Workers Speaking Out Against Sexual Harassment at the Fast Food Giant in Her New Series*, BUSINESS INSIDER (Jan. 15, 2019), https://www.businessinsider.com/mcdonalds-workers-sexual-harassment-gretchen-carlson-show-2019-1.
[2]      *See, e.g.*, Taja Davis, *Tucson Teen Takes on McDonald's; Sexual Harassment Claims*, KGUN 9 (May 22, 2019), https://www.kgun9.com/news/local-news/tucson-teen-takes-on-mcdonalds-sexual-harassment-claims.

the mistreatment that is endemic to their daily lives at the company.[3] They also describe swift and severe retaliation for objecting to such mistreatment.[4] And they are speaking out about the losses caused by harassment at McDonald's—not just wages and benefits, but also their emotional well-being and sense of dignity.[5]

5.    In one Michigan restaurant location that is emblematic of this systemic problem, managers subjected workers to pervasive sexual harassment and a hostile work environment, including groping and physical assaults as well as sexually-charged verbal taunts, insults, and derisive comments. The General Manager stood by and did nothing to protect the workers.

6.    Despite being on notice of pervasive problems of sexual harassment nationwide, McDonald's fails to address such unlawful sexual harassment and the company culture that enables it. McDonald's pays lip service to training its restaurant staff, but does nothing to assure such training actually takes place or actually succeeds in preventing harassment. On information and belief, McDonald's also does nothing to train managers in responding to harassment complaints, or to hold accountable those managers who allow harassment to flourish. And McDonald's does nothing to monitor serial harassers or problem restaurants, permitting management to simply shuffle harassers around various restaurants, where they harass anew.

---

[3]    *See, e.g.*, Heather Haddon, *McDonald's Workers Strike to Protest Pay and Harassment Complaints*, THE WALL STREET JOURNAL (May 23, 2019), https://www.wsj.com/articles/mcdonalds-workers-strike-to-protest-pay-and-harassment-complaints-11558627417; Kim Elsesser, *McDonald's Workers Are Striking Over Sexual Harassment, But Will the Company Act?*, FORBES (Sept. 17, 2018), https://www.forbes.com/sites/kimelsesser/2018/09/17/mcdonalds-workers-strike-over-sexual-harassment-but-will-mcdonalds-act/#19ebc1b43f26.
[4]    *See, e.g.*, Christopher Yee, *Employee to Feds: Sexual Harassment Runs Rampant at Monterey Park McDonald's*, PASADENA STAR-NEWS (May 24, 2019), https://www.pasadenastarnews.com/2019/05/24/employee-to-feds-sexual-harassment-runs-rampant-at-monterey-park-mcdonalds/.
[5]    *See, e.g.*, Delisha Rivers, *I'm One of 25 People Who Filed a Sexual Harassment Complaint against McDonald's. Here's My Story.*, VOX (May 30, 2019), https://www.vox.com/first-person/2019/5/30/18644181/mcdonalds-sexual-harassment-me-too.

3

7.      To remedy these systemic problems and civil rights violations, Plaintiff asks this

Court to (a) certify a class of all female employees who worked in a position below that of

General Manager at Defendants' McDonald's restaurant located at 730 North Cedar Street in

Mason, Michigan, within three years prior to the date of filing of this complaint; (b) enter an

order declaring that McDonald's violates the civil rights of its employees under ELCRA; (c)

award damages of at least $5 million to compensate Plaintiff and the class members for their

emotional distress and other injuries; and (d) enter an order requiring that McDonald's take

adequate steps to stop and prevent sexual harassment by implementing effective worker-centered

anti-harassment policies and procedures, worker-led mandatory training, a safe system of

reporting, adequate investigation and discipline, and protections against retaliation, as required to

avoid continued violations of ELCRA and Title VII.

## PARTIES

8.      Plaintiff Jenna Ries (hereinafter "Ries" or "Plaintiff") is a 32-year-old resident of

Livingston County, Michigan.  Ries brings this action individually and on behalf of the proposed

Class.

9.      Defendant MLMLM Corporation ("MLMLM") is a Michigan-registered domestic

profit corporation, doing business as "McDonald's," that operates 11 franchised restaurants in

and around Lansing, Michigan.  Specifically, the 11 franchised restaurants are located in

Lansing, Eaton Rapids, Holt, Mason, Williamston, Webberville, Fowlerville, and Howell, which

lie in Eaton, Ingham, and Livingston Counties in Michigan.[6]

---

[6]      The specific addresses of the 11 franchised stores operated by MLMLM are as follows:

| | | | |
|---|---|---|---|
| 9134 SPICERVILLE HWY | EATON RAPIDS | MI | Eaton County |
| 2775 EATON RAPIDS RD | LANSING | MI | Ingham County |
| 4700 SOUTH CEDAR STREET | LANSING | MI | Ingham County |
| 2400 NORTH CEDAR STREET | HOLT | MI | Ingham County |
| 2530 E JOLLY ROAD | LANSING | MI | Ingham County |

4

10.   Defendant MLMLM operates a McDonald's restaurant located at 730 North Cedar Street, Mason, Michigan, 48854, in Ingham County, and conducts regular business from that location.

11.   Michael L. Dickerson ("Dickerson") is the President of Defendant MLMLM.

12.   Defendant McDonald's USA, LLC ("McDonald's USA") is a Delaware limited liability company that has its principal place of business in Illinois, and operates restaurants in all 50 states, including Michigan.

