UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNA RIES and KATLYN BARBER,
on behalf of themselves and all
those similarly situated,
                    Plaintiffs,                          Case No. 20-cv-0002

v.                                                       Hon. Janet T. Neff

McDONALD'S USA, LLC, McDONALD'S
CORPORATION, MLMLM
CORPORATION d/b/a McDONALD'S;
and M.A.A.K.S., Inc. d/b/a McDONALD'S
of Williamston,
                    Defendants.
_____/

DARCIE R. BRAULT (P43864)                 C. THOMAS LUDDEN (P45481)
McKnight, Canzano, Smith,                 Lipson Neilson, P.C.
Radtke & Brault, P.C.                     3910 Telegraph Road, Suite 200
423 N. Main Street, Suite 200            Bloomfield Hills, MI 48302
Royal Oak, MI 48067                       (248) 593-5000
(248) 354-9650                            tludden@lipsonneilson.com
dbrault@michworkerlaw.com                 *Attorneys for Defendant MLMLM Corp.*

GILLIAN THOMAS
American Civil Liberties Union            ELIZABETH B. McREE
Women's Right Project                     Jones Day
125 Broad Street                          77 W. Wacker Drive
New York, NY 10004                        Chicago, IL 60601-1692
(212) 284-7356                            (312) 269-4374
gthomas@aclu.org                          emcree@JonesDay.com

EVE H. CERVANTEZ
ELIZABETH VISSERS                         ANDREW J. CLOPTON (P80315)
Altshuler Berzon, LLP                     Jones Day
177 Post Street, Suite 300               150 W. Jefferson, Suite 2100
San Francisco, CA 94108                   Detroit, MI 48226
(415) 421-7151                            (313) 733-3939
ecervantez@altshulerberzon.com            aclopton@jonesday.com
evissers@altshulerberzon.com              *Attorneys for McDonald's USA LLC and*
                                          *McDonald's Corporation*

*Attorneys for Plaintiffs*
_____/

**FIRST AMENDED COMPLAINT**

## NATURE OF THE ACTION

1.     This is a civil rights action brought by Plaintiffs Jenna Ries and Katlyn Barber on behalf of themselves and all others similarly situated against their employers McDonald's USA, LLC, McDonald's Corporation, MLMLM Corporation d/b/a McDonald's, and M.A.A.K.S., Inc. d/b/a McDonald's of Williamston (together "McDonald's" or "Defendants") for sexual harassment in violation of the Michigan Elliott-Larsen Civil Rights Act, Mich. Comp. Laws §37.2101, *et seq*. ("ELCRA") and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq*. ("Title VII").

2.     McDonald's, one of the largest employers in the country, creates and permits a toxic work culture from the very top—as reflected by former-CEO Steve Easterbrook's recent firing for an inappropriate relationship with a subordinate in violation of company policy—and throughout its thousands of restaurants within the United States that employ over one million workers.

3.     McDonald's workers nationwide are telling their stories of routine, severe abuse.[1] Among them are teenagers, to whom the company promises "America's best first job" and instead delivers predation.[2]  McDonald's employees are literally taking to the streets to protest the mistreatment that is endemic to their daily lives at the company.[3]  They also describe swift

---

[1]      S*ee, e.g.*, Áine Cain, *Gretchen Carlson Spotlighted McDonald's Workers Speaking Out Against Sexual Harassment at the Fast Food Giant in Her New Series*, BUSINESS INSIDER (Jan. 15, 2019), https://www.businessinsider.com/mcdonalds-workers-sexual-harassment-gretchen-carlson-show-2019-1.

[2]      *See, e.g.*, Taja Davis, *Tucson Teen Takes on McDonald's; Sexual Harassment Claims*, KGUN 9 (May 22, 2019), https://www.kgun9.com/news/local-news/tucson-teen-takes-on-mcdonalds-sexual-harassment-claims.

[3]      *See, e.g*., Heather Haddon, *McDonald's Workers Strike to Protest Pay and Harassment Complaints*, THE WALL STREET JOURNAL (May 23, 2019), https://www.wsj.com/articles/mcdonalds-workers-strike-to-protest-pay-and-harassment-complaints-11558627417; Kim Elsesser, *McDonald's Workers Are Striking Over Sexual Harassment, But Will the Company Act?*, FORBES (Sept. 17, 2018), https://www.forbes.com/sites/kimelsesser/2018/09/17/mcdonalds-workers-strike-over-sexual-harassment-but-will-mcdonalds-act/#19ebc1b43f26.

and severe retaliation for objecting to such mistreatment.[4]  And they are speaking out about the losses caused by harassment at McDonald's—not just wages and benefits, but also their emotional well-being and sense of dignity.[5]

4.    In one Michigan restaurant location that is emblematic of this systemic problem, managers subjected workers to pervasive sexual harassment and a hostile work environment, including groping and physical assaults as well as sexually-charged verbal taunts, insults, and derisive comments.  The General Managers stood by and did nothing to protect the workers.

5.    Despite being on notice of pervasive problems of sexual harassment nationwide, McDonald's fails to address such unlawful sexual harassment and the company culture that enables it.  McDonald's pays lip service to training its restaurant staff, but does nothing to assure such training actually takes place or actually succeeds in preventing harassment.  On information and belief, McDonald's also does nothing to train managers in responding to harassment complaints, or to hold accountable those managers who allow harassment to flourish.  And McDonald's does nothing to monitor serial harassers or problem restaurants, permitting management to simply shuffle harassers around various restaurants, where they harass anew.

6.    To remedy these systemic problems and civil rights violations, Plaintiffs ask this Court to (a) certify a class of all female employees who worked in a position below that of General Manager at Defendants' McDonald's restaurant located at 730 North Cedar Street in Mason, Michigan from November 12, 2016 through the date of trial; (b) enter an order declaring that McDonald's violates the civil rights of its employees under ELCRA and Title VII; (c) award

---

[4]    *See, e.g.*, Christopher Yee, *Employee to Feds: Sexual Harassment Runs Rampant at Monterey Park McDonald's*, PASADENA STAR-NEWS (May 24, 2019), https://www.pasadenastarnews.com/2019/05/24/employee-to-feds-sexual-harassment-runs-rampant-at-monterey-park-mcdonalds/.

[5]    *See, e.g.*, Delisha Rivers, *I'm One of 25 People Who Filed a Sexual Harassment Complaint against McDonald's. Here's My Story.*, VOX (May 30, 2019), https://www.vox.com/first-person/2019/5/30/18644181/mcdonalds-sexual-harassment-me-too.

damages of at least $5 million to compensate Plaintiffs and the class members for their emotional distress and other injuries; and (d) enter an order requiring that McDonald's take adequate steps to stop and prevent sexual harassment by implementing effective worker-centered anti-harassment policies and procedures, worker-led mandatory training, a safe system of reporting, adequate investigation and discipline, and protections against retaliation, as required to avoid continued violations of ELCRA and Title VII.

