UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNA RIES, KATLYN BARBER, JOANNE
BISHOP and EMILY ANIBAL, on behalf of
themselves and all those similarly situated,

Plaintiffs,                                                     Case No. 20-cv-0002-JTN-RSK

v.                                                              Hon. Hala Y. Jarbou

McDONALD'S USA, LLC, McDONALD'S                                 Mag. Judge Ray L. Kent
CORPORATION, and MLMLM
CORPORATION d/b/a McDONALD'S

Defendants.

_____/

DARCIE R. BRAULT (P43864)              C. THOMAS LUDDEN (P45481)
McKnight, Canzano, Smith,              JESSICA L. WYNN (P75442)
Radtke & Brault, P.C.                  Lipson Neilson, P.C.
423 N. Main Street, Suite 200          3910 Telegraph Road, Suite 200
Royal Oak, MI 48067                    Bloomfield Hills, MI 48302
(248) 354-9650                         (248) 593-5000
dbrault@michworkerlaw.com              tludden@lipsonneilson.com
                                       jwynn@lipsonneilson.com
GILLIAN THOMAS
American Civil Liberties Union         *Attorneys for Defendant MLMLM Corp.*
Women's Rights Project
125 Broad Street                       ELIZABETH B. McREE
New York, NY 10004                     ANDREW J. CLOPTON
(212) 284-7356                         JENNIFER W. PLAGMAN
gthomas@aclu.org                       Jones Day
                                       77 W. Wacker Drive
EVE H. CERVANTEZ                       Chicago, IL 60601-1692
ELIZABETH VISSERS                      (312) 269-4374
Altshuler Berzon, LLP                  emcree@JonesDay.com
177 Post Street, Suite 300             aclopton@JonesDay.com
San Francisco, CA 94108                jplagman@JonesDay.com
(415) 421-7151
ecervantez@altshulerberzon.com         *Attorneys for McDonald's USA LLC and*
evissers@altshulerberzon.com           *McDonald's Corporation*

*Attorneys for Plaintiffs*

_____/

**REDACTED BRIEF IN SUPPORT OF PLAINTIFFS' RESPONSE IN OPPOSITION
TO DEFENDANTS MCDONALD'S, LLC'S AND MCDONALD'S CORPORATION'S
MOTION FOR SUMMARY JUDGMENT**
**(Oral Argument Requested)**

# TABLE OF CONTENTS

INTRODUCTION AND FACTUAL BACKGROUND ..................................................1

STANDARD ...........................................................................................................1

ARGUMENT ...........................................................................................................2

I.   A Jury Could Find That McDonald's Was Plaintiffs' Joint Employer ..............................2

    A. Whether McDonald's Exercised Control Over Plaintiffs' Working Conditions
Presents Material Fact Disputes for a Jury ...........................................................3

      1.  McDonald's Exerted Significant Control Over Franchisees' Workforce
Operations ...................................................................................................3

      2.  McDonald's Cited Authority is Inapposite or Otherwise
Distinguishable ..........................................................................................10

    B.  Whether McDonald's Possessed The Right To Control Material Aspects
of Plaintiffs' Working Conditions Must Be Resolved By A Jury ........................12

II.   A Jury Could Find McDonald's Liable Under Principles Of Apparent Agency ...............17

    A.  Liability Under Title VII And ELCRA Can Be Based on Apparent Agency ........18

    B.  McDonald's Interpretation Of Title VII's And ELCRA's "Agency" Language
Is Incorrect ...........................................................................................................21

    C.  Material Fact Disputes Preclude Summary Judgement On Apparent Agency ......23

      1.  A Jury Could Find That Plaintiffs Believed Franchisee Was
McDonald's Agent .....................................................................................23

      2.  A Jury Could Find That Plaintiffs' Beliefs That Franchisee
Was McDonald's Agent Were Caused By McDonald's "Acts Or
Neglect." ....................................................................................................26

      3.  Whether Plaintiffs' Beliefs Were "Reasonable" Presents A
Disputed Fact For The Jury .......................................................................31

      4.  McDonald's "Reliance" Argument Is Meritless .......................................37

III.    Plaintiffs Have Standing To Seek Injunctive Relief ..........................................................40

CONCLUSION.......................................................................................................................41

# TABLE OF AUTHORITIES

**Cases**

*A.H. by & through Hunt v. Wendy's Co.*,
　2018 WL 4002856 (M.D. Pa. Aug. 22, 2018) (unpublished) ...............................................3, 14

*Aero Taxi-Rockford v. Gen. Motors Corp.*,
　2006 WL 1479915 (Mich. Ct. App. May 30, 2006) (unpublished) ...............................1, 15, 39

*Estate of Anderson v. Denny's Inc.*,
　987 F.Supp.2d 1113 (D.N.M. 2013) ....................................................................................16

*Ashker v. Ford Motor Co.*,
　1997 WL 33354478 (Mich. Ct. App. Jan. 21, 1997) (unpublished) ..........................................2

*Boire v. Greyhound Corp.*,
　376 U.S. 473 (1964).......................................................................................................1, 12

*Browning-Ferris Indus. of Cal., Inc. v. NLRB*,
　911 F.3d 1195 (D.C. Cir. 2018) .............................................................................................7

*Burlington Indus., Inc. v. Ellerth*,
　524 U.S. 742 (1998).............................................................................................................19

*Butler v. McDonald's Corp.*,
　110 F.Supp.2d 62 (D.R.I. 2000).............................................................................................17

*Chambers v. Trettco, Inc.*,
　463 Mich. 297 (2000) .......................................................................................................2, 20

*Chires v. Cumulus Broadcasting, LLC*,
　543 F.Supp.2d 712 (E.D. Mich. 2008)..............................................................................21, 23

*Christopher v. Stouder Mem'l Hosp.*,
　936 F.2d 870 (6th Cir. 1991) ...............................................................................................21

*Cleveland Branch, N.A.A.C.P. v. City of Parma, Oh.*,
　263 F.3d 513 (6th Cir. 2001) ...............................................................................................41

*Crinkley v. Holiday Inns, Inc.*,
　844 F.2d 156 (4th Cir. 1988) ...............................................................................................38

*Cropp v. Golden Arch Realty Corp.*,
　2009 WL 10710585 (D.S.C. Mar. 31, 2009 ) (unpublished) ............................................11, 40

*Dotson v. McDonald's Corp.*,
　1998 WL 164871 (N.D. Ill. Apr. 2, 1998) (unpublished).......................................................22

*D.L.S. v. Maybin*,
   130 Wash.App. 94 (Wash. Ct. App. 2005) ............................................................40

*EEOC v. Skanska USA Bldg., Inc.*,
   550 F.App'x 253 (6th Cir. 2013) (unpublished) ...................................................12

*Elezovic v. Ford Motor Co.*,
   472 Mich. 408 (2005) ......................................................................................20, 22

*Falls v. Sporting News Publ'g Co.*,
   834 F.2d 611 (6th Cir. 1987) .............................................................................2, 12

*Faragher v. City of Boca Raton*,
   524 U.S. 775 (1998) ..............................................................................................17

*Fernander v. Thigpen*,
   278 S.C. 140 (1982) ..............................................................................................17

*Ford v. Am. Nat. Ins. Co.*,
   46 Mich.App. 368 (1973) ......................................................................................31

*Gilbert Fam. P'ship v. Nido Corp.*,
   679 F. Supp. 679 (E.D. Mich. 1988) .....................................................................18

*Gray v. McDonald's USA, LCC*,
   874 F.Supp.2d 743 (W.D. Tenn. 2012) .................................................................22

*Greenawalt v. AT&T Mobility LLC*,
   642 F.App'x 36 (2d Cir. 2016) (unpublished) .........................................................1

*Grewe v. Mt. Clemens General Hosp.*,
   404 Mich. 240 (1978) ...................................................................................*passim*

*Harris v. Midas*,
   2017 WL 5177668 (W.D. Pa. Nov. 8, 2017) .......................................................5, 14

*In re Domino's Pizza Inc.*,
   2018 WL 4757944 (S.D.N.Y. Sept. 30, 2018) (unpublished) .................................15

*In re Jimmy John's Overtime Litig.*,
   2018 WL 3231273 (N.D. Ill. June 14, 2018) (unpublished) ...........................11, 15

*Jackson v. Goodman*,
   69 Mich.App 225 (Mich.App. 1976) .....................................................................31

*James v. Alberts*,
   464 Mich. 12 (2001) ..............................................................................................19

*Johnson v. McDonald's Corp.*,
   2021 WL 2255000 (E.D. Mo. June 3, 2021) ........................................................3

*Kassman v. KPMG LLP*,
   925 F.Supp.2d 453 (S.D.N.Y. 2013)...................................................................40

*Lincoln v. Fairfield-Nobel Co.*,
   76 Mich.App. 514 (1977).....................................................................................15

*Little v. Howard Johnson Co.*,
   183 Mich.App. 675 (1990)...................................................................................38

*Loewen v. Grand Rapids Med. Educ. Partners*,
   2012 WL 1190145 (W.D. Mich. Apr. 9, 2012) (unpublished) .............................11

*Mais v. Allianz Life Ins. Co. of N. Am.*,
   34 F.Supp.3d 754 (W.D. Mich. 2014) ................................................................17

*Mann v. Prudential Real Estate Affiliates, Inc.*,
   1990 WL 205286 (N.D. Ill. Dec. 10, 1990) (unpublished)...................................40

*Marie v. Am. Red Cross*,
   771 F.3d 344 (6th Cir. 2014) ................................................................................2

*McClenton v. Off. of Evolutions, Inc.*,
   2006 WL 522389 (W.D. Tenn. Mar. 2, 2006) (unpublished)...............................11

*McFarland v. Breads of the World, LLC*,
   2011 WL 801815 (S.D. Ohio Feb. 1, 2011) (unpublished) .............................11, 15

*Meretta v. Peach*,
   195 Mich.App. 695 (1992)....................................................................................1

*Meritor Sav. Bank, FSB v. Vinson*,
   477 U.S. 57 (1986)..............................................................................................19

*Miller v. D.F. Zee's Inc.*,
   31 F.Supp.2d 792 (D. Or. 1998) .............................................................14, 17, 20

*Miller v. McDonald's Corp.*,
   150 Or.App. 274 (1997).......................................................................................17

*Morris v. Oldham Cnty. Fiscal Ct.*,
   201 F.3d 784 (6th Cir. 2000) ..............................................................................22

*Myers v. Garfield & Johnson Enters., Inc.*,
   679 F.Supp.2d 598 (E.D. Pa. 2010) .......................................................... *passim*

*Nethery v. Quality Care Invs., L.P.*,
   814 F.App'x 97 (6th Cir. 2020) .......................................................................11, 21

*O'Banner v. McDonald's Corp.*,
  173 Ill.2d 208 (1996) ...............................................................................40

*Ochoa v. McDonald's Corp.*,
  133 F.Supp.3d 1228 (N.D. Cal. 2015) ...............................................11, 17, 24, 30

*Parrott v. Marriott Int'l, Inc.*,
  2017 WL 3891805 (E.D. Mich. Sept. 6, 2017) ..........................................................3

*Patterson v. Domino's Pizza, LLC*,
  60 Cal.4th 474 (2014) ...............................................................................11

*Perry v. Pediatric Inpatient Critical Care Servs., P.A.*,
  2020 WL 1248263 (W.D. Tex. 2020) .....................................................................21

*Peters v. Berman*,
  2008 WL 2744421 (Mich. Ct. App. July 15, 2008) (unpublished).........................................37

*Salazar v. McDonald's*,
  944 F.3d 1024 (9th Cir. 2019) .................................................................11, 20, 39

*Salazar v. McDonald's Corp.*,
  2016 WL 4394165 (N.D. Cal. Aug. 16, 2016) ............................................... *passim*

*Sanford v. Main St. Baptist Church Manor, Inc.*,
  327 F.App'x 587 (6th Cir. 2009)(unpublished) .........................................................2

*Satterfield v. Tennessee*,
  295 F.3d 611 (6th Cir. 2002) ........................................................................22

*Savas v. William Beaumont Hosp.*,
  216 F.Supp.2d 660 (E.D. Mich. 2002) .................................................................21

*Seabrook v. Michigan Nat. Corp.*,
  206 Mich.App. 314 (1994).............................................................................22

*Senter v. Gen. Motors Corp.*,
  532 F.2d 511 (6th Cir. 1976) ........................................................................40

*Swallows v. Barnes & Noble Book Stores, Inc.*,
  128 F.3d 990 (6th Cir. 1997) ......................................................................2, 19

*Thomas v. Freeway Foods, Inc.*,
  406 F.Supp.2d 610 (M.D.N.C. 2005) ..................................................................17

*Tolton v. Day*,
  2020 WL 2542129 (D.D.C. May 19, 2020)...............................................................40

*Tuttle v. Embury-Martin Lumber Co.*,
  192 Mich. 385 (1916) ................................................................................3

*Wadlington v. Credit Acceptance Corp.*,
    76 F.3d 103 (6th Cir. 1996) ............................................................22

*Walton v. May*,
    2020 WL 5578422 (M.D. Ga. July 8, 2020) (unpublished).....................40

*West v. LQ Mgmt., LLC*,
    156 F.Supp.3d 1361 (S.D. Fla. 2015) .............................................29

*Whitfield v. McDonald's*,
    2010 WL 6593297 (Mich. Cir. Ct. July 28, 2010)................................22

*Wright v. Mountain View Lawn Care, LLC*,
    2016 WL 1060341 (W.D. Va. Mar. 11, 2016)(unpublished) ...................11, 22, 40

**Statutes**

42 U.S.C. §2000e-2(a) ....................................................................18

42 U.S.C. §2000e-2(b) ....................................................................18

Cal. Civ. Code §2295 ......................................................................19

MCL §37.2201 ..............................................................................18

**Other Authorities**

Black's Law Dictionary (11th ed. 2019)..............................................19

Restatement (Second) of Agency §265 (1958).......................................19

Restatement (Third) of Agency §2.03 (2006)...............................18, 31, 37

## INTRODUCTION AND FACTUAL BACKGROUND

McDonald's is liable on two independent grounds:  (1) McDonald's retained or exercised sufficient control over Plaintiffs' employment conditions to qualify as their "joint employer." (2) McDonald's caused Plaintiffs to reasonably believe MLMLM and/or M.A.A.K.S. ("Franchisee") was McDonald's agent.