13.   Defendant McDonald's Corporation is a Delaware corporation that has its principal place of business in Illinois, and operates restaurants in all 50 states, including Michigan.

14.   Defendants McDonald's USA and McDonald's Corporation (together, "McDonald's Corporate Defendants") contract with numerous franchisees that jointly operate McDonald's restaurants throughout Michigan, including Defendant MLMLM.

15.   The McDonald's Corporate Defendants tightly control the working conditions of employees at McDonald's franchised restaurants, including at restaurants operated by Defendant MLMLM, with respect to Human Resources policies, the physical work environment, required worker and manager training, and discipline and firing of workers, among others.  The McDonald's Corporate Defendants also provide guidance to Defendant MLMLM and other franchisees with respect to training about and prevention of sexual harassment, and reporting and

---

| | | | |
|---|---|---|---|
| 730 N CEDAR | MASON | MI | Ingham County |
| 614 KIPP RD | MASON | MI | Ingham County |
| 200 W GRAND RIVER AVE | WILLIAMSTON | MI | Ingham County |
| 805 HIGHVIEW DRIVE | WEBBERVILLE | MI | Ingham County |
| 945 SOUTH GRAND RIVER | FOWLERVILLE | MI | Livingston County |
| 2205 W GRAND RIVER RD | HOWELL | MI | Livingston County |

investigating sexual harassment complaints, but that guidance is wholly inadequate and ineffective.

16.    Together, all Defendants jointly operated the McDonald's restaurant at 730 North Cedar Street, Mason, Michigan during the relevant period and jointly employed all workers there, including Plaintiff, class members, and the General Managers.

17.    MLMLM acts as an agent of McDonald's USA and McDonald's Corporation, and/or the McDonald's Corporate Defendants hold out MLMLM as their agent.

18.    Plaintiff and other proposed class members reasonably believed that they worked for the global McDonald's corporation headquartered in Illinois, that is, McDonald's USA and McDonald's Corporation. They wore a McDonald's uniform, served McDonald's products, and followed McDonald's policies and practices; they were not informed that only Defendant MLMLM was their employer. Plaintiff and the other proposed class members reasonably believed that they were going to work for a large corporate employer with adequate resources dedicated to Human Resources issues, including the prevention and redress of sexual harassment.

19.    McDonald's USA and McDonald's Corporation are liable for the acts of MLMLM because MLMLM was the apparent agent of McDonald's USA and McDonald's Corporation.

## JURISDICTION AND VENUE

20.    At least some of the events giving rise to this cause of action occurred in Ingham County, Michigan.

21.    At least some of the injuries suffered by Plaintiff and the proposed class members occurred and continue to occur in Ingham County, Michigan.

22.     Venue is proper in this court in that the restaurant in which the complained of harassment took place is located in Ingham County, at 730 North Cedar Street, Mason, Michigan.

## FACTUAL ALLEGATIONS

A.      **Plaintiff was Subjected to Severe or Pervasive Sexual and Sex-Based Harassment and a Sexually Hostile Work Environment**

23.     Plaintiff worked at the McDonald's restaurant located at 730 North Cedar Street in Mason, Michigan (the "730 North Cedar Street restaurant"), from the fall of 2017 to March 2019.

24.     Plaintiff was originally hired as a crew member, but after three months, she was promoted to "swing manager" because of her good performance and previous managerial experience.

25.     When she first started working at McDonald's, Plaintiff was required to sign a paper saying that she would not sexually harass her coworkers, but she was not given a copy to keep, nor was she provided with any other training regarding sexual harassment or how to report it.

26.     Upon becoming a swing manager, Plaintiff received no specific training regarding management obligations to prevent or remedy harassment.

27.     As soon as Plaintiff started working at the 730 North Cedar Street restaurant in the fall of 2017, she was subjected to, and witnessed, sexual and sex-based harassment.

28.     A male swing manager frequently called Plaintiff a "bitch," "cunt," "slut," and "whore" in front of multiple other co-workers, including the General Manager.

7

29.    Beyond the verbal taunts, Plaintiff endured routine physical assaults by the swing manager. He frequently grabbed her body parts, including her crotch, breasts, and buttocks. He pulled her hair, and pushed her into other workers.

30.    Once, when he was working next to Plaintiff in the kitchen, the swing manager placed his penis in Plaintiff's hand.

31.    On one occasion, Plaintiff walked into the walk-in freezer to retrieve supplies, and the swing manager followed her inside and shoved her up against one of the walls. She managed to push him off of her and ran out.

32.     When the swing manager harassed her, Plaintiff told him, "stop," "no," "leave me alone," and "do not touch me." He responded by yelling at her and threatening to get her fired.

33.    The swing manager routinely threatened to get Plaintiff fired for not agreeing to his sexual propositions. As a result, she was frequently worried that she would lose her job.

34.    The General Manager regularly was present when the swing manager made his outrageous and offensive comments to Plaintiff and others, but did nothing to stop him.

35.    Within six months of Plaintiff's hire, around March 2018, Plaintiff requested a transfer to another McDonald's location because she could not handle the severe and pervasive harassment to which she was being subjected, and its negative effects on her.