## PARTIES

7.      Plaintiff Jenna Ries ("Ries") is a 32-year-old resident of Livingston County, Michigan.  Ries brings this action individually and on behalf of the proposed Class and Subclass.

8.      Plaintiff Katlyn Barber ("Barber") is a 21-year-old resident of Ingham County, Michigan.  Barber brings this action individually and on behalf of the proposed Class.

9.      Defendant MLMLM Corporation ("MLMLM") is a Michigan-registered domestic profit corporation, doing business as "McDonald's," that operates 11 franchised McDonald's restaurants in and around Lansing, Michigan.  Specifically, the 11 franchised restaurants are located in Lansing, Eaton Rapids, Holt, Mason, Williamston, Webberville, Fowlerville, and Howell, which lie in Eaton, Ingham, and Livingston Counties in Michigan.[6]

---

[6]      The specific addresses of the 11 franchised stores operated by MLMLM are as follows:

| 9134 SPICERVILLE HWY | EATON RAPIDS | MI | Eaton County |
|---|---|---|---|
| 2775 EATON RAPIDS RD | LANSING | MI | Ingham County |
| 4700 SOUTH CEDAR STREET | LANSING | MI | Ingham County |
| 2400 NORTH CEDAR STREET | HOLT | MI | Ingham County |
| 2530 E JOLLY ROAD | LANSING | MI | Ingham County |
| 730 N CEDAR | MASON | MI | Ingham County |
| 614 KIPP RD | MASON | MI | Ingham County |
| 200 W GRAND RIVER AVE | WILLIAMSTON | MI | Ingham County |
| 805 HIGHVIEW DRIVE | WEBBERVILLE | MI | Ingham County |
| 945 SOUTH GRAND RIVER | FOWLERVILLE | MI | Livingston County |
| 2205 W GRAND RIVER RD | HOWELL | MI | Livingston County |

10.      Defendant MLMLM operates a McDonald's restaurant located at 730 North Cedar Street, Mason, Michigan, 48854, in Ingham County, and conducts regular business from that location.

11.      Defendant M.A.A.K.S., Inc. ("M.A.A.K.S.") is a Michigan-registered domestic profit corporation, doing business as "McDonald's of Williamston," that operates 11 franchised restaurants in and around Lansing, Michigan.  Specifically, the 11 franchised restaurants are located in Lansing, Eaton Rapids, Holt, Mason, Williamston, Webberville, Fowlerville, and Howell, which lie in Eaton, Ingham, and Livingston Counties in Michigan.[7]

12.      Defendant M.A.A.K.S operates a McDonald's restaurant located at 730 North Cedar Street, Mason, Michigan, 48854, in Ingham County, and conducts regular business from that location.

13.      Defendant MLMLM purported to "lease" employees to Defendant M.A.A.K.S. to operate the McDonald's Restaurant located at 730 North Cedar Street, Mason, Michigan, 48854, in Ingham County.

14.      Michael L. Dickerson ("Dickerson") is the President, Treasurer, Secretary, and Director of both Defendant MLMLM and Defendant M.A.A.K.S.

---

[7]      The specific addresses of the 11 franchised stores operated by M.A.A.K.S. are as follows:

| 9134 SPICERVILLE HWY | EATON RAPIDS | MI | Eaton County |
|---|---|---|---|
| 2775 EATON RAPIDS RD | LANSING | MI | Ingham County |
| 4700 SOUTH CEDAR STREET | LANSING | MI | Ingham County |
| 2400 NORTH CEDAR STREET | HOLT | MI | Ingham County |
| 2530 E JOLLY ROAD | LANSING | MI | Ingham County |
| 730 N CEDAR | MASON | MI | Ingham County |
| 614 KIPP RD | MASON | MI | Ingham County |
| 200 W GRAND RIVER AVE | WILLIAMSTON | MI | Ingham County |
| 805 HIGHVIEW DRIVE | WEBBERVILLE | MI | Ingham County |
| 945 SOUTH GRAND RIVER | FOWLERVILLE | MI | Livingston County |
| 2205 W GRAND RIVER RD | HOWELL | MI | Livingston County |

15.     Dickerson owns and controls both Defendant MLMLM and Defendant

M.A.A.K.S.

16.     The operations of Defendant MLMLM and Defendant M.A.A.K.S. are

interrelated, and Defendants MLMLM and M.A.A.K.S. exercise centralized and common control

of labor relations and personnel decisions with respect to the 730 North Cedar Street restaurant.

17.     Defendants MLMLM and M.A.A.K.S. operated and continue to operate as a

single integrated enterprise employing all the workers at the McDonald's restaurant located at

730 North Cedar Street in Mason.

18.     Defendants MLMLM and M.A.A.K.S. are joint employers of all the workers at

the 730 North Cedar Street restaurant, and are each other's actual, apparent, or ostensible agents

with respect to those workers.

19.     Defendants MLMLM and M.A.A.K.S. are jointly and severally liable to their

employees at the 730 North Cedar Street restaurant for all violations of Title VII and ELCRA.

20.     Defendant McDonald's USA, LLC ("McDonald's USA") is a Delaware limited

liability company that has its principal place of business in Illinois, and operates restaurants in all

50 states, including Michigan.

21.     Defendant McDonald's Corporation is a Delaware corporation that has its

principal place of business in Illinois, and operates restaurants in all 50 states, including

Michigan.

22.     Defendants McDonald's USA and McDonald's Corporation (together,

"McDonald's Corporate Defendants") contract with numerous franchisees that jointly operate

McDonald's restaurants throughout Michigan, including Defendants MLMLM and M.A.A.K.S.

and their President, Dickerson.

6

23.    The McDonald's Corporate Defendants tightly control the working conditions of employees at McDonald's franchised restaurants, including at restaurants operated by Defendants MLMLM and M.A.A.K.S., with respect to Human Resources policies, the physical work environment, required worker and manager training, and discipline and firing of workers, among others.  The McDonald's Corporate Defendants also provide guidance to Defendants MLMLM and M.A.A.K.S. and other franchisees with respect to training about and prevention of sexual harassment, and reporting and investigating sexual harassment complaints, but that guidance is wholly inadequate and ineffective.

24.    Together, all Defendants jointly operated the McDonald's restaurant at 730 North Cedar Street, Mason, Michigan during the relevant period and jointly employed all workers there, including Plaintiffs, class members, and the General Managers.

25.    MLMLM and M.A.A.K.S. act as agents of McDonald's USA and McDonald's Corporation, and/or the McDonald's Corporate Defendants hold out MLMLM and M.A.A.K.S. as their agents.

26.    Plaintiffs and other proposed class members reasonably believed that they worked for the global McDonald's corporation headquartered in Illinois, that is, McDonald's USA and McDonald's Corporation.  They wore a McDonald's uniform, served McDonald's products, and followed McDonald's policies and practices; they were not informed that only Defendants MLMLM and M.A.A.K.S. were their employers.  Plaintiffs and the other proposed class members reasonably believed that they were going to work for a large corporate employer with adequate resources dedicated to Human Resources issues, including the prevention and redress of sexual harassment.