McDonald's admits its business model depends upon strict control over every aspect of franchise operations, and upon franchise restaurants being indistinguishable from corporate restaurants in the eyes of consumers *and* workers. McDonald's retained and exercised such control over Franchisee.  Yet McDonald's insists it was powerless to control the rampant sexual harassment faced by Plaintiffs, or Franchisee's egregious failure to address the Mason McDonald's hostile work environment.

McDonald's cannot have it both ways. The record evidences numerous triable issues of fact whether McDonald's was Plaintiffs' joint employer or promoted the perception among workers that Franchisee was its agent. Summary judgment is inappropriate.

## STANDARD

Whether McDonald's qualifies as a "joint employer" is "essentially a factual issue," *Boire v. Greyhound Corp.*, 376 U.S. 473, 481 (1964).  "Because determining joint employment is 'fact-intensive,' awards of summary judgment on this issue, although sometimes appropriate, are rare." *Greenawalt v. AT&T Mobility LLC*, 642 F.App'x 36, 37 (2d Cir. 2016) (unpublished)(citation omitted). Similarly, "'[w]here there is a disputed question of agency, any testimony, either direct or inferential, tending to establish agency creates a question of fact for the jury to determine.'" *Aero Taxi-Rockford v. Gen. Motors Corp.*, 2006 WL 1479915, at *2 (Mich. Ct. App. May 30, 2006)(unpublished) (reversing summary judgment for defendant on

1

apparent authority under Michigan law)(quoting *Meretta v. Peach*, 195 Mich.App. 695, 697 (1992)).

## ARGUMENT

### I.     A Jury Could Find That McDonald's Was Plaintiffs' Joint Employer.

Title VII and ELCRA impose obligations on all entities that exercise or possess the right to exercise control over an employee's terms or conditions of employment. An entity is liable as a "joint employer" of another entity's formal employees if it "has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer." *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 993 n.4 (6th Cir. 1997)(citation omitted).

Some of the factors relevant to finding joint employer liability under Title VII include "authority to hire, fire, and discipline, control over pay and insurance, and supervision." *Sanford v. Main St. Baptist Church Manor, Inc.*, 327 F.App'x 587, 594 (6th Cir. 2009)(unpublished)(citation omitted).  McDonald's agrees it is the *right* to exercise control that matters. *See* Memorandum of Law In Support of McDonald's Motion For Summary Judgment, ECF 156 ("Mot.") at 1 (PageID.3305)("ability to … affect the essential terms and conditions of employment;" "control, or have authority to control, any essential terms or conditions of Plaintiffs' employment"). *See Marie v. Am. Red Cross*, 771 F.3d 344, 352 (6th Cir. 2014)("right to control").

Under ELCRA, courts assess the "economic realities" of the "employment situation as a whole" including "[c]ontrol of the worker's duties, payment of wages, authority to hire and fire, and responsibility for the maintenance of discipline,"  and "whether the duties performed by plaintiff were an integral part of [defendant]'s business and contributed to the accomplishment of a common goal." *Falls v. Sporting News Publ'g Co.*, 834 F.2d 611, 614 (6th Cir. 1987)(citations

omitted); *see also Ashker v. Ford Motor Co.*, 1997 WL 33354478, at *1 (Mich. Ct. App. Jan. 21,

1997)(unpublished). Like Title VII, ELCRA incorporates the common law of agency, *Chambers*

*v. Trettco, Inc.*, 463 Mich. 297, 311 (2000), and in Michigan, "the test of the [employee]

relationship is the right of control." *Tuttle v. Embury-Martin Lumber Co.*, 192 Mich. 385, 399

(1916).

There is no "franchisor" exception to Title VII or ELCRA.  Just recently, a court rejected

McDonald's effort to carve out such an exception, permitting plaintiff to attempt to build a

record precisely like the one Plaintiffs amassed here.  *See Johnson v. McDonald's Corp.*, 2021

WL 2255000, at *2 (E.D. Mo. June 3, 2021)(denying motion to dismiss where plaintiff alleged

McDonald's frequently inspected the franchise, specified particular employees not performing to

McDonald's standards, trained general managers at McDonald's corporate-headquartered

Hamburger University, and provided guidance about employee training, including sexual

harassment training); *see also A.H. by & through Hunt v. Wendy's Co.*, 2018 WL 4002856, at *6

(M.D. Pa. Aug. 22, 2018)(similar); *Parrott v. Marriott Int'l, Inc.*, 2017 WL 3891805, at *2, *4

(E.D. Mich. Sept. 6, 2017)(in FLSA case, franchisor control through broad contractual rights,

frequent inspections, manager training at corporate headquarters, guidance about employee

training, financial audits, setting workplaces standards and hiring procedures, and authority to

terminate plaintiffs' employment via terminating franchise may be sufficient to establish joint

employer liability).

### A.  Whether McDonald's Exercised Control Over Plaintiffs' Working Conditions Presents Material Fact Disputes for a Jury.

#### 1.  McDonald's Exerted Significant Control Over Franchisees' Workforce Operations.

Defendants are parties to standard Franchise Agreements ("FA") which reserved to

McDonald's substantial control, including the right to terminate the Agreement if Franchisee

failed to comply with McDonald's standards. McDonald's National Franchising Standards

("NFS") include standards for staffing, training, and passing detailed inspections.[1]

McDonald's falsely implies that compliance with NFS is optional (Mot. at 5-7,

PageID.3311).  A jury could find otherwise.  The franchise agreements are for 20-year terms and

automatically terminate thereafter—***with no payment for the value of the business***—unless

Franchisee establishes eligibility for "rewrite" by meeting McDonald's standards.[2]

Compliance with the FA and NFS was determined through "graded visits."[3]  McDonald's

reserves "the right to go and see the restaurant or assess the restaurant at any point in time."[4]

Dickerson understood that to stay in business he was required to follow McDonald's NFS as

determined by graded visits.[5] The FA and NFS allowed McDonald's to exercise control over

Plaintiffs and other Mason McDonald's workers:

***Workplace Rules***.  McDonald's exercised direct control over the personnel policies that

applied to Plaintiffs by requiring Franchisee to place a 9-in-1 "Employee Resources" poster in

the Mason McDonald's crew room that described employee rights, pay, and safety, and included

---

[1] Ex-P45, 2018 NFS (ECF176-05, sealed); Ex-P101, 2014 NFS, MCD_Ries_004283-4288 (sealed).

[2] Ex-J-2, Bonta Deposition 97:5-98:11 (sealed); Bonta Deposition 53:15-55:12; 56:11-21 (ECF188-2, PageID.4471-4472); Bonta Deposition 115:13-117:11, 121:3-122:6 (ECF176-10, sealed); Ex-L, Dickerson Deposition 77:10-78:23 (PageID.4925-4926); FA-§20(c)(ECF154-03, PageID.3094).

[3] FA-§18 (ECF154-03, PageID.3092-3093); Ex-J-1, Bonta Deposition 82:17-23 (PageID.4893); Ex-J-2, Bonta Deposition  86:6-88:8, 136:18-139:9 (sealed); Bonta Deposition 123:19-124:22, 126:9-21 (ECF176-10, sealed); Ex-P45, 2018 NFS at MLMLM001657-1658 (ECF176-05, sealed); Ex-P101, 2014 NFS at MCD_Ries_004284-4285 (sealed).

[4] Bonta Deposition 69:12-23 (ECF188-2, PageID.4474); FA-§12 (ECF154-03, PageID.3088).

[5] Ex-L, Dickerson Deposition 79:23-80:16, 94:16-19 (PageID.4926, 4930); FA-§4 (ECF154-03, PageID.3084); Bonta Deposition 57:1-58:3 (ECF188-2, PageID.4472-4473); Ex-M, Bitner Deposition 270:18-272:8 (PageID.4948); Ex-N, Pyers Deposition 195:1-15, 199:13-19, 201:11-19 (PageID.4952-4953).

an explicit McDonald's-dictated sexual harassment policy.[6]  McDonald's inspected to ensure its poster was posted.[7]  Even though that specific poster was not required after 2018, it could still be purchased and used to satisfy general poster requirements.[8]  Franchisee asserts that the sexual harassment policy on this McDonald's-required poster was part of its policies and applicable to Plaintiffs.[9]  That Plaintiffs are "covered by [franchisor's] sexual harassment and other workplace policies" supports their joint employment claim.  *Myers v. Garfield & Johnson Enters., Inc.*, 679 F.Supp.2d 598, 609-10 (E.D. Pa. 2010); *see also Harris v. Midas*, 2017 WL 5177668, at *2 (W.D. Pa. Nov. 8, 2017)(franchisor "provided training and guidance to its franchisee[] … regarding  …  inclusion of a sexual harassment policy").

*Supervision and Scheduling.*  McDonald's determines whether Franchisee employees are rendering "competent and courteous service" as the FA requires, through "regular observations" including graded visits.[10]  ██████████████████████████████ ██████████████████████████████—about one per week.[11]

During graded visits, McDonald's inspectors checked service and shift management against specific standards.[12]  Inspectors made detailed comments on specific employees' job

---

[6] Ex-P103, 2012 NRBES at MCD_Ries_004298 (sealed); Bonta Deposition 124:24-126:8 (ECF176-10, sealed); Ex-J-2, Bonta Deposition 145:22-147:23 (sealed); 9-in-1 poster (ECF161-08, PageID.3449); Ex-L, Dickerson Deposition 117:9-118:6 (PageID.4931-4932); Ex-M, Bitner Deposition 257:6-21 (PageID.4945).

[7] Ex-K-1, Thelen Deposition 118:1-2 (PageID.4918); Thelen Deposition 204:11-205:11 (ECF176-11, sealed).

[8] Ex-P102, 2018 NRBES at MCD_Ries_004312 (sealed); Ex-J-2, Bonta Deposition 149:6-152:4; 152:22-154:7 (sealed).

[9] Ex-S, Counsel Email (PageID.4977).

[10] Ex-J-2, Bonta Deposition 79:19-81:5 (sealed); FA-§12(h)(iii) (ECF154-03, PageID.3088).

[11] Bonta Deposition 159:2-10, 160:23-161:19 (ECF176-10 sealed); Ex-P32, Business Review at MLMLM000081-000082 (ECF176-04, sealed).

[12] Ex-P28, BSV (ECF176-02, sealed); Ex-P29, BSV (sealed); Ex-P31, CEV (sealed); Ex-P106, CEV (sealed); Ex-P108, CEV (sealed); Ex-P109, CEV (sealed); Ex-J-1, Bonta Deposition 230:5-

performance.[13]  Workers whose graded visit performance was unsatisfactory might receive additional training.[14]

The Mason McDonald's lost points on graded inspections if:

- Employees were not neat and clean, with a healthy appearance, wearing clean uniforms.[15]

- Managers did not make a change in worker positioning to address bottlenecks.[16]

- Managers did not set targets for work and communicate them with crew members throughout the shift.[17]

- Managers failed to conduct regular inspections ("travel paths") every half hour.[18]

- Managers failed to exhibit "hospitality gestures" e.g., opening doors for customers.[19]

- Crew was not polite and friendly.[20]

McDonald's inspectors observed minute details including:

---

18, 231:6-233:16, 234:3-16, 236:11-22 (PageID.4912-4913); Ex-K-1, Thelen Deposition 111:15-112:5 (PageID.4917).

[13] Ex-L, Dickerson Deposition 91:13-19 (PageID.4929); Dickerson Deposition 97:19-98:2 (ECF175-52, PageID.4030-4031).

[14] Dickerson Deposition 98:23-100:1 (ECF 175-53, PageID.4031); Bitner Deposition 219:7-220:18 (ECF 175-053, PageID.4048).