36.    The General Manager said a transfer was not possible.

37.    Plaintiff also complained multiple times to the General Manager about the swing manager's harassment. When she did, the General Manager would promise to talk to the swing manager, but the harassment continued.

8

38.    At one point, Plaintiff asked not to be scheduled with the swing manager. The General Manager complied for a couple of days, but then started scheduling Plaintiff and the swing manager together again.

39.    Plaintiff was unaware of any HR Department outside of the regular chain of command to which she could report the harassment. On information and belief, Defendant MLMLM does not maintain a separate HR Department, and, although McDonald's Corporate Defendants do maintain an HR Department, that HR Department refuses to assist workers at franchise restaurants, including Plaintiff and class members here.

40.    Because of pervasive harassment from the swing manager, and the generally hostile work environment that she was forced to endure, Plaintiff often came home from work crying. She felt physically ill. The harassment negatively affected her relationship with her boyfriend and with her father. The harassment caused Plaintiff severe emotional distress and anxiety.

41.    Plaintiff dreaded going to work. She only went because she needed the money.

42.    Plaintiff also suffered severe emotional distress and anxiety for fear that she would be fired for rejecting the swing manager's verbal and physical advances and would be unable to pay her rent or other bills.

43.    Because of the meager pay she made at McDonald's, Plaintiff was unable to afford the medical assistance she needed to cope with the psychological effects of the sexual harassment.

44.    Finally, in March 2019, the swing manager lied about Plaintiff's behavior toward other workers, culminating in a meeting between Plaintiff and the District Manager, who

supervised multiple restaurants, including the 730 North Cedar Street restaurant. Plaintiff reported the harassment to which she had been subjected.

45.    Although Plaintiff was transferred to another McDonald's location after reporting the harassment to the District Manager, the male swing manager remained employed at the 730 North Cedar Street restaurant, as did the General Manager who had done nothing to respond to Plaintiff's complaints.

46.    Plaintiff continues to suffer emotional distress and other negative effects from the roughly year-and-a-half of severe harassment she was forced to endure.

B.    **McDonald's Employees are Subjected to Severe or Pervasive Sexual and Sex-Based Harassment and a Sexually Hostile Work Environment**

47.    In performing their jobs, Plaintiff and prospective class members were chronically subjected to a sexually hostile work environment resulting from Defendants' acquiescence in severe or pervasive sexual harassment and Defendants' failure to have in place effective policies and practices to prevent and address sexual harassment.

48.    Workers at the 730 North Cedar Street restaurant frequently observed and experienced sexual harassment.

49.    The swing manager who harassed Plaintiff also harassed many other women and girls.

50.    Workers at the 730 North Cedar Street restaurant referred to this swing manager as "the minor violator" and an "HR nightmare," because his propensity for sexually harassing female workers, including underage girls, was so outrageous and visible.

51.    For example, the swing manager came into work on many occasions complaining about his girlfriend, and would openly exclaim that he wanted to "get with" different female workers.

52.    He would directly tell female workers that he wanted to have sex with them, and would also make comments to them about other female workers.  For example, referring to a third female worker, he would tell a female worker things like "I'm gonna fuck your best friend," and "Oh my god, look at your friend's ass."

53.    The swing manager also suggested that female workers should engage in a "threesome" with him.

54.    He also asked female workers, "How much does it take to get to bed?"

55.    The swing manager, who was 32, also was rumored to have been dating one of the crew members who was a minor.  Relatedly, the swing manager and other managers had a running joke about a countdown to date one of their underage subordinates.  The swing manager often focused his attention on new young female employees.

56.    The swing manager also frequently touched female workers inappropriately.

57.    The swing manager would often come up to female workers as they were working and comment on and touch their bodies, often their buttocks, without their consent.

58.    The swing manager would tickle and hug other workers, including managers.

59.    The swing manager routinely touched female workers' breasts and buttocks, and sometimes even "humped" female workers.

60.    The harassment also often veered to the violent: the swing manager frequently kicked female workers in the rear end, and one time, the swing manager hit a female worker on the buttocks with a metal muffin paddle.

61.    The swing manager was so sexually aggressive toward female workers that, on information and belief, he made at least one harassing comment (and often committed several physical assaults) every shift he worked.

11

62.    Because the swing manager engaged in this conduct, including in the presence of and even toward the General Manager, some other male workers followed his example and acted in a similar way.[7]

63.    Workers would often touch each other inappropriately on the job, such as by tickling each other, hugging, making dirty jokes, punching each other, sticking a finger in other workers' ears, and grabbing other worker's buttocks. Nobody in management took action to end or prevent such harassment and sexually hostile work environment, even though the General Manager was aware of the conduct.

64.    Because the 730 North Cedar Street restaurant was small, employees worked in close proximity to one another. Consequently, they regularly witnessed, were exposed to, and were aware of harassing conduct even when it was directed at others.

65.    This common knowledge and awareness of the pervasive incidents of sexual harassment contributed to and created a hostile work environment for all female workers at the 730 North Cedar Street restaurant. A reasonable person would perceive such constant and open harassment of female workers as creating an employment environment that was intimidating, hostile, and/or offensive toward women.

66.    The work environment at the 730 North Cedar Street restaurant that female workers were forced to endure was permeated with sexual harassment so severe or pervasive as to make the restaurant an objectively abusive and hostile workplace for women, thereby altering the terms of their employment.