27.     McDonald's USA and McDonald's Corporation are liable for the acts of

MLMLM and M.A.A.K.S. because MLMLM and M.A.A.K.S. were the apparent agents of

McDonald's USA and McDonald's Corporation.

## JURISDICTION AND VENUE

28.     This Court has jurisdiction over this matter under 28 U.S.C. §1332 (federal

question), based upon Plaintiff Ries' claims under Title VII of the Civil Rights Act of 1964, 42

U.S.C. §2000e, *et seq.*  This Court has supplemental jurisdiction over Plaintiffs' state law claims

pursuant to 28 U.S.C. §1367.

29.     Venue is proper in the Western District of Michigan, Southern Division, pursuant

to 42 U.S.C. §2000e-5(f)(3) because the restaurant in which the complained of harassment took

place is located in Ingham County, at 730 North Cedar Street, Mason, Michigan.

## FACTUAL ALLEGATIONS

**A.     Plaintiff Ries was Subjected to Severe or Pervasive Sexual and Sex-Based
Harassment and a Sexually Hostile Work Environment**

30.     Plaintiff Ries worked at the McDonald's restaurant located at 730 North Cedar

Street in Mason, Michigan (the "730 North Cedar Street restaurant"), from the fall of 2017 to

March 2019.

31.     Plaintiff Ries was originally hired as a crew member, but after three months, she

was promoted to "swing manager" because of her good performance and previous managerial

experience.

32.     When she first started working at McDonald's, Plaintiff Ries was required to sign

a paper saying that she would not sexually harass her coworkers, but she was not given a copy to

keep, nor was she provided with any other training regarding sexual harassment or how to report

it.

33.     Upon becoming a swing manager, Plaintiff Ries received no specific training regarding management obligations to prevent or remedy harassment.

34.     As soon as Plaintiff Ries started working at the 730 North Cedar Street restaurant in the fall of 2017, she was subjected to, and witnessed, sexual and sex-based harassment.

35.     Swing Manager Shawn Banks frequently called Plaintiff Ries a "bitch," "cunt," "slut," and "whore" in front of multiple other co-workers, including the General Manager.

36.     Beyond the verbal taunts, Plaintiff Ries endured routine physical assaults by Swing Manager Banks.  He frequently grabbed her body parts, including her crotch, breasts, and buttocks.  He pulled her hair, and pushed her into other workers.

37.     Once, when he was working next to Plaintiff Ries in the kitchen, Swing Manager Banks placed his penis in Plaintiff's hand.

38.     On one occasion, Plaintiff Ries walked into the walk-in freezer to retrieve supplies, and the Swing Manager Banks followed her inside and shoved her up against one of the walls.  She managed to push him off of her and ran out.

39.      When Swing Manager Banks harassed her, Plaintiff Ries told him, "stop," "no," "leave me alone," and "do not touch me."  He responded by yelling at her and threatening to get her fired.

40.     Swing Manager Banks routinely threatened to get Plaintiff Ries fired for not agreeing to his sexual propositions.  As a result, she was frequently worried that she would lose her job.

41.     The General Manager regularly was present when Swing Manager Banks made his outrageous and offensive comments to Plaintiff Ries and others, but did nothing to stop him.

42.     Within six months of Plaintiff's hire, around March 2018, Plaintiff Ries requested a transfer to another McDonald's location because she could not handle the severe and pervasive harassment to which she was being subjected, and its negative effects on her.

43.     The General Manager said a transfer was not possible.

44.     Plaintiff Ries also complained multiple times to the General Manager about Swing Manager Banks' harassment.  When she did, the General Manager would promise to talk to Swing Manager Banks, but the harassment continued.

45.     At one point, Plaintiff Ries asked not to be scheduled with Swing Manager Banks. The General Manager complied for a couple of days, but then started scheduling Plaintiff and Swing Manager Banks together again.

46.     Plaintiff Ries was unaware of any HR Department outside of the regular chain of command to which she could report the harassment.  On information and belief, Defendants MLMLM and M.A.A.K.S. do not maintain a separate HR Department, and, although McDonald's Corporate Defendants do maintain an HR Department, that HR Department refuses to assist workers at franchise restaurants, including Plaintiffs and class members here.

47.     Because of pervasive harassment from Swing Manager Banks, and the generally hostile work environment that she was forced to endure, Plaintiff Ries often came home from work crying.  She felt physically ill.  The harassment negatively affected her relationship with her boyfriend and with her father.  The harassment caused Plaintiff Ries severe emotional distress and anxiety.

48.     Plaintiff Ries dreaded going to work.  She only went because she needed the money.

10

49.     Plaintiff Ries also suffered severe emotional distress and anxiety for fear that she would be fired for rejecting Swing Manager Banks' verbal and physical advances and would be unable to pay her rent or other bills.

50.     Because of the meager pay she made at McDonald's, Plaintiff Ries was unable to afford the medical assistance she needed to cope with the psychological effects of the sexual harassment.

51.     Finally, in March 2019, Swing Manager Banks lied about Plaintiff Ries' behavior toward other workers, culminating in a meeting between Plaintiff Ries and the District Manager, who supervised multiple restaurants, including the 730 North Cedar Street restaurant.  Plaintiff Ries reported the harassment to which she had been subjected.

52.     Although Plaintiff Ries was transferred to another McDonald's location after reporting the harassment to the District Manager, Swing Manager Banks remained employed at the 730 North Cedar Street restaurant, as did the General Manager who had done nothing to respond to Plaintiff's complaints.

53.     Plaintiff Ries continues to suffer emotional distress and other negative effects from the roughly year-and-a-half of severe harassment she was forced to endure.

**B.     Plaintiff Barber was Subjected to Severe or Pervasive Sexual and Sex-Based Harassment and a Sexually Hostile Work Environment**

54.     Plaintiff Barber worked at the 730 North Cedar Street restaurant from the fall of 2017 to the fall of 2018.  Barber was originally hired as a crew member, and was promoted to swing manager in approximately December 2017.

55.     When Plaintiff Barber started working at the 730 North Cedar Street restaurant, she had recently graduated from high school, and was 18 years old.  She was given a handbook

11

that contained Defendants' sexual harassment policy, but did not receive any verbal training or instruction on sexual harassment, or how to report it.

56.     Swing Manager Banks was much older than Plaintiff Barber.

57.     Swing Manager Banks frequently harassed Barber, both physically and verbally.

58.     For example, Swing Manager Banks often said that he wanted to "get with" her, or suggested engaging in a "threesome" with her and her sister, or her and her friends.  He also said things like "I'm going to f—k [her best friend or sister] or "Look at [best friend or sister]'s ass!"

59.     Swing Manager Banks frequently commented on Plaintiff Barber's body, and grabbed her rear end.  He would lean over and "dry hump" her from behind, hit her rear end with a muffin tin, and grab her rear end with tongs.