[15] Bitner Deposition 241:15-22 (ECF175-053, PageID.4050); Thelen Deposition 144:14-145:11 (ECF176-11, sealed).

[16] Bitner Deposition 242:2-244:7 (ECF175-53, PageID.4051).

[17] *Id.*, 244:15-245:4 (PageID.4051).

[18] *Id.*, 245:8-246:2 (PageID.4051-4052).

[19] *Id.*, 247:6-248:5 (PageID.4052).

[20] *Id.*, 246:6-19 (PageID.4052).

- Whether crew members ███████████████████████████
  ███████████████████████.[21]

- Whether Franchisee "████████████████████████████
  ████████████."[22]

- Whether ██████████████████████████████████████
  ███████████████████████████?"[23]

The inspector noted "███████████████████████████████

███████████████████████████████████████████████████

███████████████████████████[24]

McDonald's conducted regular "Business Reviews" where it ███████████████

███████████████████████████████████████

███████████████████████████████████████[25] *See*

*Browning-Ferris Indus. of Cal., Inc. v. NLRB*, 911 F.3d 1195, 1220 (D.C. Cir. 2018) ("[U]se of

an intermediary ... to transmit [defendant's] directions to [employee] … may well be found to

implicate the essential terms and conditions of work.").

McDonald's controlled Plaintiffs' hours of work, dictating the Mason McDonald's hours

of operation[26] and requiring that Dickerson "employ adequate personnel so as to operate the

---

[21] Thelen Deposition 146:17-147:15, 166:12-168:14 (ECF176-11, sealed).

[22] *Id.*, 138:15-141:23.

[23] *Id.*, 155:2-23, 157:10-25.

[24] *Id.*, 190:24-192:22; Bitner Deposition 258:2-261:8 (ECF175-053, PageID.4055); Ex-P31, CEV (sealed).

[25] Bonta Deposition 158:3-10 (ECF176-10, sealed); Ex-J-2, Bonta Deposition 27:22-28:5, 161:20-162:12, 168:15-169:12 (sealed); Ex-P32, 2019 Business Review at MLMLM000082, MLMLM000100 (ECF176-04, sealed); Ex-P46, 2017 Business Review (ECF176-06, sealed).

[26] FA-§12(g) (ECF154-03, PageID.3088).

restaurant at its maximum capacity and efficiency."[27] McDonald's provided tools for determining staffing numbers and positioning based on predicted sales, which Franchisee used to schedule and position workers, including sending workers home early, to meet McDonald's guidelines for acceptable wait times and profitability guidelines.[28] McDonald's also required Franchisees to seek anonymous feedback from management and crew.[29]

*Hiring*. McDonald's provided template recruiting materials and required franchisees to adhere to specified brand standards for recruitment materials.[30] McDonald's provided Franchisee its proprietary "Hiring to Win" personality test, interview guidelines for selection of employees, and hard copy and web-based application templates with specified questions that Franchisee used to make hiring decisions.[31]  McDonald's mandated that only graduates of its Hamburger University could become General Managers, and only individuals "verified" or "certified" in specified McDonald's training curricula could become Shift Managers.[32]

---

[27] *Id.*; Ex-J-1, Bonta Deposition 74:13-16 (PageID.4891); Ex-L Dickerson Deposition 80:18-81:6, 86:8-12 (PageID.4926, 4928); Ex-P45, 2018 NFS (ECF176-05, sealed).

[28] Ex-J-1, Bonta Deposition 189:9-190:24 (PageID.4906-4907); Ex-K-2, Thelen Deposition 126:4-19, 178:3-180:2 (sealed); Bitner Deposition 252:12-254:18 (ECF175-53, PageID.4053-4054); Ex-L, Dickerson Deposition 83:1-88:8 (PageID.4927-4928); Ex-Q, Niezgoski Deposition 263:3-18, 266:16-267:5 (PageID.4970-4971); Ex-T, Shift Management Positioning Guide, MCD_Ries_09472 (sealed); Ex-U, Analyzing and Controlling Labor, MCD_Ries_006353 (sealed).

[29] Ex-J-2, Bonta Deposition 142:23-143:8 (sealed); Ex-P101, 2014 NFS at MCD_Ries_004287 (sealed); Ex-P34, Employee Survey (PageID.4699).

[30] Mullaney Deposition 125:13-129:19 (ECF175-47, PageID.3979-3980).

[31] Mullaney Deposition 47:21-48:10, 62:17-63:16, 64:7-19, 65:19-67:3, 110:8-111:16 (ECF175-47, PageID.3965, 3968-3969, 3976, 3979-3980); Ex-P61, Hiring to Win (ECF175-19, PageID.3728); Ex-P62, Abigail Teremi Personnel File (ECF175-20, PageID.3729); Ex-P63, Hiring to Win Website (ECF175-21, PageID.3734); Ex-P68, Snag-A-Job Website (ECF175-23, PageID.3747); Ex-P59, Anibal Personnel File at MLMLM00820 (ECF175-18, PageID.3710); Blakesley Deposition 77:18-78:1, 78:22-79:2, 82:9-22 (ECF175-56, PageID.4079-4081); Ex-P65, McHire (PageID.4705);.

[32] FA-§6 (ECF154-03, PageID.3085); Ex-P45 MLMLM001660 (ECF176-05, sealed); Ex-J-1, Bonta Deposition 64:20-65:10 (PageID.4890); Bonta Deposition 127:2-133:10 (ECF176-10, sealed).

***Compensation and Benefits***. McDonald's provides "perks"—including discounts, tuition assistance, and a "McResource line" to attract and retain franchise employees[33] and mandates specific workers' compensation insurance.[34]  McDonald's graded visits informed Franchisee employees' performance evaluations--good performers received bonuses.[35] The Mason McDonald's used McDonald's software to track employee time and calculate overtime.[36]

***Discipline.*** McDonald's furnished Franchisee with the EH*R system through which disciplinary write-ups are generated, including "drop down" menus for specific policy violations.[37]  Plaintiffs' discipline cites to violations of "McDonald's policies."[38]

***Training.***  Requiring that employees undergo certain training, and monitoring the completion of such training, supports a finding of joint employer status. *See Myers*, 679 F.Supp.2d at 610. McDonald's imposed training requirements on Mason McDonald's employees through the NFS People standard.[39] McDonald's required GM attendance at "Hamburger

---

[33] Ex-P89, Call Log (sealed); Mullaney Deposition 90:19-91:14, 121:16-24, 130:12-19, 148:7-149:4 (ECF 175-47, PageID.3973, 3978, 3980, 3983); Ex-P66, McHire Website (ECF175-22, PageID.3743); Ex-P68, Snag-A-Job Website (ECF175-23, PageID.3747).

[34] FA-§17(ECF154-03, PageID.3091-PageID.3092); Ex-J-1, Bonta Deposition 193:20-194:3, 196:11-197:10 (PageID.4907-4908).

[35] Dickerson Deposition 98:3-22 (ECF175-52, PageID.4031); Ex-M, Bitner Deposition 205:8-208:18 (PageID.4940-49413930), Bitner Deposition 219:7-11 (ECF175-53, PageID.4048); Blakesley Deposition 196:13-197:2 (ECF175-56, PageID.4091); Ex-R, Haller Deposition 254:3-257:16 (PageID.4974); Ex-N, Pyers Deposition 201:4-9, 208:8-15 (PageID.4953-4954); Ex-P, Blakesley Deposition 141:20-142:6 (PageID.4965-4966); Ex-P97, Blakesley performance evaluation (ECF175-29, PageID.3780).

[36] Ex-R, Haller Deposition 264:5-21 (PageID.4975).

[37] Haller Deposition 121:1-23, 125:7 24 (ECF175-58, PageID.4102-4103).

[38] *E.g.,* Ries Discipline chart, (ECF183-15, PageID.4378-4381).

[39] Bonta Deposition 127:3-21 (ECF176-10, sealed); Ex-J-2, Bonta Deposition 139:10-140:20 (sealed); Ex-P45, 2018 NFS, MLMLM001660 (ECF176-05, sealed); Ex-P101, 2014 NFS at MCD_Ries_004486-004287 (sealed).

University" to study McDonald's-designed curriculum,[40] that shifts be run by managers who had completed McDonald's-specific shift leadership curriculum and, until 2018, required an effective crew training program.[41] McDonald's provides in-person shift management courses and e-learning for franchise crew members and managers, and inspected the Mason McDonald's to confirm computers were accessible for that purpose.[42] McDonald's even provided detailed hand-washing instructions to Plaintiffs.[43] McDonald's employees provided in-person training for franchise mid-managers, who in turn trained other franchise employees.[44]  McDonald's maintained training records for franchisee employees.[45]

### 2.  McDonald's Cited Authority is Inapposite or Otherwise Distinguishable.

The myriad ways McDonald's exerted control here is far greater than in cases it relies upon.  In the unpublished decision in *Nethery v. Quality Care Invs., L.P.*, 814 F.App'x 97, 103

---

[40] FA-§6 (ECF154-03, PageID.3085); Ex-J-1, Bonta Deposition 64:20-65:10 (PageID.4890); Bonta Deposition 69:1-11 (ECF188-2, PageID.4474); Ex-P45, 2018 NFS, MLMLM01660 (ECF176-05, sealed); Mullaney Deposition 142:21-143:15 (ECF175-47, PageID.3981); Ex-32, Business Review MLMLM00112 (ECF176-04, sealed).

[41] Bonta Deposition 131:12-14 (ECF176-10, sealed); Ex-J-2, Bonta Deposition 140:21-142:22 (sealed); Ex-L, Dickerson Deposition 130:3-132:14 (PageID.4933); Ex-P45, 2018 NFS MLMLM001660 (ECF176-05, sealed); Ex-P101, 2014 NFS, MCD_Ries_004286-004287 (sealed).

[42] Mullaney Deposition 144:9-13, 145:2-21, 151:20-22 (ECF175-047, PageID.3982-3983); Thelen Deposition 41:14-42:15 (ECF175-050, PageID.4006-4007); Dickerson Deposition 116:4-117:5, 131:9-21 (ECF175-052, PageID.4032, 4034); Bitner Deposition 265:21-266:23, 267:6-21 (ECF175-053, PageID.4056-4057); Blakesley Deposition 176:4-25 (ECF175-056, PageID.4090); Ex-71, Restaurant Leader Roadmap (ECF 175-24, PageID.3762); Ex-P30, NRBES Comprehensive Visit Report MCD_Ries_04361 (ECF176-03, sealed); Thelen Deposition at 203:24-204:10 (ECF 176-11, sealed).

[43] Ex-D1, Ries Personnel File, at MLMLM00194-00197 (PageID.4736-4739).

[44] Thelen Deposition 95:2-97:18 (ECF175-50, PageID.4012).

[45] Ex-I, Mullaney Deposition 41:2-21 (PageID.4882); Ex-P74, Robertson Training Records (PageID.4714).

(6th Cir. 2020) there was *no* evidence of analogous controls over employees' working conditions or relevant personnel policies.

In *Salazar v. McDonald's*, 944 F.3d 1024 (9th Cir. 2019), the court did not address any evidence that McDonald's imposed personnel-focused requirements or NFS standards on the franchisee. *Id.* at 1027-28, 1029-30. Moreover, *Salazar* was specific to California wage-and-hour law, under which joint employment cannot be established where the control "is geared specifically toward quality control and maintenance of brand standards." *Id.* at 1032 (relying on *Patterson v. Domino's Pizza, LLC*, 60 Cal.4th 474 (2014)). Also inapposite is *Ochoa v. McDonald's Corp.*, 133 F.Supp.3d 1228, 1237–39 (N.D. Cal. 2015), which  applied California wage-and-hour law that required evidence of "direct" control over employees on a day-to-day basis, effectively exempting franchisors from liability even if they meet the common law employer test applicable to Title VII and ELCRA.[46] Moreover, there is a material dispute of fact

---

[46] McDonald's other cases are distinguishable. *McFarland v. Breads of the World, LLC*, 2011 WL 801815, at *10–12 (S.D. Ohio Feb. 1, 2011)(unpublished) focused on "single employer" analysis not relevant here, and it was undisputed that defendant played "no role at all" in plaintiffs' working conditions. In *Loewen v. Grand Rapids Med. Educ. Partners*, 2012 WL 1190145, at *6 (W.D. Mich. Apr. 9, 2012)(unpublished), plaintiff "*admit*[*ted*]" that her formal employer "was responsible for *all* material terms and conditions of her employment" and failed to present evidence that alleged employer "did anything … that affected [her] work." In *In re Jimmy John's Overtime Litig.*, 2018 WL 3231273, at *22 (N.D. Ill. June 14, 2018)(unpublished), the court focused on "whether [the franchisor] exercised control and authority over franchise employees in a manner that caused the FLSA violation." No similar narrow focus applies under Title VII or ELCRA. In *Cropp v. Golden Arch Realty Corp.*, 2009 WL 10710585, at *5, *9 (D.S.C. Mar. 31, 2009)(unpublished), plaintiff relied solely on the terms of the franchise agreement and that McDonald's owned the premises, but presented no evidence to rebut defendants' declarations that McDonald's had no control over the workplace. *See also McClenton v. Off. of Evolutions, Inc.*, 2006 WL 522389, at *5 (W.D. Tenn. Mar. 2, 2006)(unpublished)(plaintiff relied solely on "common marketing" and franchisor's "authority to control the location, design, appearance, and maintenance of the showroom display of its products"); *Wright v. Mountain View Lawn Care, LLC*, 2016 WL 1060341, at *4–7 (W.D. Va. Mar. 11, 2016)(unpublished)(plaintiff relied mostly on franchisor's brand name on vehicle she drove and equipment she used; franchisor did not "provide any human resource management services," provided no training to franchisee or employees, and court discussed no evidence franchisor imposed or exercised control over personnel-related matters).