---

[7]    Studies have found that male employees are more willing to engage in sexual harassment in environments where sexist behavior and sexual harassment is modeled by others. *See* John B. Pryor et al., *A Social Psychological Analysis of Sexual Harassment: The Person/Situation Interaction*, 42 J. VOCATIONAL BEHAV. 68, 78–79 (1993).

67.    Workers, including Plaintiff, were provided with little information about what constituted sexual harassment or McDonald's policy about such harassment, and were not provided with information about how to report sexual harassment.

68.    The General Manager witnessed much of this harassment and was aware of the sexually hostile work environment, but took no action to discipline the harassers or otherwise prevent the harassment.

69.    Workers, including Plaintiff, reported the sexual harassment and the resulting hostile work environment to which they and others were subjected to the General Manager, but the General Manager took no remedial action to address the harassment. Instead, the General Manager told the workers, for example, that they were "being dramatic" or that the harasser was "just joking." On the numerous occasions that workers reported that the swing manager had smacked a female worker's buttocks in view of the security cameras, the General Manager would often laugh alongside the swing manager even after reviewing the tape. The General Manager did not suggest any remedy for the ongoing harassment.

70.    Research shows that what has been termed the "organizational climate" around sexual harassment in a workplace is the most important factor for—that is, the factor with the greatest statistical effect on—whether workers are subjected to sexual harassment in their workplace.[8]

71.    The "organizational climate" is created by a workplace's policies and practices concerning sexual harassment, including formal written guidelines for behavior, procedures for

---

[8]    Chelsea R. Willness et al., *A Meta-Analysis of the Antecedents and Consequences of Workplace Sexual Harassment*, 60 PERSONNEL PSYCHOL. 127, 143 (2007).

13

filing grievances and investigating complaints, and education and training programs, as well as implementation, prevention, and enforcement practices.[9]

72.    Three aspects of an organizational climate that are particularly problematic are a perceived risk to victims for complaining, a lack of sanctions against offenders, and the perception that one's complaints will not be taken seriously.[10]

73.    Thus, an organization's actual and perceived ability to recognize, penalize, and reduce sexual harassment influences whether and how it manifests in the workplace.  Research shows that perceived managerial lenience in effectively handling sexual harassment in the workplace is associated with higher incidences of such conduct.[11]

74.    The mere existence of codes of conduct prohibiting sexual harassment as the main or sole method to mitigate sexual harassment is not effective; institutional action is necessary.[12]

75.    Individuals who self-identify as working in environments where they believe that reports of sexual harassment will be ignored and whistleblowers will be punished also report experiencing more sexual harassment.[13]

---

[9]    *Id.* at 133–34.
[10]   *Id.*
[11]   *Id.* at 143; Melanie S. Harned et al., *Sexual Assault and Other Types of Sexual Harassment by Workplace Personnel: A Comparison of Antecedents and Consequences*, 7 J. OCCUPATIONAL HEALTH PSYCHOL. 174, 183 (2002); Louise F. Fitzgerald et al., *Antecedents and Consequences of Sexual Harassment in Organizations: A Test of an Integrated Model*, 82 J. APPL. PSYCHOL. 578, 584 (1997); Charles L. Hulin et al., *Organizational Influences on Sexual Harassment*, *in* SEXUAL HARASSMENT IN THE WORKPLACE: PERSPECTIVES, FRONTIERS, AND RESPONSE STRATEGIES 127–50 (Margaret S. Stockdale ed., Sage Publications 4th ed. 1996).
[12]   James E. Gruber, *The Impact of Male Work Environments and Organizational Policies on Women's Experiences of Sexual Harassment*, 12 GENDER & SOCIETY 301, 316 (1998).  These findings are similar to the conclusions of previous studies of bullying in the workplace, which find that such behavior positively correlates with laissez-faire management approaches to dealing with interpersonal conflict or harassment. *See, e.g.,* Helena Cooper-Thomas et al., *The Impact of Bullying on Observers and Targets*, 14 N.Z. J. HUM. RESOURCES MGMT. 82, 83–84 (2014).
[13]   Louise F. Fitzgerald et al., *Antecedents and Consequences of Sexual Harassment in Organizations: A Test of an Integrated Model*, 82 J. APPL. PSYCHOL. 578, 584 (1997).

14

76.    For this reason, Human Resources policies can have the effect of *promoting* sexual harassment in the workplace if they are perceived as lacking in formal procedure and being inattentive to reports or reporters of sexual harassment.[14]

77.    McDonald's failure to take comprehensive action to stop and prevent harassment at the 730 North Cedar Street restaurant signaled that harassment was permitted, and that managers and harassers would not be held accountable.  Defendants' failure to implement effective policies and procedures to recognize, penalize, and prevent sexual harassment created the circumstances necessary for individual harassers to act on their proclivities for harassment.

78.    McDonald's is aware of the rampant sexual harassment at its restaurants nationwide.  On information and belief, hundreds or even thousands of women have complained about sexual harassment at McDonald's restaurants, and dozens of women have filed lawsuits or charges of discrimination.  Despite being on notice of systemic sexual harassment, McDonald's has failed to take the institutional action necessary to adequately address and prevent sexual harassment of its workers.

79.    This inaction by Defendants facilitated a culture of sexual harassment and caused Plaintiff and other class members to be subjected to sexual harassment and a hostile work environment.