60.     This verbal and physical harassment occurred on a constant, recurring basis, on almost every shift that Barber was scheduled to work with Swing Manager Banks.

61.     Barber frequently told Swing Manager Banks to stop.  But he did not stop.

62.     Barber also observed Swing Manager Banks harass Plaintiff Ries, as well as other teenagers and women at the 730 North Cedar restaurant.

63.     For example, Barber observed Swing Manager Banks slap other women and teenagers, including Plaintiff Ries, on the rear end.

64.     Barber also observed Swing Manager Banks grab Plaintiff Ries' breasts and crotch.

65.      Plaintiff Barber heard Swing Manager Banks encourage other male employees to look at teenage workers' rear ends, and "count down" until they were 18 years old.

66.    Plaintiff Barber repeatedly complained about Swing Manager Banks' behavior to the General Manager, who could plainly see what Swing Manager Banks was doing.  The General Manager only shrugged, or said "he is just joking" or "don't be so dramatic," or even laughed.  The General Manager did not take any action to stop the sexually harassing behavior of Swing Manager Banks.

67.    Plaintiff Barber also reported Swing Manager Banks' sexual harassment to Heidi Pyer ("Pyer"), who was responsible for supervising a group of McDonald's restaurants for Defendants.  Pyer thanked Plaintiff Barber for informing her, but did nothing to stop Swing Manager Banks from continuing to harass women and teenagers.

68.    When the harassment first started, Plaintiff Barber was terrified: a much older man was touching her and making vile comments, and she did not know what to do.  As time went on Barber felt sad and helpless because she could not stop Swing Manager Banks from harassing her and harassing other women and teenagers, and management did nothing to stop the harassment.  Plaintiff Barber suffered from headaches and anxiety, and sometimes cried. Plaintiff Barber dreaded going to work; when she knew that Swing Manager Banks would be there, she sat in her car until the last possible moment before she had to walk into the McDonald's restaurant.

69.    The pervasive and severe harassment from Swing Manager Banks, and the generally hostile work environment that she was forced to endure, caused Plaintiff Barber severe emotional distress and anxiety.

70.    Plaintiff Barber was constructively discharged in September 2018.  After a year of constantly experiencing, observing, and hearing Swing Manager Banks' sexual harassment, and realizing that even the most senior management would not act to remedy the hostile environment

13

it created for her and other women and teenagers at the store, Plaintiff Barber could no longer endure working at the 730 North Cedar McDonald's restaurant, and was forced to quit.

71.     Plaintiff Barber continues to suffer emotional distress and other negative effects from the severe harassment she was forced to endure.

### C.     McDonald's Employees are Subjected to Severe or Pervasive Sexual and Sex-Based Harassment and a Sexually Hostile Work Environment

72.     In performing their jobs, Plaintiffs and prospective class members were chronically subjected to a sexually hostile work environment resulting from Defendants' acquiescence in severe or pervasive sexual harassment and Defendants' failure to have in place effective policies and practices to prevent and address sexual harassment.

73.     Workers at the 730 North Cedar Street restaurant frequently observed and experienced sexual harassment.

74.     The swing manager who harassed Plaintiffs also harassed many other women and girls.

75.     Workers at the 730 North Cedar Street restaurant referred to Swing Manager Banks as "the minor violator" and an "HR nightmare," because his propensity for sexually harassing female workers, including underage girls, was so outrageous and visible.

76.     For example, Swing Manager Banks came into work on many occasions complaining about his girlfriend, and would openly exclaim that he wanted to "get with" different female workers.  He would directly tell female workers that he wanted to have sex with them, and would also make comments to them about other female workers.

77.     He also asked female workers, "How much does it take to get to bed?"

78.     Swing Manager Banks, who was 32, also was rumored to have been dating one of the crew members who was a minor.  Relatedly, Swing Manager Banks and other managers had

14

a running joke about a countdown to date one of their underage subordinates.  Swing Manager Banks often focused his attention on new young female employees, including teenagers and minors.

79.    Swing Manager Banks also frequently touched female workers inappropriately.

80.    Swing Manager Banks would often come up to female workers as they were working and comment on and touch their bodies, often their buttocks, without their consent.

81.    Swing Manager Banks would tickle and hug other workers, including managers.

82.    Swing Manager Banks routinely touched female workers' breasts and buttocks, and sometimes even "humped" female workers.

83.    The harassment also often veered to the violent: Swing Manager Banks frequently kicked female workers in the rear end.

84.    Swing Manager Banks was so sexually aggressive toward female workers that, on information and belief, he made at least one harassing comment (and often committed several physical assaults) every shift he worked.

85.    Because Swing Manager Banks engaged in this conduct, including in the presence of and even toward the General Managers, some other male workers followed his example and acted in a similar way.[8]

86.    Workers would often touch each other inappropriately on the job, such as by tickling each other, hugging, making dirty jokes, punching each other, sticking a finger in other workers' ears, and grabbing other worker's buttocks.  Nobody in management took action to end

---

[8]    Studies have found that male employees are more willing to engage in sexual harassment in environments where sexist behavior and sexual harassment is modeled by others.  *See* John B. Pryor et al., *A Social Psychological Analysis of Sexual Harassment: The Person/Situation Interaction*, 42 J. VOCATIONAL BEHAV. 68, 78–79 (1993).

or prevent such harassment and sexually hostile work environment, even though the General Managers were aware of the conduct.

87.    Because the 730 North Cedar Street restaurant was small, employees worked in close proximity to one another.  Consequently, they regularly witnessed, were exposed to, and were aware of harassing conduct even when it was directed at others.

88.    This common knowledge and awareness of the pervasive incidents of sexual harassment contributed to and created a hostile work environment for all female workers at the 730 North Cedar Street restaurant.  A reasonable person would perceive such constant and open harassment of female workers as creating an employment environment that was intimidating, hostile, and/or offensive toward women.

89.    The work environment at the 730 North Cedar Street restaurant that female workers were forced to endure was permeated with sexual harassment so severe or pervasive as to make the restaurant an objectively abusive and hostile workplace for women, thereby altering the terms of their employment.

90.    Workers, including Plaintiffs, were provided with little information about what constituted sexual harassment or McDonald's policy about such harassment, and were not provided with information about how to report sexual harassment.

91.    The General Managers witnessed much of this harassment and were aware of the sexually hostile work environment, but took no action to discipline the harassers or otherwise prevent the harassment.

92.    Workers, including Plaintiffs, reported the sexual harassment and the resulting hostile work environment to which they and others were subjected to the General Managers, but the General Managers took no remedial action to address the harassment.  Instead, the General

Managers told the workers, for example, that they were "being dramatic" or that the harasser was "just joking."  On the numerous occasions that workers reported that Swing Manager Banks had smacked a female worker's buttocks in view of the security cameras, the General Manager would often laugh alongside Swing Manager Banks even after reviewing the tape.  The General Managers did not suggest any remedy for the ongoing harassment.