11

here whether McDonald's control over working conditions at the Mason McDonald's went *beyond* control over customer-facing quality control and branding. Plaintiffs' ELCRA claim raises even more disputed facts, because ECLRA's "economic realities" test considers whether plaintiffs' duties were "an integral part of [the defendant's] business and contributed to the accomplishment of a common goal." *Falls*, 834 F.2d at 613–14. A jury could find that Plaintiffs' work was an "integral part" of McDonald's business and contributed to the "common goal" of building profits from selling McDonald's hamburgers, something that would not be possible without their everyday work cooking and selling those burgers.

### B.  Whether McDonald's Possessed The Right To Control Material Aspects of Plaintiffs' Working Conditions Must Be Resolved By A Jury.

A jury could independently conclude McDonald's was Plaintiffs' "joint employer" because McDonald's reserved expansive *rights* to control working conditions and personnel-related matters. *See Boire*, 376 U.S. at 481 (whether defendant "*possessed* sufficient control … to qualify as a joint employer … is essentially a factual issue")(emphasis added); *EEOC v. Skanska USA Bldg., Inc.*, 550 F.App'x 253, 256 (6th Cir. 2013)(unpublished)(under Title VII, "joint employer" analysis focuses on "*ability*" to hire, fire, or discipline; "affect … compensation and benefits," or "direct" or "supervise" performance)(emphasis added). McDonald's Franchise Agreement compelled Dickerson to operate the restaurant "in conformity to the McDonald's System through strict adherence to McDonald's standards and policies as they exist now *and as they may be from time to time modified*." FA §1(d)(ECF 154-3, PageID.3083)(emphasis added). Any failure to comply with "the standards prescribed by the McDonald's System" was a material breach justifying termination. *Id.* §18(a)(PageID.3092). The FA placed no limit on what "standards and policies" McDonald's might require, and required Dickerson to adhere to "every component" of the "McDonald's System," without restriction. *Id.* §12 (PageID.3087-3089). The

FA also expressly required Franchisee "to promptly adopt and use exclusively the … methods, and policies contained in [McDonald's] business manuals," and McDonald's retained unilateral authority to modify these manuals, including all "required operations procedures; … business practices and policies; and … other management … policies." FA §4 (ECF 154-3, PageID.3084); *see also id.* §12(a)(PageID.3088)("Franchisee shall comply with the *entire McDonald's System*, including, *but not limited to* … [o]perat[ing] the Restaurant ... in compliance with *prescribed standards* of Quality, Service, and Cleanliness; [and] comply[ing] with *all business policies, practices, and procedures imposed by McDonald's* ….")(emphases added), *id.* §1(c)(PageID.3083) ("essence of this Franchise is the adherence by Franchisee to *standards and policies* of McDonald's providing for the uniform operation of all McDonald's restaurants within the McDonald's System")(emphases added).

McDonald's 30(b)(6) witness confirmed that the FA's reference to "business manuals" includes McDonald's Operations & Training (O&T) Manual[47]—which includes frequently revised human resources, scheduling, and other labor-related policies.[48] While McDonald's asserts that it does not require full compliance with the complete O&T Manual, Dickerson believed he *did* have to comply,[49] and a jury could find that the FA granted McDonald's the right to demand such compliance and to unilaterally modify *any* of the "policies" or "manuals" Dickerson must "adopt and use," however McDonald's determined.[50] Similarly, even if a jury were to resolve in McDonald's favor the material fact dispute regarding whether compliance

---

[47] Bonta Deposition 57:1-58:3 (ECF188-2, PageID.4472-4473).
[48] O&T Manuals, Ex-P23, Ex-V (sealed).
[49] Ex-L, Dickerson Deposition 79:23-80:16 (PageID.4926).
[50] FA-§4 (ECF154-3, PageID.3084); Ex-J-1, Bonta Deposition 62:4-16 (PageID.4890); Bonta Deposition 58:21-59:5 (ECF176-10, sealed).

13

with the NFS was mandatory in practice, a jury could nevertheless conclude that McDonald's retained the right to expressly make the NFS obligatory at any time.

Courts have held that joint employer liability can be established in a Title VII case where, like here, "the Franchise Agreement contains … 'nebulous and generally phrased' provisions suggesting that [the franchisor] 'retained a broad discretionary power to impose upon the franchisee virtually any control, restriction, or regulation [the franchisor] deemed appropriate or warranted.'" *A.H. by & through Hunt*, 2018 WL 4002856, at *6, *7 (agreement stated: "Franchisee shall operate the Restaurant in strict conformity with such methods, standards, and specifications as Franchisor may from time to time prescribe in the Manual or otherwise in writing"); *Harris*, 2017 WL 5177668, at *3 (agreement required franchisee to "at all times comply with all lawful and reasonable policies, regulations and procedures promulgated or prescribed from time to time by [franchisor]"); *see also Miller v. D.F. Zee's Inc.*, 31 F.Supp.2d 792, 806-07 (D. Or. 1998) (fact that "franchise agreement requires adherence to comprehensive, detailed manuals for the operation of the restaurant" supported Title VII joint-employer status under right-of-control test).

Finally, McDonald's FA required Franchisee to "[o]perate the Restaurant in a … wholesome manner," FA-§12(a)(ECF 154-3, PageID.3088), which a jury could conclude includes operating the restaurant free of sexual harassment. The FA gave McDonald's unilateral authority to terminate it for non-compliance, including the requirement that Dickerson "comply with all federal, state, and local laws." *Id.* §§12(k), 18(a)(PageID.3089, PageID.3092). Thus, a jury could find that McDonald's reserved the unilateral rights to prohibit sexual harassment and to terminate the FA—effectively terminating Plaintiffs' jobs by putting Franchisee out of business—for Title VII or ELCRA violations. *See Myers*, 679 F.Supp.2d at 610 (franchisor's

"authority to require [franchisee] managers … to obey all applicable laws" supports joint employer status).

It is these realities, not the disclaimer McDonald's inserted in the FA, that determine joint employer status. *Lincoln v. Fairfield-Nobel Co.*, 76 Mich.App. 514, 520 (1977); *accord Aero Taxi-Rockford*, 2006 WL 1479915, at *2.

McDonald's FA is materially different from typical franchise agreements described in McDonald's cited cases, which expressly allocated personnel issues exclusively to the franchisee and disclaimed such rights for the franchisor. *See In re Jimmy John's Overtime Litig.*, 2018 WL 3231273, at *3 (franchise agreement explicitly states that franchisor has no control over "labor relations"); *In re Domino's Pizza Inc.*, 2018 WL 4757944, at *2 (S.D.N.Y. Sept. 30, 2018)(unpublished)(franchise agreement made franchisee "solely responsible for recruiting, hiring, training, scheduling for work, supervising and paying the persons who work in the Store"); *McFarland*, 2011 WL 801815, at *10 (similar). In contrast, nothing in McDonald's FA reserved personnel issues exclusively to Dickerson or precluded McDonald's involvement in them.

Indeed, McDonald's *did* reserve rights regarding personnel issues, for example by prohibiting Dickerson from "employ[ing] or seek[ing] to employ any person who is at the time employed by McDonald's … or by any [other McDonald's franchisee]," FA-§14 (ECF 154-3, PageID.3089);[51] requiring Dickerson to provide, to McDonald's satisfaction, "adequate personnel so as to operate the Restaurant at its maximum capacity and efficiency," FA-§12(g) (PageID.3088); requiring that all GMs attend Hamburger University, FA-§6 (PageID.3085); and

---

[51] McDonald's 30(b)(6) representative testified McDonald's subsequently removed this provision. Ex-J-1, Bonta Deposition 83:2-84:17 (PageID.4893). But that just reinforces McDonald's unilateral right to decide when and how to dictate aspects of Franchisee's personnel matters.

requiring that employees wear McDonald's-specified uniforms, "present a clean and neat appearance," and "render competent and courteous service." FA-§12(h) (PageID.3088).

McDonald's made clear its retained authority to impose mandatory workplace policies on franchisees when it recently announced "Required Global Standards for Safe, Respectful and Inclusive Workplaces."[52] McDonald's proclaimed "McDonald's restaurants, both Company-owned and franchisee locations … *will be required to adhere to these standards*. Implementation will be supported by a suite of policies, tools, trainings and reporting mechanisms." Ex-P79 (emphasis added)(ECF 175-26, PageID.3775). The standards will focus on core personnel issues: "harassment, discrimination and retaliation prevention; workplace violence prevention; restaurant employee feedback; and health and safety." *Id.* Franchisees "will be … held accountable" for compliance. *Id.* In initially announcing the effort to create these standards, McDonald's CEO described them as part of the McDonald's "System," with which franchises must comply under the franchise agreement. Ex-P81, PL001654-55 (PageID.4719-4720) ("Sexual harassment in the workplace is an affront to everything we stand for as a System. It has no place in any McDonald's restaurant, and it will not be tolerated." "We, as a System, must ensure that every allegation is fully and thoroughly investigated.") Regardless of the actual standards McDonald's eventually rolls out, a jury could conclude that McDonald's announcement that it will impose new "required" standards is powerful evidence that McDonald's has always retained the *right* to create, modify, and enforce required personnel policies at the Mason McDonald's.

Courts deny summary judgment to franchisors that retain similar contractual rights of control. *See Estate of Anderson v. Denny's Inc.*, 987 F.Supp.2d 1113, 1151–52, 1159 (D.N.M.

---

[52] Ex-P79 (ECF175-26, PageID.3775); Ex-P80 (ECF175-27, PageID.3778); Mullaney Deposition 235:9-236:14 (ECF175-47, PageID.3990-3991).

2013)(features of franchise agreement similar to terms of franchise agreement here precluded summary judgment); *Butler v. McDonald's Corp.*, 110 F.Supp.2d 62, 67 (D.R.I. 2000)(McDonald's "franchise agreement … 'required [franchisee] to use the precise methods [McDonald's] established [and McDonald's] enforced the use of those methods by regularly sending inspectors and by its retained power to cancel the [franchise agreement]'")(quoting *Miller v. McDonald's Corp.*, 150 Or.App. 274, 281 (1997)). A jury could similarly find that McDonald's expansive contractual rights over Plaintiffs' workplace made McDonald's Plaintiffs' "joint employer."[53]

## II.     A Jury Could Find McDonald's Liable Under Principles Of Apparent Agency.

A jury could separately find McDonald's liable because of Franchisee's role as McDonald's apparent (a/k/a ostensible) agent. *See Ochoa*, 133 F.Supp.3d at 1239 (denying McDonald's summary judgment under state wage-and-hour law on ostensible agency grounds); *Butler v. McDonald's Corp.*, 110 F.Supp.2d at 70 (same, tort claim); *Miller v. McDonald's Corp.*, 150 Or.App. at 278-79 (same); *see also Miller v. D.F. Zee's*, 31 F.Supp.2d at 808 (denying franchisor summary judgment based on apparent agency in Title VII sex harassment action); *Myers*, 679 F.Supp.2d at 613-14 (same); *Fernander v. Thigpen*, 278 S.C. 140, 143 (1982)(tort, reversing franchisor's summary judgment based on ostensible agency); *Thomas v. Freeway Foods, Inc.*, 406 F.Supp.2d 610, 618 (M.D.N.C. 2005)(in customers' Section 1981 case, denying franchisor summary judgment based on apparent agency). "'[A]pparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the

---

[53] Plaintiffs do not contend that McDonald's and Franchisee constitute a "single entity" or "integrated enterprise," so McDonald's arguments are irrelevant. Mot. at 20-23 (PageID.3324-3327).

principal and that belief is traceable to the principal's manifestations.'" *Mais v. Allianz Life Ins.*

*Co. of N. Am.*, 34 F.Supp.3d 754, 762 (W.D. Mich. 2014)(quoting Restatement (Third) of

Agency §2.03 (2006))(entering judgment against insurer for fraud and negligence under apparent

agency). A principal is liable for the acts of its apparent agent, and to establish apparent agency:

> [First] The person dealing with the agent must do so with the belief in the agent's
> authority and this belief must be a reasonable one; [second] Such belief must be
> generated by some act or neglect of the principal sought to be charged; [third] and
> the third person relying on the agent's apparent authority must not be guilty of
> negligence.