80.    The constant harassment, and Defendants' failure to stop it, caused workers to suffer emotional distress, humiliation, indignity, outrage, embarrassment, and harm to reputation, among other things.[15]

---

[14]    Cailin S. Stamarski & Leanne S. Son Hing, *Gender Inequalities in the Workplace: The Effects of Organizational Structures, Processes, Practices, and Decision Makers' Sexism*, 6 FRONTIERS PSYCHOL. 1, 7–8 (2015).
[15]    Research shows that experiencing ambient sexual harassment—that is, a general environment of sexual harassment, which may involve witnessing or hearing about a co-worker's workplace sexual harassment—has demonstrated negative psychological and job-related consequences.  For example, one survey showed that bystanders of sexual harassment articulated being less satisfied with life and experienced increased stress,

81.    Upon information and belief, the rampant sexual harassment and hostile work environment were so egregious that they drove some workers to leave, thereby constructively terminating the workers and causing them to lose their pay and benefits.

C.    Corporate Structure: Joint Employers & Apparent Agency

82.    The McDonald's Corporate Defendants operate, franchise, and service a system of restaurants that prepare, assemble, package, and sell a limited menu of value-priced foods under the "McDonald's System." The McDonald's System is a concept of restaurant operations that includes, among other things, certain rights in trademarks, real estate, marketing, and operational information designed to promote uniformity of operations.

83.    Upon information and belief, the McDonald's Corporate Defendants have franchise agreements with Defendant MLMLM that require MLMLM to strictly adhere to the McDonald's System, including, *inter alia*, by complying with all standards, business policies, practices and procedures prescribed by the McDonald's Corporate Defendants; using formulas, methods and policies relating to day-to-day operations, inventory, accounting, management, and advertising that are set forth in detailed manuals developed and provided by the McDonald's Corporate Defendants; using corporate-supplied or approved equipment and food products;

---

depression and anxiety symptoms, and a desire to withdraw from their workplace. *See generally* Kathy Ann Hanisch, *A Causal Model of General Attitudes, Work Withdrawal, and Job Withdrawal, Including Retirement* (1990) (unpublished Ph.D. dissertation, University of Illinois Urbana-Champaign) (on file with ProQuest Dissertations Publishing) (individuals less satisfied with their work demonstrate withdrawal through frequent tardiness, absences, and desires to leave their positions). Another study found that low-wage workers who experienced ambient sexual harassment exhibited symptoms that mimicked those of individuals who were directly harassed: they were more withdrawn from their work and reported more symptoms of psychological distress, including depression and anxiety. Theresa M. Glomb et al., *Ambient Sexual Harassment: An Integrated Model of Antecedents and Consequences*, 71 ORG. BEHAV. & HUM. DECISION PROCESSES 322–23 (1997). In addition, research shows that the harmful psychological and job withdrawal effects of ambient sexual harassment are not only prompted by observation of direct sexual harassment, but by observation of institutional negligence in effectively dealing with sexual harassment. Kathi Miner-Rubino & Lilia M. Cortina, *Beyond Targets: Consequences of Vicarious Exposure to Misogyny at Work*, 92 J. APPLIED PSYCHOL. 1254, 1263–64 (2007).

submitting to regular comprehensive site inspections and computer monitoring; and sharing a percentage of gross sales revenues with the McDonald's Corporate Defendants.

84.     Upon information and belief, the franchise agreements that the McDonald's Corporate Defendants maintain with MLMLM vest in the McDonald's Corporate Defendants significant control over restaurant operations, working conditions, personnel training and discipline, and the finances of franchisees' restaurants, and give the McDonald's Corporate Defendants unlimited and unrestricted authority to inspect restaurants to monitor workplace conditions, including labor conditions, and to ensure compliance with the standards and policies of the McDonald's Corporate Defendants.

85.     The McDonald's Corporate Defendants maintain national franchise standards to which all of their franchisees are expected and required to adhere, and that affect almost every aspect of the restaurants' functioning, including practices and policies affecting crew members' labor conditions.  Upon information and belief, MLMLM is subject to these national franchise standards.

86.     On information and belief, the McDonald's Corporate Defendants evaluate and grade all franchisees, including MLMLM, on whether they have satisfied their franchise standards, including standards governing the recruitment, development, training, and retention of qualified personnel.  On information and belief, McDonald's Corporate Defendants impose very specific workplace policies that must be followed by all workers, down to minute details about day to day tasks.  On information and belief, McDonald's Corporate Defendants monitor the franchisee's operations at the micro-level to insure that McDonald's policies are carried out, including through detailed on-site inspections, at which McDonald's corporate representatives

17

may identify specific workers who should be disciplined. McDonald's Corporate Defendants conduct regular in-store inspections of the 730 North Cedar Street restaurant.

87. McDonald's Corporate Defendants may impose penalties on franchisees that deviate from these prescribed standards or that otherwise fail to fulfill their obligations under the franchise agreement, up to and including termination of the franchise agreement.

88. The McDonald's Corporate Defendants significantly restrict the business autonomy of their franchisees, including MLMLM, and their ability to make independent decisions based upon their own assessment of what is best for their particular business, by instead requiring compliance with the myriad standards they impose on all their franchisee-owned restaurants as well as upon their own corporate-owned restaurants.