93.    Workers, including Plaintiff Barber, also reported the sexual harassment to supervisors over the General Managers, who were responsible for overseeing several restaurants.

94.    But Defendants did nothing to stop the harassment, and failed to discipline or terminate Swing Manger Banks or other workers who engaged in harassing behavior.

95.    Research shows that what has been termed the "organizational climate" around sexual harassment in a workplace is the most important factor for—that is, the factor with the greatest statistical effect on—whether workers are subjected to sexual harassment in their workplace.[9]

96.    The "organizational climate" is created by a workplace's policies and practices concerning sexual harassment, including formal written guidelines for behavior, procedures for filing grievances and investigating complaints, and education and training programs, as well as implementation, prevention, and enforcement practices.[10]

97.    Three aspects of an organizational climate that are particularly problematic are a perceived risk to victims for complaining, a lack of sanctions against offenders, and the perception that one's complaints will not be taken seriously.[11]

---

[9]      Chelsea R. Willness et al., *A Meta-Analysis of the Antecedents and Consequences of Workplace Sexual Harassment*, 60 PERSONNEL PSYCHOL. 127, 143 (2007).
[10]     *Id.* at 133–34.
[11]     *Id.*

98.    Thus, an organization's actual and perceived ability to recognize, penalize, and reduce sexual harassment influences whether and how it manifests in the workplace.  Research shows that perceived managerial lenience in effectively handling sexual harassment in the workplace is associated with higher incidences of such conduct.[12]

99.    The mere existence of codes of conduct prohibiting sexual harassment as the main or sole method to mitigate sexual harassment is not effective; institutional action is necessary.[13]

100.    Individuals who self-identify as working in environments where they believe that reports of sexual harassment will be ignored and whistleblowers will be punished also report experiencing more sexual harassment.[14]

101.    For this reason, Human Resources policies can have the effect of *promoting* sexual harassment in the workplace if they are perceived as lacking in formal procedure and being inattentive to reports or reporters of sexual harassment.[15]

102.    McDonald's failure to take comprehensive action to stop and prevent harassment at the 730 North Cedar Street restaurant signaled that harassment was permitted, and that managers and harassers would not be held accountable.  Defendants' failure to implement

[12]    *Id.* at 143; Melanie S. Harned et al., *Sexual Assault and Other Types of Sexual Harassment by Workplace Personnel: A Comparison of Antecedents and Consequences*, 7 J. OCCUPATIONAL HEALTH PSYCHOL. 174, 183 (2002); Louise F. Fitzgerald et al., *Antecedents and Consequences of Sexual Harassment in Organizations: A Test of an Integrated Model*, 82 J. APPL. PSYCHOL. 578, 584 (1997); Charles L. Hulin et al., *Organizational Influences on Sexual Harassment*, *in* SEXUAL HARASSMENT IN THE WORKPLACE: PERSPECTIVES, FRONTIERS, AND RESPONSE STRATEGIES 127–50 (Margaret S. Stockdale ed., Sage Publications 4th ed. 1996).

[13]    James E. Gruber, *The Impact of Male Work Environments and Organizational Policies on Women's Experiences of Sexual Harassment*, 12 GENDER & SOCIETY 301, 316 (1998).  These findings are similar to the conclusions of previous studies of bullying in the workplace, which find that such behavior positively correlates with laissez-faire management approaches to dealing with interpersonal conflict or harassment.  *See, e.g.*, Helena Cooper-Thomas et al., *The Impact of Bullying on Observers and Targets*, 14 N.Z. J. HUM. RESOURCES MGMT. 82, 83–84 (2014).

[14]    Louise F. Fitzgerald et al., *Antecedents and Consequences of Sexual Harassment in Organizations: A Test of an Integrated Model*, 82 J. APPL. PSYCHOL. 578, 584 (1997).

[15]    Cailin S. Stamarski & Leanne S. Son Hing, *Gender Inequalities in the Workplace: The Effects of Organizational Structures, Processes, Practices, and Decision Makers' Sexism*, 6 FRONTIERS PSYCHOL. 1, 7–8 (2015).

effective policies and procedures to recognize, penalize, and prevent sexual harassment created the circumstances necessary for individual harassers to act on their proclivities for harassment.

103.    McDonald's is aware of the rampant sexual harassment at its restaurants nationwide.  On information and belief, hundreds or even thousands of women have complained about sexual harassment at McDonald's restaurants, and dozens of women have filed lawsuits or charges of discrimination.  Despite being on notice of systemic sexual harassment, McDonald's has failed to take the institutional action necessary to adequately address and prevent sexual harassment of its workers.

104.    This inaction by Defendants facilitated a culture of sexual harassment and caused Plaintiffs and other class members to be subjected to sexual harassment and a hostile work environment.

105.    The constant harassment, and Defendants' failure to stop it, caused workers to suffer emotional distress, humiliation, indignity, outrage, embarrassment, and harm to reputation, among other things.[16]

---

[16]    Research shows that experiencing ambient sexual harassment—that is, a general environment of sexual harassment, which may involve witnessing or hearing about a co-worker's workplace sexual harassment—has demonstrated negative psychological and job-related consequences.  For example, one survey showed that bystanders of sexual harassment articulated being less satisfied with life and experienced increased stress, depression and anxiety symptoms, and a desire to withdraw from their workplace.  *See generally* Kathy Ann Hanisch, *A Causal Model of General Attitudes, Work Withdrawal, and Job Withdrawal, Including Retirement* (1990) (unpublished Ph.D. dissertation, University of Illinois Urbana-Champaign) (on file with ProQuest Dissertations Publishing) (individuals less satisfied with their work demonstrate withdrawal through frequent tardiness, absences, and desires to leave their positions).  Another study found that low-wage workers who experienced ambient sexual harassment exhibited symptoms that mimicked those of individuals who were directly harassed: they were more withdrawn from their work and reported more symptoms of psychological distress, including depression and anxiety.  Theresa M. Glomb et al., *Ambient Sexual Harassment: An Integrated Model of Antecedents and Consequences*, 71 ORG. BEHAV. & HUM. DECISION PROCESSES 322–23 (1997).  In addition, research shows that the harmful psychological and job withdrawal effects of ambient sexual harassment are not only prompted by observation of direct sexual harassment, but by observation of institutional negligence in effectively dealing with sexual harassment.  Kathi Miner-Rubino & Lilia M. Cortina, *Beyond Targets: Consequences of Vicarious Exposure to Misogyny at Work*, 92 J. APPLIED PSYCHOL. 1254, 1263–64 (2007).

106.    Upon information and belief, the rampant sexual harassment and hostile work environment were so egregious that they drove some workers to leave, thereby constructively terminating the workers and causing them to lose their pay and benefits.

**D.    Corporate Structure: Joint Employers & Apparent Agency**

107.    The McDonald's Corporate Defendants operate, franchise, and service a system of restaurants that prepare, assemble, package, and sell a limited menu of value-priced foods under the "McDonald's System."  The McDonald's System is a concept of restaurant operations that includes, among other things, certain rights in trademarks, real estate, marketing, and operational information designed to promote uniformity of operations.