*Grewe v. Mt. Clemens General Hosp.,* 404 Mich. 240, 253 (1978)(citation omitted)(medical

malpractice case, holding hospital liable on apparent agency theory). "Apparent authority exists

wherever it is shown that a party reasonably relied on the appearance of agency." *Gilbert Fam.*

*P'ship v. Nido Corp.*, 679 F.Supp. 679, 690 (E.D. Mich. 1988)(denying summary judgment on

apparent agency theory in fraud action against accounting firm).

     Fewer courts may have had the opportunity to consider apparent agency liability under

Title VII and ELCRA, but the theory is entirely consistent with existing precedent under those

statutes, including Supreme Court precedent in the sexual harassment context. McDonald's

contrary authority does not undermine that body of law.  Moreover, as is clear from the

foregoing authority, and as outlined below, the apparent agency theory has been approved in a

wide range of contexts, including in sex harassment cases, and against franchisors, including

against McDonald's.

### A.  Liability Under Title VII And ELCRA Can Be Based On Apparent Agency.

     Title VII and ELCRA liability can be based on apparent agency. Both statutes expressly

incorporate agency principles. *See* 42 U.S.C. §2000e-2(a) & 2(b)(unlawful for an "employer …

to discriminate against any individual" because of sex; "employer" is "a person engaged in an

industry affecting commerce who has fifteen or more employees … and *any agent* of such a

person ….")(emphasis added); MCL §37.2201 (defining "employer" to "include an agent"). As the Supreme Court made plain in its rulings about employer liability for sexual harassment under Title VII, such language evinced Congress's intent to "direct[] federal courts to interpret Title VII based on agency principles." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 754 (1998)(citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 72 (1986));[54] *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 791 (1998)(same); *Swallows*, 128 F.3d at 992 n.2, 996 n.7 (Because ADEA and ADA "do not define the term 'agent,' we look to the common law of agency;"  because Title VII, ADEA, and ADA "define 'employer' essentially the same way" "we rely on case law developed under all three statutes").

Those agency principles, in turn, include the established rule that a principal is liable for harms that "result from reliance upon, or belief in, statements or other conduct within an agent's apparent authority." Restatement (Second) of Agency §265 (1958); *see Ellerth*, 524 U.S. at 755 (Restatement (Second) is "useful beginning point for a discussion of general agency principles")(citation omitted). Under common law, moreover, an "agent," by definition, includes an apparent or ostensible agent. *See* AGENT, Black's Law Dictionary (11th ed. 2019)(defining "apparent agent" within definition of "agent"); *James v. Alberts*, 464 Mich. 12, 15 (2001)("Under fundamental agency law, a principal is bound by an agent's actions within the agent's actual or apparent authority.").[55]

---

[54] McDonald's selectively cites language from *Ellerth* to suggest that the Supreme Court foreclosed apparent agency under Title VII. Mot. at 25 (PageID.3329). But the *Ellerth* Court merely noted that the apparent agency theory usually is not applicable to the specific question at issue there, *i.e.*, whether a supervisor's harassment may be imputed to the employer. *Ellerth*, 524 U.S. at 759 ("In the usual case, a supervisor's harassment involves misuse of actual power, not the false impression of its existence."). But even in that distinct context, the Court acknowledged apparent agency's viability. *See id.* ("If … it is alleged there *is* a false impression that the actor was a supervisor, when he in fact was not, the victim's mistaken conclusion must be a reasonable one.")(citing Restatement (Second) of Agency)(emphasis added).

[55] Unsurprisingly, states that have codified common law agency principles reiterate that the term "agent" encompasses both actual and apparent agency. *See* Cal. Civ. Code §2295 ("An agent is

Courts interpreting ELCRA have reached the same conclusions. "Because [ELCRA] expressly defines 'employer' to include agents, [Michigan courts] rely on common-law agency principles in determining when an employer is liable for sexual harassment…." *Chambers*, 463 Mich. at 311; *see Elezovic v. Ford Motor Co.*, 472 Mich. 408, 422 (2005)(ELCRA establishes cause of action for sexual harassment and employer liability based on "traditional agency principles"). Michigan courts construe ELCRA's reference to "agents" even more broadly than Title VII's, and impose liability on *both* the "agent" and the employer-principal. *Elezovic*, 472 Mich. at 424–26.

Accordingly, courts have approved apparent agency as a theory for holding franchisors liable for sexual harassment under Title VII. *See, e.g.*, *Miller v. D.F. Zee's*, 31 F.Supp.2d at 808 (denying summary judgment to franchisor in Title VII sexual harassment action where "evidence create[d] a question of fact as to whether franchise employees [alleged to have created a hostile work environment] acted with at least the apparent authority of the [franchisor] defendants"); *Myers*, 679 F.Supp.2d at 613 (franchisee employee "may establish Title VII liability based on [the franchisor's] apparent control over [the franchisee]"). Given ELCRA's traditional mirroring of Title VII's precepts, and its even broader reading of the statute's agency provision, franchisor liability under an apparent agency theory is equally viable.

 For all these reasons, where an employer causes an individual reasonably to believe she is entering into, or working within, an employment relationship with that employer or an agent of that employer, the employer-principal is liable to that individual under Title VII and ELCRA.

---

one who represents another, called the principal, in dealings with third persons. Such representation is called agency."); *id.* §2298 ("An agency is either actual or ostensible."); *Grewe*, 404 Mich. at 252 (finding persuasive California authority on ostensible agency). *See also Salazar*, 944 F.3d at 1033 ("[A]gency principles ordinarily encompass both actual and ostensible agency.").

**B.  McDonald's Interpretation Of Title VII's And ELCRA's "Agency" Language Is Incorrect.**

McDonald's argues that Title VII's and ELCRA's references to "an agent" only mean "an *actual* agent"—but that construction violates the very directive McDonald's cites that "absent provision[s] cannot be supplied by the courts." Mot. at 25 (PageID.3329).

McDonald's also argues (circularly) that apparent agency is not a viable theory because Title VII and ELCRA liability are only available if plaintiff is "an 'employee' of the defendant." Mot. at 24 (PageID.3328). But "[t] he doctrine of apparent authority applies to employment contracts into which the apparent agent enters on behalf of the principal just as it applies to any other contract." *Myers*, 679 F.Supp.2d at 613.  *See Chires v. Cumulus Broadcasting, LLC*, 543 F.Supp.2d 712, 718–19 (E.D. Mich. 2008)(that defendant "allowed Plaintiff to believe" that person had authority to modify and accept employment contract on defendant's behalf created genuine issue of fact regarding whether defendant was bound by employment agreement based on apparent authority precluding summary judgment). The worker who enters an employment agreement with an apparent agent, and due to the principal's acts or neglect has the reasonable belief her agreement is, in fact, with the principal, *is* the principal's "employee."

Moreover, "Title VII does not require a formal employment relationship between the plaintiff and the defendant." *Christopher v. Stouder Mem'l Hosp.*, 936 F.2d 870, 875 (6th Cir. 1991). Title VII's language provides "a strong indication that the proscriptions contemplated … reach beyond the immediate employment relationship." *Id.* at 876.

McDonald's cites inapposite cases distinguishing employees from independent contractors (*Savas v. William Beaumont Hosp.*, 216 F.Supp.2d 660, 664 (E.D. Mich. 2002); *Perry v. Pediatric Inpatient Critical Care Servs., P.A.*, 2020 WL 1248263, at *7 (W.D. Tex. 2020)); rejecting claims against non-employers on the particular facts (*Nethery*, 814 F.App'x at

104; *Satterfield v. Tennessee*, 295 F.3d 611, 618 (6th Cir. 2002); *Seabrook v. Michigan Nat. Corp.*, 206 Mich.App. 314, 316 (1994)); and holding that Title VII cannot be circumvented by bringing a Section 1983 claim where Title VII is unavailable (*Morris v. Oldham Cnty. Fiscal Ct.*, 201 F.3d 784, 795 (6th Cir. 2000)).[56] These cases are irrelevant because none addresses apparent or ostensible agency. *Cf. Satterfield*, 295 F.3d at 618 (Sixth Circuit "has not comprehensively explained the legal theories by which to identify 'employers' under the Civil Rights Acts.").

McDonald's cases rejecting apparent agency-based Title VII claims are inapposite. Two relied on state law and also found insufficient evidence of apparent agency on the particular facts. *Gray v. McDonald's USA, LCC*, 874 F.Supp.2d 743, 751-52 (W.D. Tenn. 2012); *Wright*, 2016 WL 1060341, at *10. *Dotson v. McDonald's Corp.* was based solely on the ground that the court was unaware of cases applying apparent agency to sexual harassment cases. 1998 WL 164871, at *3 (N.D. Ill. Apr. 2, 1998)(unpublished). But multiple courts have now done just that. McDonald's cites a single unpublished trial court decision rejecting an apparent agency claim under ELCRA, but *Whitfield v. McDonald's*, 2010 WL 6593297 (Mich. Cir. Ct. July 28, 2010) is unpersuasive.  It relied only on *Elezovic*, which did not address any apparent agency claim and which actually *supports* apparent agency claims by adopting an expansive view of agency principles under ELCRA.

McDonald's policy arguments fare no better. Applying established apparent agency principles to Title VII and ELCRA will not produce "absurd" results, nor subject McDonald's to liability based solely upon Plaintiffs' "mistaken alleged beliefs," as McDonald's asserts. Mot. at 26 (PageID.3330). Instead, apparent agency principles make McDonald's liable *for its own*

---

[56] McDonald's also cites *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 107–08 (6th Cir. 1996), but that case addressed an intricate statutory definition of "debt collector" that said nothing about Title VII, ELCRA, or ostensible agency.

*actions and omissions* that reasonably caused Plaintiffs to believe that Franchisee was part of McDonald's or acted as McDonald's agent.

McDonald's contention that apparent authority can never form the basis for liability for a sexually hostile work environment claim also fails. McDonald's relies on tort law. Mot. at 27 (PageID.3331). But Plaintiffs are not suing in tort; they are pursuing statutory claims against Franchisee and McDonald's for subjecting them to a hostile work environment at the Mason McDonald's. Ostensible agency principles create an employment agreement that binds the principal (like any other contract entered by an apparent agent). *Myers*, 679 F.Supp.2d at 613; *Chires*, 543 F.Supp.2d at 718–19. As an "employer," the principal must comply with anti-discrimination laws.

### C.  Material Fact Disputes Preclude Summary Judgment On Apparent Agency.

#### 1.  A Jury Could Find That Plaintiffs Believed Franchisee Was McDonald's Agent.

Plaintiffs reasonably believed Franchisee was part of McDonald's or acting on McDonald's behalf. *See, e.g.,* Ex-E, Ries Deposition 215:7-15, 218:3-6 (PageID.4840-4841)("I thought I worked for the whole corporation"); Ex-G, Barber Deposition 232:14-23 (PageID.4867)("I was always under the impression that I worked for McDonald's.").[57] Reflecting those beliefs, Ries and Bishop tried to call McDonald's Corporate about employment issues because they thought they worked for McDonald's.[58]

---

[57] Ex-F, Anibal Deposition 157:6-16 (PageID.4858); Ex-H, Bishop Deposition 74:6-8, 114:20-23 (PageID.4877-4878); Ex- A, Ries Declaration ¶5 (PageID.4813-4814); Ex-B, Barber Declaration ¶¶6, 8-10 (PageID.4816-4819); Ex-C, Bishop Declaration ¶¶8-10 (PageID.4822-4823); Ex-D, Anibal Declaration ¶¶4,8 (PageID.4826-4828).

[58] Ex-E, Ries Deposition 223:6-19 (PageID.4842); Ex-P89, Call Log (sealed); Ex-H, Bishop Deposition 118:2-119:6, 121:6-13 (PageID.4879).

Their beliefs are not surprising. Plaintiffs were required to wear McDonald's uniforms.[59] Posters, menus, products, and signs throughout their workplace were covered with McDonald's logos. Ex-G, Barber Deposition 232:14-23 (PageID.4867)("Their logo is on everything"), 266:20-267:15 (PageID.4872)("everything says McDonald's on it").[60]  Plaintiffs' employment handbooks and policies repeatedly referred to "McDonald's" and "working at McDonald's." Ex-F, Anibal Deposition 157:14-16 (PageID.4858)(Plaintiff understood she was following "McDonald's" policies at work). Plaintiffs' managers referred to themselves and others as working for McDonald's, even on formal documents like I-9s, work permits, and loan applications.[61]  No one told Plaintiffs McDonald's was not part of the management chain of command. [62] *See Ochoa*, 133 F.Supp.3d at 1239–40 ("jury could reasonably conclude that McDonald's and [franchisee] shared an ostensible agency relationship" where plaintiffs presented evidence they "believed McDonald's was their employer, in part because they wear McDonald's uniforms, serve McDonald's food in McDonald's packaging, receive paystubs and orientation materials marked with McDonald's name and logo, and [some but not all plaintiffs] applied for a job through McDonald's website"); *Salazar v. McDonald's Corp.*, 2016 WL

---

[59] FA-§12(h) (ECF154-03, PageID.3088); Ex-R, Haller Deposition, 267:13-268:6 (PageID.4976); Ex-L, Dickerson Deposition, 220:10-18 (PageID.4934); Ex-G, Barber Deposition 266:20-267:8 (PageID.4872).