89. The McDonald's Corporate Defendants exercise control over hiring, including by maintaining a nationwide website to which all applicants apply to work at any McDonald's, including, on information and belief, restaurants operated by MLMLM. On information and belief, McDonald's Corporate Defendants also dictate specific staffing levels, which may impede immediate transfer or termination of an accused or known harasser.

90. The McDonald's Corporate Defendants require all General Managers working at franchise restaurants to attend "Hamburger University," operated by McDonald's Corporate Defendants, including, on information and belief, the General Manager(s) who worked at the 730 North Cedar Street restaurant. On information and belief, the training that McDonald's Corporate Defendants provide and provided to restaurant General Managers, including the General Managers who worked at the 730 North Cedar Street restaurant, fails to adequately prepare those General Managers to prevent harassment, investigate reports of sexual harassment, or impose appropriate remedial measures.

18

91.    Together with Defendant MLMLM, the McDonald's Corporate Defendants jointly employed Plaintiff and all prospective class members.

92.    The McDonald's Corporate Defendants are the principals of their franchisee-agent MLMLM with respect to Plaintiff's and class members' employment claims, including claims of sexual harassment.

93.    The policies, procedures, training, guidelines, and/or practices provided by the McDonald's Corporate Defendants to their franchisees, like MLMLM, are insufficient to prevent discrimination against, harassment of, and/or retaliation toward, Plaintiff and prospective class members.

94.    When Plaintiff was hired to work at the McDonald's franchise location at 730 North Cedar Street, she believed that she was working for the McDonald's Corporate Defendants, because she was unaware of McDonald's system of franchising, everything about the store location says "McDonald's," and nobody told her that she was being hired to work at MLMLM Corporation.  Indeed, she did not know anything about MLMLM Corporation.

95.    Upon information and belief, prospective class members believed that they worked for the global McDonald's corporation headquartered in Illinois, that is, McDonald's USA and McDonald's Corporation.  Class members wore a McDonald's uniform, served McDonald's products, and followed McDonald's policies and practices.  Upon information and belief, they were not told that they were being hired to work for Defendant MLMLM.  Plaintiff and the other prospective class members reasonably believed that they were going to work for a large corporate employer with adequate resources dedicated to Human Resources issues, including the prevention and redress of sexual harassment.

19

96.    Upon information and belief, the McDonald's Corporate Defendants' involvement, among other things, in the operations of the 730 North Cedar Street restaurant where prospective class members worked, including by conducting in-store inspections, setting policies, and providing logos and branding, led Plaintiff and prospective class members to reasonably believe that the restaurant where they worked was operating and was authorized to operate on behalf of the McDonald's Corporate Defendants.

97.    McDonald's USA and McDonald's Corporation are liable for the acts of MLMLM because MLMLM was the apparent agent of McDonald's USA and McDonald's Corporation.

## CLASS ACTION ALLEGATIONS

98.    Plaintiff Jenna Ries brings this action as a class action, pursuant to Michigan Court Rule 3.501, individually and on behalf of a proposed class (the "Class") consisting of all female employees who work or worked in a position below that of General Manager at Defendants' McDonald's restaurant located at 730 North Cedar Street in Mason, Michigan, within three years prior to the date of filing of this complaint.  Plaintiff reserves the right to amend the definition of the Class based on discovery or legal developments.

99.    Upon information or belief, the Class has more than 50 class members.  The members of the Class are so numerous that joinder of all members is impracticable.

100.    Plaintiff's claims are typical of the claims of each member of the Class.  Plaintiff is a member of the Class she seeks to represent, and Plaintiff was injured by the same wrongful conduct that injured other members of the Class.

101.    The Defendants have acted wrongfully in the same basic manner as to all members within the Class.

20

102.    There are questions of law and fact common to all class members within the Class that predominate over any questions that, if they exist, affect only individual class members, including:

    a.    whether Defendants operate the 730 North Cedar Street restaurant under a general pattern and practice of sex discrimination in the form of sexual harassment;

    b.    whether a hostile work environment existed at Defendants' 730 North Cedar Street restaurant, including whether a reasonable person, under the totality of the circumstances, would have perceived the conduct complained of as substantially interfering with employment or having the purpose or effect of creating an intimidating, hostile, or offensive employment environment;

    c.    whether Defendants were on actual notice of the sexual harassment, or whether a reasonable employer would have been aware of a substantial probability that sexual harassment was occurring such that Defendants were on constructive notice;

    d.    whether Defendants took appropriate systemic corrective actions to stop and prevent continued institutional harassment; and

    e.    whether McDonald's is liable for the sexual harassment suffered by employees at the 730 North Cedar Street restaurant.

103.    Plaintiff and her chosen counsel will fairly and adequately represent the interests of the class.

21

104.    Plaintiff has selected counsel who are experienced with class action litigation, discrimination on the basis of sex and sexual harassment law, and the intersection of discrimination and class action law.

105.    Class litigation is superior to individually litigating the claims of each member of the Class.  Among other things, final equitable and declaratory relief is appropriate with respect to the Class.

## CAUSES OF ACTION

### COUNT I

### VIOLATION OF MICHIGAN'S ELCRA, MCL § 37.2201, et seq.

### (Sex Discrimination -- Sex Harassment)

106.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs of this Complaint as though set out here word for word.

107.    Under Section 201(a) of ELCRA, MCL § 37.2201(a), an employer is a person "who has 1 or more employees, and includes an agent of that person."  All Defendants jointly employed Plaintiff and prospective class members.