108.    The McDonald's Corporate Defendants have franchise agreements with Dickerson and with Defendants MLMLM and M.A.A.K.S. that require MLMLM and M.A.A.K.S. to strictly adhere to the McDonald's System, including, *inter alia*, by complying with all standards, business policies, practices and procedures prescribed by the McDonald's Corporate Defendants; using formulas, methods and policies relating to day-to-day operations, inventory, accounting, management, and advertising that are set forth in detailed manuals developed and provided by the McDonald's Corporate Defendants; using corporate-supplied or approved equipment and food products; submitting to regular comprehensive site inspections and computer monitoring; and sharing a percentage of gross sales revenues with the McDonald's Corporate Defendants.

109.    The franchise agreements that the McDonald's Corporate Defendants maintain with Dickerson, MLMLM, and M.A.A.K.S. vest in the McDonald's Corporate Defendants significant control over restaurant operations, working conditions, personnel training and discipline, and the finances of franchisees' restaurants, and give the McDonald's Corporate Defendants unlimited and unrestricted authority to inspect restaurants to monitor workplace

20

conditions, including labor conditions, and to ensure compliance with the standards and policies of the McDonald's Corporate Defendants.

110.    The McDonald's Corporate Defendants maintain national franchise standards to which all of their franchisees are expected and required to adhere, and that affect almost every aspect of the restaurants' functioning, including practices and policies affecting crew members' labor conditions.  Upon information and belief, Dickerson, MLMLM and M.A.A.K.S are subject to these national franchise standards.

111.    On information and belief, the McDonald's Corporate Defendants evaluate and grade all franchisees, including Dickerson, MLMLM, and M.A.A.K.S., on whether they have satisfied their franchise standards, including standards governing the recruitment, development, training, and retention of qualified personnel.  On information and belief, McDonald's Corporate Defendants impose very specific workplace policies that must be followed by all workers, down to minute details about day to day tasks.  On information and belief, McDonald's Corporate Defendants monitor the franchisee's operations at the micro-level to ensure that McDonald's policies are carried out, including through detailed on-site inspections, at which McDonald's corporate representatives may identify specific workers who should be disciplined.  McDonald's Corporate Defendants conduct regular in-store inspections of the 730 North Cedar Street restaurant.

112.    McDonald's Corporate Defendants may impose penalties on franchisees that deviate from these prescribed standards or that otherwise fail to fulfill their obligations under the franchise agreement, up to and including termination of the franchise agreement.

113.    The McDonald's Corporate Defendants significantly restrict the business autonomy of their franchisees, including Dickerson, MLMLM, and M.A.A.K.S., and their ability

to make independent decisions based upon their own assessment of what is best for their particular business, by instead requiring compliance with the myriad standards they impose on all their franchisee-owned restaurants as well as upon their own corporate-owned restaurants.

114.    The McDonald's Corporate Defendants exercise control over hiring, including by maintaining a nationwide website to which all applicants apply to work at any McDonald's, including, on information and belief, restaurants operated by Dickerson, MLMLM, and M.A.A.K.S.  On information and belief, McDonald's Corporate Defendants also dictate specific staffing levels, which may impede immediate transfer or termination of an accused or known harasser.

115.    The McDonald's Corporate Defendants require all General Managers working at franchise restaurants to attend "Hamburger University," operated by McDonald's Corporate Defendants, including, on information and belief, the General Managers who worked at the 730 North Cedar Street restaurant.  On information and belief, the training that McDonald's Corporate Defendants provide and provided to restaurant General Managers, including the General Managers who worked at the 730 North Cedar Street restaurant, fails to adequately prepare those General Managers to prevent harassment, investigate reports of sexual harassment, or impose appropriate remedial measures.

116.    Together with Defendants MLMLM and M.A.A.K.S., the McDonald's Corporate Defendants jointly employed Plaintiffs and all prospective class members.

117.    The McDonald's Corporate Defendants are the principals of their franchisee-agents MLMLM and M.A.A.K.S. with respect to Plaintiffs' and class members' employment claims, including claims of sexual harassment.

118.    The policies, procedures, training, guidelines, and/or practices provided by the McDonald's Corporate Defendants to their franchisees, like MLMLM and M.A.A.K.S., are insufficient to prevent discrimination against, harassment of, and/or retaliation toward, Plaintiffs and prospective class members.

119.    When Plaintiffs were hired to work at the McDonald's franchise location at 730 North Cedar Street, they believed that they were working for the McDonald's Corporate Defendants, because they were unaware of how McDonald's system of franchising worked, everything about the store location says "McDonald's," and nobody told them that they were being hired to work solely for MLMLM or M.A.A.K.S.  Indeed, they did not know anything about MLMLM or M.A.A.K.S. when they were hired, other than the unexplained initials MLMLM on their paystubs.  They knew that Dickerson's title was "owner" but understood that he too worked for McDonald's in some way.

120.    Upon information and belief, prospective class members believed that they worked for the global McDonald's corporation headquartered in Illinois, that is, McDonald's USA and McDonald's Corporation.  Class members wore a McDonald's uniform, served McDonald's products, and followed McDonald's policies and practices.  Upon information and belief, they were not told that they were being hired to work solely for Defendants MLMLM or M.A.A.K.S.  Plaintiffs and the other prospective class members reasonably believed that they were going to work for a large corporate employer with adequate resources dedicated to Human Resources issues, including the prevention and redress of sexual harassment.

121.    Upon information and belief, the McDonald's Corporate Defendants' involvement, among other things, in the operations of the 730 North Cedar Street restaurant where prospective class members worked, including by conducting in-store inspections, setting

policies, and providing logos and branding, led Plaintiffs and prospective class members to reasonably believe that the restaurant where they worked was operating and was authorized to operate on behalf of the McDonald's Corporate Defendants.

122.    McDonald's USA and McDonald's Corporation are liable for the acts of MLMLM and M.A.A.K.S. because MLMLM and M.A.A.K.S. were the apparent agents of McDonald's USA and McDonald's Corporation.

## CLASS ACTION ALLEGATIONS

123.    Plaintiffs Jenna Ries and Katlyn Barber bring this action pursuant to Federal Rule of Civil Procedure 23, on behalf of a proposed class (the "Class") consisting of all female employees who work or worked in a position below that of General Manager at Defendants' McDonald's restaurant located at 730 North Cedar Street in Mason, Michigan, since November 12, 2016.  Plaintiffs reserve the right to amend the definition of the Class based on discovery or legal developments.

124.    Plaintiff Ries also brings this action on behalf of a Subclass, consisting of all female employees who work or worked in a position below that of General Manager at Defendants' McDonald's restaurant located at 730 North Cedar Street in Mason, Michigan since January 12, 2019 (the "Title VII Subclass").

125.    Upon information or belief, the Class and Title VII Subclass have more than 50 class members.  The members of the Class are so numerous that joinder of all members is impracticable.