[60] Ex-H, Bishop Deposition 114:24-115:8 (PageID.4878); Ex-L, Dickerson Deposition 221:12-222:12 (PageID.4934-4935).

[61] Ex-O, Robertson Deposition 149:15-150:8, 171:21-24 (PageID.4956-4958); Ex-N, Pyers Deposition 94:4-95:14 (PageID.4951); Ex-P37, Pyers Facebook (PageID.4703); Ex-P, Blakesley Deposition 28:17-29:20, 99:6-102:13 (PageID.4961, 4963-4964); Ex-P92, Anderson Personnel File at MLMLM 2140, 2142 (PageID.4724-4725); Mackley Personnel File at MLMLM2219 (ECF 149-17, Page ID.2921); Ex-G, Barber Deposition 234:19-235:7 (PageID.4868); Ex-F, Anibal Deposition 157:6-13 (PageID.4858).

[62] Ex-F, Anibal Deposition 31:15-18 (PageID.4848); Ex-A, Ries Declaration ¶¶5-7 (PageID.4813-4814); Ex-B, Barber Declaration ¶¶6, 9-10 (PageID.4816, 4818-4819); Ex-C, Bishop Declaration ¶¶6, 10-11 (PageID.4821, 4823); Ex-D, Anibal Declaration ¶¶6, 8 (PageID.4826-4828).

4394165, at *13 (N.D. Cal. Aug. 16, 2016)(similar "evidence, albeit subject to dispute, that McDonald's caused plaintiffs reasonably to believe [franchise] was acting as its agent" created material fact dispute regarding ostensible agency).

McDonald's contends that Plaintiffs were told "MLMLM" was their employer. Mot. at 33-35 (PageID.3337-3339). Plaintiffs testified that they did not know what "MLMLM" meant or assumed the random initials beginning with "M" was part of McDonald's. Ex-H, Bishop Deposition 74:19-75:6 (PageID.4877)("I thought they were a payroll company."); Ex-E, Ries Deposition 204:18-25 (PageID.4838)(thought "ML---whatever" was "just a different name for McDonald's" because she "got hired at McDonald's" and "didn't understand anything to do with franchises at the time"), 215:3-15 (PageID.4840)("I just thought MLML stood for … like another name for McDonald's Corporation. … I thought they were together."). Anibal asked a coworker if MLMLM was McDonald's and was told yes.[63] Barber only understood she worked for MLMLM after she was promoted to management, and even then, she believed MLMLM and Dickerson were under McDonald's in the chain of command.[64]  Even Area Supervisor Marty Haller didn't know what MLMLM stood for or what it did, nor could he verify that he explained MLMLM to crew members at orientation.[65]  A jury could find that Plaintiffs reasonably believed "MLMLM" was part of McDonald's.

McDonald's also notes that Plaintiffs knew Dickerson was referred to as the "owner," and alleges that each store had a poster saying it was "operated by Mike Dickerson." Mot. 33-35 (PageID.3337-3339). But Franchisee never produced any such poster, there is no evidence that

---

[63] Ex-F, Anibal Deposition 73:21-74:3 (PageID.4854-4855).

[64] Ex-G, Barber Deposition 159:24-160:5, 238:18-21, 233:1-21, 243:12-244:1 (PageID.4865, PageID.4869, 4867,4870).

[65] Ex-R, Haller Deposition 265:14-19, 267:2-12 (PageID.4975-4976).

Plaintiffs saw or understood such poster if it existed, and even if they had, a jury could find that Plaintiffs reasonably believed that the Mason McDonald's was managed by Dickerson, under McDonald's control. Ex-E, Ries Deposition 215:20-216:2 (PageID.4840)("I knew that he was the owner of the store but I believe … he, you know, answered to McDonald's," "because corporate comes in all the time … making sure we do everything right, I assumed they were in charge."), 217:20-218:1 (PageID.4840-4841)("I believe that corporate was above Mike in the chain of command … they were his boss"); Ex-F, Anibal Deposition 45:5-9 (PageID.4850)(understood Dickerson "owned the building"); Ex-H, Bishop Deposition 114:20-115:22 (PageID.4878)(believed Dickerson was under McDonald's and had to follow McDonald's "rules and regulations"); Ex-G, Barber Deposition 159:24-160:5, 238:18-21 (PageID.4865, 4869)(believed McDonald's was above Dickerson). *See Salazar*, 2016 WL 4394165, at *13 (evidence of ostensible agency precluded summary judgment where plaintiffs "believed both they *and* [*the owner*] worked for McDonald's").

Similarly, while Anibal testified she did not believe she "worked for" McDonald's Corporation, she also testified that McDonald's "has more control over the franchise than they like to say," "they could have implemented policies to stop" the sexual harassment, and her work was governed by McDonald's policies.[66] That belief that McDonald's ultimately controlled her workplace, and that Dickerson was McDonald's agent, is sufficient to raise a jury issue of ostensible agency.

## 2.   A Jury Could Find That Plaintiffs' Beliefs That Franchisee Was McDonald's Agent Were Caused By McDonald's "Acts Or Neglect."

Plaintiffs presented evidence that McDonald's "act[s] or neglect" caused their beliefs. *Grewe*, 404 Mich. at 253. Plaintiffs were led to believe all McDonald's restaurants were part of

---

[66] Ex-F, Anibal Deposition 102:22-103:20, 104:1-6, 157:14-16 (PageID.4856, 4858).

the same operation because of McDonald's extensive advertising and control over McDonald's restaurants, including McDonald's recruiting ads that made no suggestion that working at McDonald's would mean anything other than working for McDonald's.[67] McDonald's provided Franchisee with branded advertising and application templates—none of which contain Franchisee's name—and encouraged Dickerson to use its recruiting materials.[68] McDonald's maintains a hiring website replete with McDonald's logos through which applications are submitted for all restaurants nationwide, without mentioning any entity other than McDonald's, presenting the impression that an application submitted through the site is an application to work for McDonald's.[69] The Mason McDonald's listed positions on, and Plaintiff Anibal applied through, McDonald's website.[70]

McDonald's deliberately targets high school students and teenagers (who are likely not to have experience with intricate business structures), and advertises itself as "America's best first job."[71] "McDonald's, America's best first job" was used to advertise jobs at the Mason

---

[67] Ex-A, Ries Declaration ¶¶2-4 (PageID.4812-4813); Ex-B, Barber Declaration ¶¶5-7 (PageID.4816-4817); Ex-C, Bishop Declaration ¶¶5-7 (PageID.4821-4822); Ex-D, Anibal Declaration ¶¶5-7 (PageID.4826-4827).

[68] Mullaney Deposition 47:21-48:10, 123:1-9, 126:4-10, 128:2-129:19 (ECF175-47, PageID.3965, 3978-3980); Ex-59, Anibal Personnel File at MLMLM00820 (ECF175-18, PageID.3710); Crew Recruitment Materials (ECF176-13, sealed); Blakesley Deposition 78:22-79:2 (ECF175-56, PageID.4080); Business Review, Ex-32 at MLMLM000083 (ECF176-04, sealed)("We recommend that you refresh all recruitment …. elements in store").

[69] Mullaney Deposition 61:10-62-2, 70:20-71:11, 72:7-73:9, 75:8-24, 83:8-84:20, 94:9-95:24, 98:8-99:2 (ECF175-47, PageID.3967-3975); Ex-63, Hiring to Win Website (ECF175-21, PageID.3735); Ex-66, McHire Website (ECF175-22, PageID.3744); Ex-68, Snag-A-Job Website (ECF175-23, PageID.3748).

[70] Mullaney Deposition 94:15-95:2, 111:12-16 (ECF175-47, PageID.3974, 3976); Bitner Deposition 228:3-20 (ECF175-53, PageID.4049); Blakesley Deposition 78:13-17 (PageID.4080); Anibal Deposition 27:21-23 (ECF175-38, PageID.3896).

[71] Ex-P23 at MLMLM003524 (sealed); Bitner Deposition 92:14-93:5 (PageID.4044); Mullaney Deposition 118:6-121:13, 129:8-21 (ECF175-47, PageID.3977-78, 3980); Ex-68 (ECF175-23, PageID.3747).

McDonald's.[72] Thus, when Plaintiffs applied for their jobs, they thought they were applying to work for McDonald's because of McDonald's extensive messaging about the uniformity of its restaurants.[73]

Once Plaintiffs applied, McDonald's actions reinforced their beliefs that they were working subject to McDonald's control. McDonald's required Plaintiffs to "wear McDonald's uniforms, prepare and serve McDonald's food in McDonald's packaging, and greet customers by saying 'Welcome to McDonald's.'" *Salazar*, 2016 WL 4394165, at *13.[74]

Significantly, McDonald's provided Franchisee extensive and detailed employment forms and policies, training materials, and posters discussing personnel matters that prominently displayed McDonald's logos, mentioned the name of no employer or entity other than "McDonald's," and created the impression that the forms and materials were used throughout all McDonald's restaurants.[75] For example, the required 9-in-1 poster in the Mason McDonald's crew room contained multiple large McDonald's logos and identified no employer other than "McDonald's"—spaces on the poster to fill in "You Are Employed By" were left blank.[76] McDonald's provided franchisees an employee policies booklet, called "Our Policies," that was designed to be used or copied by franchisees (and which Franchisee here did copy from extensively), that repeatedly refers to working at "McDonald's" and does not name any entity

---

[72] Ex-P, Blakesley Deposition 184:21-185:1 (PageID.4967).

[73] Ex-A, Ries Declaration ¶¶2-4 (PageID.4812-4813); Ex-B, Barber Declaration ¶¶5-7 (PageID.4816-4817); Ex-C, Bishop Declaration ¶¶5-7 (PageID.4821-4822); Ex-D, Anibal Declaration ¶¶5-7 (PageID.4826-4827).

[74] FA §12(h)(ECF154-3, PageID.3088); Ex-G, Barber Deposition 267:7-8 (PageID.4872); Ex-A, Ries Declaration ¶5 (PageID.4813-4814); Ex-B, Barber Declaration ¶9 (PageID.4818); Ex-C, Bishop Declaration ¶10 (PageID.4823); Ex-D, Anibal Declaration ¶8 (PageID.4827-4828).

[75] Mullaney Deposition 47:21-48:10, 51:13-52:15, 200:4-202:24, 203:20-205:17 (ECF175-47, PageID.3965-3966, 3987-88).

[76] 9-in-1 Poster (ECF161-8, PageID.3450).

other than "McDonald's."[77] Plaintiffs were trained using McDonald's corporate training materials and videos "for exclusive use of employees and franchisees of McDonald's Corporation and its affiliates."[78] McDonald's even provided Franchisee with a "McD.com" email address, which was included on Franchisees' "Open Door" poster in the employee breakroom.[79] *See Salazar*, 2016 WL 4394165, at *13 ("McDonald's was responsible for some of the content contained in plaintiffs' orientation materials…."); *West v. LQ Mgmt., LLC*, 156 F.Supp.3d 1361, 1372 (S.D. Fla. 2015) (franchisor's email to customer "describing the treatment of 'our customers'" created genuine issue of fact regarding whether franchisor created appearance of agency relationship).

McDonald's also engaged in regular and extensive inspections, creating the impression that McDonald's retained the right to control the restaurant and leading Plaintiffs reasonably to believe that McDonald's was ultimately above their store managers in the chain of command. Ex-E, Ries Deposition 215:20-216:14 (PageID.4840)("corporate comes in all the time … check what we're doing, mak[e] sure we do everything right … that was like a big deal when they came").[80]

---

[77] Ex-P75, Our Policies (ECF175-25, PageID.3764-3773); Mullaney Deposition 97:18-99:6 (ECF175-47, PageID.3974-3975).
[78] Ex-D26, MLMLM846-48 (PageID.4971-4793); Ex-D1, MLMLM000190, 193-94 (PageID.4734-4736); Ex-D17, MLMLM000938, 941, 942, 944, 959-62, 965 (PageID.4756-4759, 4766-4770); Ex-D34, MLMLM000909, 911-12, 914-15, 918-19 (PageID.4804-4810); Ex-K-2, Thelen Deposition 171:12-172:19 (sealed); Ex-F, Anibal Deposition 57:16-19, 58:22-59:15, 61:2-24 (PageID.4852-4853); Ex-G, Barber Deposition 245:17-246:2 (PageID.4870-4871); Ex-E, Ries Deposition 208:23-209:22 (PageID.4839); Ex-L, Dickerson Deposition 116:4-117:5 (PageID.4931).

[79] Ex-J-1, Bonta Deposition 201:15-17, 203:24-204:4; 211:24-212:8 (PageID.4909-4911); Ex-26, Open Door Poster (ECF175-9, PageID.3688).

[80] Ex-F, Anibal Deposition 108:11-23 (PageID.4857); Ex-G, Barber 239:8-18 (PageID.4869).