108.    Defendants are employers within the meaning of the ELCRA because each has more than one employee.

109.    The McDonald's Corporate Defendants are the principals of their agent Defendant MLMLM, and are vicariously liable, because they control its policies, procedures, training, guidelines, and/or practices for handling reports of sex discrimination, sexual harassment, assault, battery, and retaliation in the workplace.

110.    The McDonald's Corporate Defendants are liable for the acts of Defendant MLMLM because their involvement in and control over the operations of MLMLM's restaurant at 730 North Cedar Street, along with the fact that the McDonald's Corporate Defendants

22

permitted the use of their logos, branding, and trademarks at the restaurant, made Defendant MLMLM the ostensible and apparent agent of the McDonald's Corporate Defendants.

111.    Section 202(1)(a) of ELCRA, MCL § 37.2202(1)(a), makes it unlawful for an employer to "discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of . . . sex . . . ."

112.    Discrimination because of sex includes sexual harassment under ELCRA.  MCL § 37.2103(i).

113.    Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions:

(i)     Submission to the conduct or communication is made a term or condition either explicitly or implicitly to obtain employment . . . .

(ii)    Submission to or rejection of the conduct or communication by an individual is used as a factor in decisions affecting the individual's employment . . . .

(iii)   The conduct or communication has the purpose or effect of substantially interfering with an individual's employment . . . or creating an intimidating, hostile, or offensive employment . . . environment.

MCL § 37.2103(i).

114.    Defendants violated the ELCRA by discriminating against Plaintiff and class members because of their sex, including but not limited to sexually harassing them.

115.    Defendants created and allowed to be created a work environment so hostile that it altered the conditions of employment for Plaintiff and class members.

116.    A reasonable person, under the totality of the circumstances, would have perceived the conduct complained of as substantially interfering with Plaintiff's and class

23

members' employment or having the purpose or effect of creating an intimidating, hostile, or offensive employment environment.

117.    The discriminatory conduct complained of was severe, pervasive, occurred frequently, and included humiliating and physically threatening harassment.

118.    Defendants were on actual and constructive notice of the harassment suffered by Plaintiff and class members, because the harassment was pervasive, Plaintiff and class members complained to higher management of the harassment, and managers and supervisors participated in or were present during the harassment.

119.    Under these circumstances, notice of the sexual harassment was adequate because a reasonable employer would have been aware of a substantial probability that sexual harassment was occurring.

120.    Despite being on notice of sexual harassment, Defendants failed to take remedial action and prevent future harassment of Plaintiff and class members.

121.    Defendants sexually harassed Plaintiff and class members, including but not limited to:

    a.  Exposing and subjecting Plaintiff and class members to a sexually hostile work environment;

    b.  Permitting the sexual assault and battery of Plaintiff and other class members;

    c.  Failing to address, investigate, or take reasonable steps to redress sexual harassment;

    d.  Failing to address, investigate, or take reasonable steps to redress the sexually hostile work environment;

24

    e.  Requiring Plaintiff and the class members to tolerate a sexually menacing and hostile work environment as a condition of employment; and

    f.  Other acts of sexual harassment, assault and/or battery yet to be discovered.

122.    The foregoing constitutes a requirement that Plaintiff and class members submit to the conduct as a term or condition of employment, submission to or rejection of the conduct and communications were used as a factor in decisions affecting their employment, and the conduct had the effect of substantially interfering with their employment as described in MCL § 37.2103(i).

123.    As a direct and proximate result of Defendants' conduct in violation of the ELCRA, MCL § 37.2102, Plaintiff and class members have suffered damages including:

    a.  Economic damages based on lost wages and fringe benefits, both past and future;

    b.  Non-economic damages for injuries such as emotional distress, harm to reputation, embarrassment, humiliation, inconvenience, indignity, outrage, disappointment, and other consequential injuries;

    c.  Attorney fees and costs; and

    d.  Other damages to be determined.

## PROPOSED[16] COUNT II
### VIOLATION OF TITLE VII, as amended, 42 U.S.C. § 2000e, *et seq.*
#### (Sex Discrimination -- Sex Harassment and Hostile Work Environment)

124.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs of this Complaint as though set out here word for word.

---

[16]    To be added upon receipt of a right to sue letter from the EEOC.

25

125.    Plaintiff has timely filed a charge with the EEOC on behalf of herself and all those similarly situated. After the EEOC issues a right to sue letter, Plaintiff will amend this cause of action to reflect that she has exhausted her administrative remedies.

126.    Defendants violated Title VII when they subjected Plaintiff and class members to unlawful severe or pervasive sexual harassment and sex-based harassment that altered Plaintiff's and class members' working conditions and created a hostile working environment. Defendants have engaged in a company-wide and systematic policy, pattern, and/or practice of such unlawful sex discrimination against their female restaurant workers.

127.    Despite having actual and constructive knowledge of the sexual harassment and hostile work environment to which Plaintiff and class members have been subjected, Defendants failed to take immediate and appropriate corrective action to stop it. Despite having actual and constructive knowledge that the sexual harassment and hostile work environment constituted a systemic, institutional problem, Defendants failed to take systemic, institutional steps to remedy the sexual harassment and hostile work environment.