126.    There are questions of law and fact common to the Class and Title VII Subclass, central to the resolution of the case, and capable of class-wide resolution.  Answers to these common questions will advance this litigation significantly. Such common questions capable of

generating common answers apt to drive this litigation include, but are not limited to, the following:

    a.    whether Defendants operate the 730 North Cedar Street restaurant under a general pattern and practice of sex discrimination in the form of sexual harassment;

    b.    whether a hostile work environment existed at Defendants' 730 North Cedar Street restaurant, including whether a reasonable person, under the totality of the circumstances, would have perceived the conduct complained of as substantially interfering with employment or having the purpose or effect of creating an intimidating, hostile, or offensive employment environment;

    c.    whether Defendants were on actual notice of the sexual harassment, or whether a reasonable employer would have been aware of a substantial probability that sexual harassment was occurring such that Defendants were on constructive notice;

    d.    whether Defendants took appropriate systemic corrective actions to stop and prevent continued institutional harassment; and

    e.    whether Defendants are liable for the sexual harassment suffered by employees at the 730 North Cedar Street restaurant.

127.    Plaintiffs' claims are typical of the claims of each member of the Class and Plaintiff Ries' claims are typical of the claims of each member of the Title VII Subclass. Plaintiffs are members of the Class they seek to represent and Plaintiff Ries is a member of the Subclass she seeks to represent.  Plaintiffs were injured by the same wrongful conduct that injured other members of the Class and Subclass.

128.     Plaintiffs will fairly and adequately represent the Class and Title VII Subclass. Plaintiffs have no conflicts of interest with the Class or Subclass, and have engaged counsel who are experienced with class action litigation, discrimination on the basis of sex and sexual harassment law, and the intersection of discrimination and class action law.

129.     Class Certification is appropriate with respect to Plaintiffs' request for injunctive relief under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class and Subclass, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class and Subclass as a whole.

130.     Class Certification is appropriate with respect to Plaintiffs' request for monetary relief under Federal Rule of Civil Procedure 23(b)(3) because questions of law and fact common to the Class and Subclass predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this case.

131.     Alternatively, the existence of a pattern and practice of sexual harassment is properly certified under Federal Rule of Civil Procedure 23(c)(4) for the Class and Subclass because such claim presents only common issues.

132.     Punitive damages liability may alternatively be certified under Federal Rule of Civil Procedure 23(b)(2) because such relief focuses on the conduct of Defendants and not the individual characteristics of the Plaintiffs and are an allowable form of incidental monetary relief.

**CAUSES OF ACTION**

**COUNT I**

**VIOLATION OF MICHIGAN'S ELCRA, MCL § 37.2201,** *et seq.*
**(Sex Discrimination -- Sex Harassment)**

133.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this Complaint as though set out here word for word.

134.    Under Section 201(a) of ELCRA, MCL § 37.2201(a), an employer is a person "who has 1 or more employees, and includes an agent of that person."  All Defendants jointly employed Plaintiffs and prospective class and subclass members, and/or are agents of one another, and/or operated as an integrated enterprise employing Plaintiffs and class and subclass members.

135.    Defendants are employers within the meaning of the ELCRA because each has more than one employee.

136.    The McDonald's Corporate Defendants are the principals of their agents Defendants MLMLM and M.A.A.K.S., and are vicariously liable, because they control their policies, procedures, training, guidelines, and/or practices for handling reports of sex discrimination, sexual harassment, assault, battery, and retaliation in the workplace.

137.    The McDonald's Corporate Defendants are liable for the acts of Defendants MLMLM and M.A.A.K.S. because their involvement in and control over the operations of the McDonald's restaurant located at 730 North Cedar Street, along with the fact that the McDonald's Corporate Defendants permitted the use of their logos, branding, and trademarks at the restaurant, made Defendants MLMLM and M.A.A.K.S. the ostensible and apparent agent of the McDonald's Corporate Defendants.

27

138.    Defendants MLMLM and M.A.A.K.S. are liable for each other's acts because they operate as a single integrated enterprise, and/or jointly employed Plaintiffs and class and subclass members.

139.    Section 202(1)(a) of ELCRA, MCL § 37.2202(1)(a), makes it unlawful for an employer to "discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of . . . sex . . . ."

140.    Discrimination because of sex includes sexual harassment under ELCRA.  MCL § 37.2103(i).

141.    Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions:

> (i)    Submission to the conduct or communication is made a term or condition either explicitly or implicitly to obtain employment . . . .
>
> (ii)    Submission to or rejection of the conduct or communication by an individual is used as a factor in decisions affecting the individual's employment . . . .
>
> (iii)    The conduct or communication has the purpose or effect of substantially interfering with an individual's employment . . . or creating an intimidating, hostile, or offensive employment . . . environment.

MCL § 37.2103(i).

142.    Defendants violated the ELCRA by discriminating against Plaintiffs and class members because of their sex, including but not limited to sexually harassing them.

143.    Defendants created and allowed to be created a work environment so hostile that it altered the conditions of employment for Plaintiffs and class members.

144.    A reasonable person, under the totality of the circumstances, would have perceived the conduct complained of as substantially interfering with Plaintiffs' and class members' employment or having the purpose or effect of creating an intimidating, hostile, or offensive employment environment.

145.    The discriminatory conduct complained of was severe, pervasive, occurred frequently, and included humiliating and physically threatening harassment.

146.    Defendants were on actual and constructive notice of the harassment suffered by Plaintiffs and class members, because the harassment was pervasive, Plaintiffs and class members complained to higher management of the harassment, and managers and supervisors participated in or were present during the harassment.

147.    Under these circumstances, notice of the sexual harassment was adequate because a reasonable employer would have been aware of a substantial probability that sexual harassment was occurring.

148.    Despite being on notice of sexual harassment, Defendants failed to take remedial action and prevent future harassment of Plaintiffs and class members.

149.    Defendants sexually harassed Plaintiffs and class members, including but not limited to:

        a.    Exposing and subjecting Plaintiffs and class members to a sexually hostile work environment;

        b.    Permitting the sexual assault and battery of Plaintiffs and other class members;

        c.    Failing to address, investigate, or take reasonable steps to redress sexual harassment;

d.    Failing to address, investigate, or take reasonable steps to redress the sexually hostile work environment;

e.    Requiring Plaintiffs and the class members to tolerate a sexually menacing and hostile work environment as a condition of employment; and

f.    Other acts of sexual harassment, assault and/or battery yet to be discovered.

150.    The foregoing constitutes a requirement that Plaintiffs and class members submit to the conduct as a term or condition of employment, submission to or rejection of the conduct and communications were used as a factor in decisions affecting their employment, and the conduct had the effect of substantially interfering with their employment as described in MCL § 37.2103(i).