McDonald's contends that "branding and logos" are insufficient to create an apparent agency relationship. Mot. at 31 (PageID.3335). Plaintiffs rely on more than logos. McDonald's cases discuss "branding" *to customers*. But this case involves McDonald's successful effort to present a unified brand to prospective and current restaurant *employees*, which manifestations reasonably caused Plaintiffs to believe that they were working for McDonald's or that their managers were part of, or acted on behalf of, McDonald's. Any business case that could be made for a franchisor's efforts to ensure a unified brand message to *customers* does not apply to efforts to present a branded (and misleading) message to potential and current franchise *employees*, inducing them to believe that by working for a franchisee they are working for or under the control of the larger franchisor, while simultaneously seeking to avoid responsibility for those employees. McDonald's unified messaging to current and prospective employees is persuasive, and a jury could find that Plaintiffs reasonably believed Franchisee was part of McDonald's as a result of that messaging. *See Salazar*, 2016 WL 4394165, at *13; *Ochoa*, 133 F.Supp.3d at 1239–40.

McDonald's also allowed Franchisee to reinforce Plaintiffs' perception. Apparent agency can be established through the alleged principal's actions "or neglect." *Grewe*, 404 Mich. at 253. McDonald's concedes that it does not review franchisees' handbooks or employment policies.[81] McDonald's knows there is a widespread perception among applicants and employees at McDonald's restaurants that working at McDonald's means working for McDonald's—in significant part because of McDonald's messaging. *See, e.g.*, *Ochoa*, 133 F.Supp.3d at 1239-40; *Salazar*, 2016 WL 4394165, at *13.  A jury could find that McDonald's facilitated the perpetuation of that understanding by failing to review Franchisee's messaging to employees and

---

[81] Ex-J-1, Bonta Deposition 181:20-182:14 (PageID.4904-4905).

by failing to take action to counteract the express, repeated statements from Franchisee to

Plaintiffs that they worked for "McDonald's."  *See infra* Section II.C.3.

### 3.   Whether Plaintiffs' Beliefs Were "Reasonable" Presents A Disputed Fact For The Jury.

McDonald's argues it was not "reasonable" for Plaintiffs to believe that Franchisee was

part of McDonald's or acting on McDonald's behalf. Mot. at 33-36 (PageID.3337-3340). But

"reasonableness" is a question of fact for the jury. Restatement (Third) of Agency §2.03 cmt. d

(2006); *Jackson v. Goodman*, 69 Mich.App 225, 230 (Mich.App. 1976). The focus is on what

was reasonable for Plaintiffs to believe, given their age, experience, and education. *See*

Restatement (Third) of Agency §2.03 cmt. d (2006)("[Q]uestion for the trier of fact [is] whether

a reasonable person *in the position of* [*the*] *third party* would believe that [the] agent had the

authority…")(emphasis added); *Ford v. Am. Nat. Ins. Co.*, 46 Mich.App. 368, 376

(1973)(reasonable for plaintiff to rely on insurance agent's statements despite written disclaimers

because plaintiff was illiterate). Here, when Plaintiffs applied to work at the Mason McDonald's,

they were high school students or graduates with little or no college education; none had been

informed of the nuances of how a "franchise" is structured.[82] A jury could conclude that, looking

through *Plaintiffs'* eyes, it was reasonable for them to believe that Dickerson worked for, or on

behalf of, McDonald's.

McDonald's points to ambiguous and fine print disclaimer language on a few documents

in Plaintiffs' personnel files. Mot. at 30 (PageID.3334). But a jury could find those same

documents *support* Plaintiffs' ostensible agency claim. The McDonald's-created "Crew Member

---

[82] Ex-F, Anibal Deposition 21:11-14, 22:1-5, 24:16-25:9 (PageID.4845-4846); Ex-E, Ries Deposition 17:22-24 (PageID.4831); Ex-G, Barber Deposition 11:6-11 (PageID.4861); Ex-H, Bishop Deposition 11:3-9 (PageID.4875).

Records Folder" form each Plaintiff signed upon hire has a large McDonald's logo.[83] Those

forms could reasonably create the impression that the applicant is applying to work at

McDonald's. *See Salazar*, 2016 WL 4394165, at *13 (plaintiff's written application "was

emblazoned with McDonald's logos"). The forms also ask the applicant if she has "EVER

WORKED FOR McDONALD'S BEFORE?"[84] McDonald's 30(b)(6) representative testified this

means "have I worked for McDonald's, have I worked for the brand."[85] The forms also are

clearly used by McDonald's workers across the country; they have sections expressly directed at

"MASSACHUSETTS EMPLOYMENT ONLY" and "MARYLAND EMPLOYMENT

ONLY."[86] An applicant applying to work in Michigan could reasonably believe she was

applying to work for the nationwide McDonald's, not solely a small, Michigan-only employer.

The form expressly instructs: "MANAGER: If an employee reports that s/he currently has an

illness described above … you should contact McDonald's HR Consulting…"[87] A reasonable

reader could thus conclude that "managers" at the restaurant took direction from McDonald's

regarding human resources issues.

 McDonald's emphasizes that in fine print, the form also states, "I acknowledge that I am

applying for employment with an independently owned and operated *McDonald's* franchise, a

separate company and employer from McDonald's Corporation and any of its subsidiaries." Mot.

at 30 (PageID.3334)(emphasis added). But "similar disclosures … have not been found

automatically to defeat the reasonableness of an individual's beliefs." *Salazar*, 2016 WL

---

[83] Anibal Records Folder (ECF155-3, PageID3295); Ries Records Folder (ECF155-1, PageID.3291); Barber Records Folder (ECF155-2, PageID.3293); Bishop Records Folder (ECF155-4, PageID.3297).
[84] *Id.*
[85] Ex-I, Mullaney Deposition 54:7-11 (PageID.4884).
[86] Records Folder (ECF155-3, PageID3295).
[87] *Id.*

4394165, at \*13 (denying summary judgment to McDonald's despite identical disclaimers). Plaintiffs testified that they were rushed to complete a stack of forms and did not have the opportunity to read every word, including this disclaimer language.[88]  Even if they had read that fine print, a jury could conclude that someone like Plaintiffs (with a high school education or less and no prior knowledge about the business intricacies of "franchises") could reasonably either not understand the meaning of the disclaimer's legalese, or believe that a "McDonald's franchise" is part of "McDonald's" or acting on behalf of "McDonald's." *E.g.*, Ex-G, Barber Deposition 233:19-21 (PageID.4867)("it's fine print that no one instructed me to the knowledge").

Plaintiffs Ries, Anibal, and Barber also signed a standardized Orientation Receipt provided by McDonald's, and a jury could find that form similarly supports Plaintiffs—the form contains a large McDonald's logo, appears to be created by McDonald's and used across all McDonald's restaurants, and identifies no employer other than "McDonald's."[89] The Orientation Receipt refers to a booklet called "Our Policies: A guide to Actions and Behaviors *at McDonald's* for Independently Owned and Operated Franchisee Employees."[90] No plaintiff testified to having received such a booklet or anyone explaining what "independently owned and operated franchisee employees" meant.[91] The Employment Application Anibal filled out similarly did not identify any employer other than "McDonald's." Ex-D26 MLMLM000820

---

[88] Ex-E, Ries Deposition 77:6-8, 112:1-11, 113:6-13, 203:17-18, 206:17-25 (PageID.4832-4833, 4838-4839); Ex-G, Barber Deposition 110:13-22, 117:21-118:10, 240:1-12, (PageID.4862-4864, 4869); Ex-F, Anibal Deposition 40:13-21 (PageID.4849).
[89] Ex-D26 MLMLM000829 (PageID.4872); Ex-D1 MLMLM000216 (PageID.4747); Ex-D18 MLMLM000497 (PageID.4775).
[90] Ex-D26 MLMLM000829 (PageID.4872)(emphasis added).
[91] *E.g.*, Ex-F, Anibal Depo 52:18-53:2 (PageID.4851).

(PageID.4779)("This independently owned and operated *McDonald's* is an equal opportunity employer….")(emphasis added).

McDonald's contends that a few other isolated documents in Plaintiffs' personnel files preclude finding ostensible agency. Mot. at 33-34 (PageID.3337-3338). Even if Plaintiffs had been given sufficient time to review those documents (they testified they were not), a jury could conclude those documents support Plaintiffs. An employee handbook in Barber's file repeatedly refers to employees of "McDonald's."[92] A version in Bishop's files refers generically to "the Company" throughout.[93] In an opening letter, the handbook says "MLMLM Corporation, d/b/a *McDonalds's* (the 'Company')," without further explanation.[94] Ries's policy packet refers frequently to "McDonald's."[95] Documents in Anibal's file repeatedly and interchangeably refer to employment at "McDonald's," "MLMLM McDonald's franchisee," and "this independent McDonald's franchisee." *E.g.*, Ex-D26 MLMLM000831 (PageID.4783) ("benefits at McDonald's," "McDonald's is a part-time employer"), MLMLM000838 (PageID.4786) ("Here at MLMLM"; "MLMLM McDonald's Franchisee Prohibits Discrimination and Harassment;" "Discrimination … by … McDonald's (or its employees) … will not be tolerated"), MLMLM000841 (PageID.4787)("At McDonald's, we are very proud …"), MLMLM000842 (PageID.4788)("McDonald's and Working Students"), MLMLM000843 (PageID.4789)("MLMLM McDonald's franchisee"). A jury could conclude that, even if Plaintiffs had seen these documents (which is disputed), taken together, the language in the documents could reasonably create the impression that employees worked for McDonald's, or MLMLM was part of McDonald's.

---

[92] Ex-D17 MLMLM000958 (PageID.4765).
[93] Ex-D34 MLMLM000860-000878 (PageID.4796-4803).
[94] Ex-D34 MLMLM000864 (PageID.4799)(emphasis added).
[95] Ex-D1 MLMLM000201-215 (PageID.4740-4746).

That message was reinforced by references to working at "McDonald's" or employees of "McDonald's" in a McDonald's copyright poster in the breakroom, Ex-H, Bishop Depo 120:10-18 (PageID.4879); Ex-D11, MLMLM001921 (PageID.4749)("We care about you and your experience at McDonald's. … We are always looking for ways to make McDonald's a better place to work."), and throughout the various policy documents in Plaintiffs' personnel files:

1. An "Employment Status" document stated: "McDonald's is an at-will employer," and contained no mention of any franchise, owner/operator, or any other entity or employer other than "McDonald's." Ex-D17 MLMLM000958 (PageID.4765)(Barber).

2. Offer of Employment and Work Permit forms Anibal and Barber signed identified their employer as "McDonald's." Ex-D26 MLMLM000816 (PageID.4778)(Anibal); Ex-D17 MLMLM000929 (PageID.4755)(Barber).

3. A "Minor Employment Policy" Anibal signed said: "Violating labor policies could cause me to lose hours and potentially cause loss of *employment with McDonald's*." Ex-D26 MLMLM000822, 823 (PageID.4780-4781)(emphasis added).

4. A Work Schedules Policy referred to "benefits at McDonald's," and said "McDonald's is a part-time employer." Ex-D26 MLMLM000831 (PageID.4783); Ex-D1 MLMLM000201 (PageID.4740)(Ries).

5. A Taking Responsibility policy said: "Employees are prohibited from soliciting any type of product or activity on McDonald's premises." Ex-D26 MLMLM000834 (PageID.4784); Ex-D1 MLMLM000204 (PageID.4741).

6. A Safety and Security Procedures policy referred to the "safety and health of our employees," said, "Our goal is to provide you with a safe work environment," and implied that "our" meant McDonald's: "We believe that McDonald's restaurants are among the safest and most healthy workplaces anywhere." Ex-D26 MLMLM000835 (PageID.4785); Ex-D1 MLMLM000205 (PageID.4742)(copied from McDonald's provided template handbook, Ex-P75 (ECF 175-25, Page.ID3767).

7. Operational Security Guidelines said: "This document provides managers and *employees of McDonald's* restaurants with standard policies and procedures for secure operations," repeatedly refers to "working in a McDonald's restaurant," and says "Supervisors will determine appropriate disciplinary actions" for violations of the policy by "taking into consideration … how similar situations have been handled *throughout the McDonald's organization*. … *McDonald's management* retains the sole discretion to determine appropriate actions…. *McDonald's reserves the right* to modify these guidelines," and "*McDonald's also reserves the right to discipline and discharge employees* for engaging in [other] activities…. Nothing in these policies shall change the 'at will' employment status of *McDonald's employees*. This means that employees have the right to terminate

35

their employment at any time … and *McDonald's retains the same right*." Ex-D18 MLMLM000478 (PageID.4773)(emphases added).

8. A Grooming Policy said: "It is *McDonald's policy* to stress the highest standards…." Ex-D17 MLMLM000946 (PageID.4760)(emphasis added).

9. Another workplace policy said: "At McDonald's we are very proud of the products we serve," and instructed workers to direct guests to McDonald's hotline and McDonald's website in response to inquiries. Ex-D1 MLMLM000211 (PageID.4744).