128.    By failing to promulgate an adequate policy against sexual harassment, failing to maintain an effective procedure for complaining about such conduct, and failing to otherwise inform employees that McDonald's will not tolerate sexual harassment in the workplace, Defendants did not take reasonable care to prevent sexual harassment and did not provide a reasonable avenue of complaint about such conduct.

129.    Defendants knew or should have known that their actions constituted unlawful sex discrimination, including sexual harassment and hostile work environment, and showed willful and/or reckless disregard for Plaintiff's and class members' statutorily protected rights.

130.    The acts and omissions of Defendants constitute a pattern and practice of discrimination against Plaintiff and other members of the proposed class.

131.    As a direct result of Defendants' discriminatory acts, Plaintiff and the Class are entitled to damages including, but not limited to:

      a.    Past and future lost wages and benefits;

      b.    Compensation for past and future physical and emotional distress;

      c.    Punitive damages;

      d.    Attorneys' fees and costs; and

      e.    Pre-judgment interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for relief as follows:

      A.    Certification of a Class, as that class has been defined above;

      B.    A declaration that Defendants are violating or have violated the civil rights of Plaintiff and the Class she represents.

      C.    An injunction requiring Defendants to remedy the civil rights violations described herein, and to prevent future sexual harassment and subjection of their employees to a sexually hostile work environment, by, among other things:

        i.   Forming a committee of McDonald's workers that, together with McDonald's and independent experts, will devise worker-centered and worker-led practices to prevent and stop sex harassment.

        ii.  Developing and implementing mandatory training focused on recognizing, preventing, and addressing sexual harassment at McDonald's. The training should be informed by worker feedback,

specifically by the feedback and input of survivors of sexual harassment at McDonald's, should be designed to specifically address the scenarios faced by McDonald's workers, and should take into account the working conditions and demographic background of McDonald's workforce.

iii.   Revising anti-harassment policies to ensure that the policies are based on worker and survivor feedback and input, make managers and supervisory employees accountable for the work environment in their restaurant locations, and are written in terms that a non-lawyer McDonald's worker would understand.

iv.   Implementing a safe reporting mechanism including multiple channels for reporting sexual harassment, and adequately communicating that reporting mechanism to all workers.

v.   Creating a protocol for investigation of employee complaints by an entity or individuals skilled in conducting and documenting workplace investigations, including trauma-informed ways of asking questions of individuals reporting harassment.

vi.   Establishing a remedial scheme that assures accountability for parties found to have engaged in harassment and managers who have failed to prevent harassment, and that assures a safe, harassment-free environment for those who report harassment.

vii.   Adopting and implementing practices to ensure that employees who report harassment are not the subject of retaliation.

    viii.   Monitoring the number and type of complaints lodged at each restaurant and the resolution thereof.

    ix.   Establishing metrics by which franchises will be evaluated for success in preventing and remedying sexual harassment and monitored for compliance, and establishing penalties for noncompliance, up to and including termination of the franchise agreement.

    D.   An order retaining jurisdiction over this action to ensure that McDonald's complies with such a decree.

    E.   Judgment in an amount that the Court or jury determines to be fair, just, and adequate compensation for the damages that Plaintiff and class members have sustained, past and future, together with interest, in an amount not less than $100,000 per class member, exceeding five million dollars;

    F.   Once a Title VII claim is added, an award of punitive damages that the Court or jury determines to be fair and sufficient to punish, penalize, and/or deter Defendants;

    G.   An award of reasonable attorneys' fees and costs; and

    H.   Any other relief that the court deems appropriate.

Respectfully submitted,

_____

Darcie R. Brault (P43864)
MCKNIGHT, CANZANO, SMITH, RADTKE &
BRAULT, P.C.
423 N. Main Street, Suite 200
Royal Oak, MI  48067
(248) 354-9650
dbrault@michworkerlaw.com

Eve H. Cervantez[*]
Elizabeth Vissers[*]
ALTSHULER BERZON, LLP
177 Post Street, Suite 300
San Francisco, CA 94108
(415) 421-7151
ecervantez@altshulerberzon.com
evissers@altshulerberzon.com

29

Gillian Thomas[*]
AMERICAN CIVIL LIBERTIES UNION
WOMEN'S RIGHTS PROJECT
125 Broad Street
New York, NY 10004
(212) 284-7356
gthomas@aclu.org


*  Pro hac vice motions to be filed.

Dated: November 12, 2019

## JURY DEMAND

Plaintiffs hereby demand a trial by jury as to all those issues so triable as of right.

Respectfully submitted,

Darcie R. Brault (P43864)
McKNIGHT, CANZANO, SMITH, RADTKE &
BRAULT, P.C.
423 N. Main Street, Suite 200
Royal Oak, MI  48067
(248) 354-9650
dbrault@michworkerlaw.com

Eve H. Cervantez[*]
Elizabeth Vissers[*]
ALTSHULER BERZON, LLP
177 Post Street, Suite 300
San Francisco, CA 94108
(415) 421-7151
ecervantez@altshulerberzon.com
evissers@altshulerberzon.com

Gillian Thomas[*]
AMERICAN CIVIL LIBERTIES UNION
WOMEN'S RIGHTS PROJECT
125 Broad Street
New York, NY 10004
(212) 284-7356
gthomas@aclu.org

                          *  Pro hac vice motions to be filed.


Dated: November 12, 2019