151.    As a direct and proximate result of Defendants' conduct in violation of the ELCRA, MCL § 37.2102, Plaintiffs and class members have suffered damages including:

a.    Economic damages based on lost wages and fringe benefits, both past and future;

b.    Non-economic damages for injuries such as emotional distress, harm to reputation, embarrassment, humiliation, inconvenience, indignity, outrage, disappointment, and other consequential injuries;

c.    Attorney fees and costs; and

d.    Other damages to be determined.

## COUNT II
## VIOLATION OF TITLE VII, as amended, 42 U.S.C. § 2000e, *et seq.*
## (Sex Discrimination -- Sex Harassment and Hostile Work Environment)

152.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this Complaint as though set out here word for word.

153.    On November 8, 2019, Plaintiff Jenna Ries filed a timely charge of sex discrimination and sexual harassment with the United States Equal Employment Opportunity Commission ("EEOC"), attached hereto as Exhibit A.  On February 5, 2020, the EEOC issued a dismissal and notice of right to sue, attached hereto as Exhibit B.

154.    Defendants violated Title VII when they subjected Plaintiffs and class and subclass members to unlawful severe or pervasive sexual harassment and sex-based harassment that altered Plaintiffs' and class members' working conditions and created a hostile working environment.  Defendants have engaged in a company-wide and systematic policy, pattern, and/or practice of such unlawful sex discrimination against their female restaurant workers.

155.    Despite having actual and constructive knowledge of the sexual harassment and hostile work environment to which Plaintiffs and class members have been subjected, Defendants failed to take immediate and appropriate corrective action to stop it.  Despite having actual and constructive knowledge that the sexual harassment and hostile work environment constituted a systemic, institutional problem, Defendants failed to take systemic, institutional steps to remedy the sexual harassment and hostile work environment.

156.    By failing to promulgate an adequate policy against sexual harassment, failing to maintain an effective procedure for complaining about such conduct, and failing to otherwise inform employees that McDonald's will not tolerate sexual harassment in the workplace, Defendants did not take reasonable care to prevent sexual harassment and did not provide a reasonable avenue of complaint about such conduct.

157.    Defendants knew or should have known that their actions constituted unlawful sex discrimination, including sexual harassment and hostile work environment, and showed willful and/or reckless disregard for Plaintiffs' and class members' statutorily protected rights.

158.    The acts and omissions of Defendants constitute a pattern and practice of discrimination against Plaintiffs and other members of the proposed class and subclass.

159.    As a direct result of Defendants' discriminatory acts, Plaintiff Ries and the Title VII Subclass are entitled to damages including, but not limited to:

   a.  Past and future lost wages and benefits;

   b.  Compensation for past and future physical and emotional distress;

   c.  Punitive damages;

   d.  Attorneys' fees and costs; and

   e.  Pre-judgment interest.


### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, pray for relief as follows:

A.  Certification of a Class and Subclass, as that class and subclass have been defined above;

B.  A declaration that Defendants are violating or have violated the civil rights of Plaintiffs and the Class and Subclass they represent.

C.  An injunction requiring Defendants to remedy the civil rights violations described herein, and to prevent future sexual harassment and subjection of their employees to a sexually hostile work environment, by, among other things:

   i.  Forming a committee of McDonald's workers that, together with McDonald's and independent experts, will devise worker-centered and worker-led practices to prevent and stop sex harassment.

ii.    Developing and implementing mandatory training focused on recognizing, preventing, and addressing sexual harassment at McDonald's.  The training should be informed by worker feedback, specifically by the feedback and input of survivors of sexual harassment at McDonald's, should be designed to specifically address the scenarios faced by McDonald's workers, and should take into account the working conditions and demographic background of McDonald's workforce.

iii.    Revising anti-harassment policies to ensure that the policies are based on worker and survivor feedback and input, make managers and supervisory employees accountable for the work environment in their restaurant locations, and are written in terms that a non-lawyer McDonald's worker would understand.

iv.    Implementing a safe reporting mechanism including multiple channels for reporting sexual harassment, and adequately communicating that reporting mechanism to all workers.

v.    Creating a protocol for investigation of employee complaints by an entity or individuals skilled in conducting and documenting workplace investigations, including trauma-informed ways of asking questions of individuals reporting harassment.

vi.    Establishing a remedial scheme that assures accountability for parties found to have engaged in harassment and managers who have failed to prevent harassment, and that assures a safe, harassment-free environment for those who report harassment.

vii.    Adopting and implementing practices to ensure that employees who report harassment are not the subject of retaliation.

viii.    Monitoring the number and type of complaints lodged at each restaurant and the resolution thereof.

ix.    Establishing metrics by which franchises will be evaluated for success in preventing and remedying sexual harassment and monitored for compliance, and establishing penalties for noncompliance, up to and including termination of the franchise agreement.

D.    An order retaining jurisdiction over this action to ensure that McDonald's complies with such a decree.

E.    Judgment in an amount that the Court or jury determines to be fair, just, and adequate compensation for the damages that Plaintiffs and class members have sustained, past and future, together with interest, in an amount not less than $100,000 per class member, exceeding five million dollars;

F.    An award of punitive damages that the Court or jury determines to be fair and sufficient to punish, penalize, and/or deter Defendants;

G.    An award of reasonable attorneys' fees and costs; and

H.    Any other relief that the court deems appropriate.

Respectfully submitted,

By:  _/s/ Darcie R. Brault_
Darcie R. Brault (P43864)                    Eve H. Cervantez
MCKNIGHT, CANZANO, SMITH,              Elizabeth Vissers
RADTKE & BRAULT, P.C.                       ALTSHULER BERZON, LLP
423 N. Main Street, Suite 200               177 Post Street, Suite 300
Royal Oak, MI  48067                           San Francisco, CA 94108
(248) 354-9650                                    (415) 421-7151
dbrault@michworkerlaw.com              ecervantez@altshulerberzon.com
                                                       evissers@altshulerberzon.com

Gillian Thomas
AMERICAN CIVIL LIBERTIES UNION
WOMEN'S RIGHTS PROJECT
125 Broad Street
New York, NY 10004
(212) 284-7356
gthomas@aclu.org


Dated:  May 6, 2020


## JURY DEMAND

Plaintiffs hereby demand a trial by jury as to all those issues so triable as of right.

Respectfully submitted,


By:  _/s/ Darcie R. Brault_
Darcie R. Brault (P43864)                    Eve H. Cervantez
MCKNIGHT, CANZANO, SMITH,              Elizabeth Vissers
RADTKE & BRAULT, P.C.                       ALTSHULER BERZON, LLP
423 N. Main Street, Suite 200               177 Post Street, Suite 300
Royal Oak, MI  48067                           San Francisco, CA 94108
(248) 354-9650                                    (415) 421-7151
dbrault@michworkerlaw.com              ecervantez@altshulerberzon.com
                                                       evissers@altshulerberzon.com

Gillian Thomas
AMERICAN CIVIL LIBERTIES UNION
WOMEN'S RIGHTS PROJECT
125 Broad Street
New York, NY 10004
(212) 284-7356
gthomas@aclu.org


Dated:  May 6, 2020