10. Barber's personnel file included a document titled "MCDONALD'S POLICY ON NON-DISCRIMINATION AND SEXUAL HARASSMENT," that said it is "McDonald's philosophy and policy to treat employees and applicants for employment fairly," "McDonald's prohibits sexual harassment of any employee," and "Sexual harassment … is inconsistent with McDonald's policies, practices, and management philosophy." Ex-D17 MLMLM000951 (PageID.4763).

11. Another version of the same Discrimination and Harassment policy in other Plaintiffs' folders said that "MLMLM McDonald's" prohibits discrimination and harassment, and that "Discrimination or harassment of an employee or applicant, whether by another employee, customer, supplier, vendor, *McDonald's (or its employees)*, franchisee (or their employees), or other individuals present in the work environment, will not be tolerated." Ex-D1 MLMLM000208 (PageID.4743)(emphasis added).

12. Special Store Rules said: "Misuse of company products is a violation of McDonald's policy and is a terminable offense. Misuse of company products include: A. Giving away food to … other McDonald's employees without approval of a manager." Ex-D17 MLMLM00948 (PageID.4761).

McDonald's points to a single page among all these policies titled "McDonald's Employement [sic]," which said: "The McDonald's restaurant you work at is owned and operated by an independent *McDonald's* Franchisee (your 'owner/operator'). This is your employer."[96] As McDonald's concedes, there is no evidence that Anibal ever saw that document.[97] Ries testified she does not remember reading or initialing the document.[98] Even if she had, a jury could find that the document does not make Plaintiffs' understanding that Franchisee acted on McDonald's behalf, or that "MLMLM" was part of McDonald's,

---

[96] Ex-D26 MLMLM000845 (PageID.4790) (emphasis added).
[97] Ex-F, Anibal Depo 41:22-42:18 (PageID.4849-4850); Ex-D26 MLMLM000845 (PageID.4790).
[98] Ex-E, Ries Depo 204:8-15 (PageID.4838; Ex-D1 MLMLM000215 (PageID.4746).

unreasonable; the document identifies the employer as a "McDonald's" entity, and nowhere

states "MLMLM is your employer."

A jury could find that Plaintiffs reasonably believed Franchisee was McDonald's agent,

and this belief was caused by McDonald's "act[s] or neglect." *Grewe*, 404 Mich. at 253.

### 4.   McDonald's "Reliance" Argument Is Meritless.

There is no merit to McDonald's argument that Plaintiffs cannot establish apparent

agency because they cannot show that their belief that Franchisee was McDonald's agent

"factored into their decision to accept employment with the franchise." Mot. at 32

(PageID.3336). "Detrimental reliance" is a not an element of an apparent agency claim under

Title VII. *See* Restatement (Third) of Agency §2.03 cmt. e (2006)("To establish that an agent

acted with apparent authority, it is *not* necessary for the plaintiff to establish that the principal's

manifestation induced the plaintiff to make a detrimental change in position.")(emphasis added).

Nor is detrimental reliance stated as an element in most Michigan cases.

To the extent "reliance" is an element of apparent agency under Michigan law, Plaintiffs'

choice to accept employment and continue working while believing Franchisee was part of, or

acting on behalf of, McDonald's, is sufficient to raise a jury question. Michigan courts have

found an inference of reliance sufficient to defeat summary judgment in apparent agency cases

based on commonsense understandings about the differences between working with an

individual or small business and a large organization. In *Peters v. Berman*, 2008 WL 2744421, at

*3 (Mich. Ct. App. July 15, 2008) (unpublished), the court held that defendant law firm could be

liable based on ostensible agency where plaintiffs were harmed by inadequate representation

from an attorney who had left the firm without the firm informing plaintiffs of his departure. The

court held that any "reliance" necessary to show ostensible agency was established because:

> There is a significant difference between retaining a 40-attorney law firm with the attendant support staff and services, and retaining a solo practitioner with no staff and possibly no malpractice insurance or experience. … [A] more extensive support structure reduces the likelihood that any aspect of a case that requires an attorney's attention would be missed or forgotten.

*Id.* The court did not insist on direct evidence that plaintiffs chose to continue working with the attorney because of their belief that he continued to work at the defendant firm. The inference created by the generally understood differences between a solo practitioner and a 40-attorney firm was enough. Similar reasoning precludes summary judgment here. A jury could find that there is a significant difference between working for, or under the control of, a global company with attendant legal and human resources staff and expertise, and working for a small business that may not be adequately equipped to comply with worker-protection laws.

Alternatively, Plaintiffs have presented affirmative evidence of "reliance:" they each chose to work at McDonald's rather than another small local company, and they did not know the difference between franchised and company owned restaurants, nor did they know that McDonald's did not ultimately employ or control them and their workplace. Ex-E, Ries Deposition 218:3-6 (PageID.4841)("I didn't think I worked for just a small company, I thought I worked for the whole corporation.").[99] In *Crinkley v. Holiday Inns, Inc.*, 844 F.2d 156, 167 (4th Cir. 1988), the court held that evidence that plaintiff chose to stay at a Holiday Inn motel (rather than another kind of motel) and did not know the difference between a franchise-owned inn and a company-owned inn was sufficient "to raise a jury issue" regarding ostensible agency. The same reasoning precludes summary judgment here.[100]

---

[99] Ex-A, Ries Declaration ¶¶2-5 (PageID.4812-4814); Ex-B, Barber Declaration ¶¶5-9 (PageID.4816-4818); Ex-C, Bishop Declaration ¶¶5-10 (PageID.4821-4823); Ex-D, Anibal Declaration ¶¶4-8 (PageID.4826-4828).

[100] In *Little v. Howard Johnson Co.*, 183 Mich.App. 675, 683 (1990), there was no evidence that the slip-and-fall plaintiff "justifiably expected that the walkway would be free of ice and snow because she believed that defendant [rather than another business] operated the restaurant." Here, by contrast, Plaintiffs have presented evidence that they reasonably expected McDonald's to

When Plaintiffs sought employment at McDonald's, they believed it was a large

company such that working at McDonald's would involve a steady job in a safe environment

because, as a large company with standardized systems, McDonald's would make sure they were

treated appropriately.[101] The court in *Salazar* found materially identical evidence sufficient to

raise a fact dispute regarding "reliance." *Salazar*, 2106 WL 4394165, at *13. McDonald's cites

deposition testimony in which Plaintiffs answered questions regarding why they chose to apply

to the Mason McDonald's, in particular. Mot. at 35-36 (PageID.3339-3340). That testimony is

consistent with Plaintiffs' evidence regarding their reasons for applying to work at McDonald's

generally (and their understanding that the Mason McDonald's was part of McDonald's as a

whole).[102]

In addition, in *Aero Taxi-Rockford*, the court held there was sufficient evidence of

"reliance" to defeat summary judgment because plaintiffs believed "[one entity, KH] was simply

[another entity, GM's] agent and that they could look beyond KH to GM to obtain satisfaction"

for their claims. 2006 WL 1479915, at *7. Plaintiffs here similarly thought they could look to

McDonald's for relief from employment law violations and continued working at McDonald's in

---

prevent or address mistreatment of employees because they believed McDonald's had ultimate
control over their workplace and the resources to address sexual harassment. Ex-H, Bishop
Deposition 118:2-119:6, 121:6-3 (PageID.4879)(Bishop tried to call McDonald's corporate to
address sexual harassment); Ex-A, Ries Declaration ¶6 (PageID.4814); Ex-B, Barber Declaration
¶10 (PageID.4819); Ex-C, Bishop Declaration ¶11 (PageID.4823); Ex-D, Anibal Declaration ¶9
(PageID.4828).

[101] Ex-A, Ries Declaration ¶4 (PageID.4813); Ex-B, Barber Declaration ¶7 (PageID.4817); Ex-C,
Bishop Declaration ¶7 (PageID.4822); Ex-D, Anibal Declaration ¶7 (PageID.4826-4827).
[102] Ex-A, Ries Declaration ¶4 (PageID.4813); Ex-B, Barber Declaration ¶7 (PageID.4817); Ex-C,
Bishop Declaration ¶7 (PageID.4822); Ex-D, Anibal Declaration ¶7 (PageID.4826-4827).

part because of that belief.[103] McDonald's non-binding out-of-circuit cases do not require a contrary ruling.[104]

### III.    Plaintiffs Have Standing To Seek Injunctive Relief

Contrary to McDonald's assertion, a single sentence of dicta in *Walmart v. Dukes* did not create a *per se* rule that former employees always lack standing to bring suit under Title VII for injunctive relief. *See Kassman v. KPMG LLP*, 925 F.Supp.2d 453, 468 (S.D.N.Y. 2013)("[I]t is a mistake to read *Dukes* as having adopted a 'blanket rule that always denies standing to ex-employees.'")(quotation omitted); *Tolton v. Day*, 2020 WL 2542129, at *37 (D.D.C. May 19, 2020)(*Dukes* did not create categorical rule against former employees' standing for injunctive relief). "Standing for purposes of [Title VII] was intended by Congress to be defined as broadly as permitted by Article III of the Constitution." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 517 (6th Cir. 1976).

---

[103] Ex-A, Ries Declaration ¶6 (PageID.4814); Ex-B, Barber Declaration ¶10 (PageID.4819); Ex-C, Bishop Declaration ¶11 (PageID.4823); Ex-D, Anibal Declaration ¶9 (PageID.4828).

[104] In *D.L.S. v. Maybin*, 130 Wash.App. 94, 100 (Wash. Ct. App. 2005), plaintiff gave a "frank admission" that she knew McDonald's Corporation was not her employer, and there was no suggestion that the plaintiff believed the franchisee was McDonald's agent. Unlike in *Cropp*, 2009 WL 10710585, at *6, Plaintiffs here have presented evidence that they were "familiar with, or relied upon McDonald's Corporation's reputation in seeking employment." *See* Ex-A, Ries Declaration ¶4 (PageID.4813); Ex-B, Barber Declaration ¶7 (PageID.4817); Ex-C, Bishop Declaration ¶7 (PageID.4822); Ex-D, Anibal Declaration ¶7 (PageID.4826-4827). Unlike here, the plaintiffs in *Walton v. May*, 2020 WL 5578422, at *3 (M.D. Ga. July 8, 2020) (unpublished), relied simply on the existence of a company sign outside a building to support an apparent agency claim. In *Mann v. Prudential Real Estate Affiliates, Inc.*, 1990 WL 205286, at *5, n.2 (N.D. Ill. Dec. 10, 1990) (unpublished), the plaintiffs made "no allegations" of any acts by the alleged principal that could cause their belief in the agent's authority. In *O'Banner v. McDonald's Corp.*, 173 Ill.2d 208, 213 (1996), the plaintiff customer "stated only that he slipped and fell in the restroom of a McDonald's restaurant," with "no indication as to why he went to the restaurant." Finally, the unpublished decision in *Wright*, 2016 WL 1060341, at *10, applied a standard for establishing "reliance" under Virginia law unsupported by Title VII or Michigan law, and moreover, unlike the plaintiff in *Wright*, plaintiffs here submitted evidence that they continued working in part because they thought McDonald's controlled their workplace. Ex-A, Ries Declaration ¶6 (PageID.4814); Ex-B, Barber Declaration ¶10 (PageID.4819); Ex-C, Bishop Declaration ¶11 (PageID.4823); Ex-D, Anibal Declaration ¶9 (PageID.4828).

Thus, former employees need only show that they "would seriously consider a job" with the employer once the discriminatory practices are remedied. *Cleveland Branch, N.A.A.C.P. v. City of Parma, Oh.*, 263 F.3d 513, 529 (6th Cir. 2001)(victim of hiring discrimination has standing to sue even if he "does not express a present concrete interest in obtaining employment in [the discriminatory organization]"). Here, Plaintiffs, who have worked in a variety of fast food and other service industry jobs, have an obvious interest in future employment with McDonald's, America's second largest employer.

**CONCLUSION**

Material issues of disputed fact with respect to joint employer and apparent agency preclude summary judgment here.


Respectfully Submitted,


By:/s/ Eve H. Cervantez
Eve H. Cervantez                              Darcie R. Brault (P43864)
Elizabeth Vissers                             McKnight, Canzano, Smith,
Altshuler Berzon, LLP                         Radtke & Brault, P.C.
177 Post Street, Suite 300                    423 N. Main Street, Suite 200
San Francisco, CA 94108                       Royal Oak, MI  48067
(415) 421-7151                                (248) 354-9650
ecervantez@altshulerberzon.com                dbrault@michworkerlaw.com
evissers@altshulerberzon.com

Gillian Thomas
American Civil Liberties Union
Women's Rights Project
125 Broad Street
New York, NY 10004
(212) 284-7356
gthomas@aclu.org

*Attorneys for Plaintiffs*


Dated:  July 9, 2021

## CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2021, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all ECF participants.

<div style="margin-left: 40%;">

Respectfully submitted,

ALTSHULER BERZON LLP

By:/s/ Eve H. Cervantez
Eve H. Cervantez
Elizabeth Vissers
Altshuler Berzon, LLP
177 Post Street, Suite 300
San Francisco, CA 94108
(415) 421-7151
ecervantez@altshulerberzon.com
evissers@altshulerberzon.com

</div>

Dated: July 9, 2021