UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNA RIES, KATLYN BARBER, JOANNE
BISHOP, and EMILY ANIBAL, on behalf of
themselves and all those similarly situated,

       Plaintiffs,

                                 Case No. 20-cv-0002-HYJ-RSK

v.

                                 Hon. Hala Y. Jarbou

McDONALD'S USA, LLC, McDONALD'S       Mag. Judge Ray Kent
CORPORATION, MLMLM CORPORATION
d/b/a McDONALD'S, and M.A.A.K.S., Inc.
d/b/a McDONALD'S of Williamston,
       Defendants.

_____

**PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**ORAL ARGUMENT REQUESTED**

Plaintiffs Jenna Ries, Katlyn Barber, Joanne Bishop, and Emily Anibal, on behalf of themselves and the Settlement Class Members ("Settlement Class"), respectfully move for preliminary approval of the proposed Class Action Settlement ("Settlement" or "Settlement Agreement") with Defendants MLMLM Corporation and M.A.A.K.S., Inc. ("Settling Defendants" or "Franchise Defendants") as set forth in the Settlement Agreement, **Ex. A**.

Plaintiffs request that, pursuant to Fed. R. Civ. P. 23(e), the Court approve the proposed Notice (**Ex. A, Ex. 1**) and Claim Form (**Ex. A, Ex. 2**), and request that the Court enter the proposed Preliminary Approval Order (**Ex. A, Ex. 3**), for the reasons more fully set forth in the accompanying brief.

Respectfully submitted,

By: /s/ *Darcie R. Brault*
Darcie R. Brault (P43864)
MCKNIGHT, CANZANO, SMITH,
RADTKE & BRAULT, P.C.
423 N. Main Street, Suite 200
Royal Oak, MI 48067
(248) 354-9650
dbrault@michworkerlaw.com

Eve H. Cervantez
ALTSHULER BERZON, LLP
177 Post Street, Suite 300
San Francisco, CA 94108
(415) 421-7151
ecervantez@altshulerberzon.com

Gillian Thomas
AMERICAN CIVIL LIBERTIES UNION
WOMEN'S RIGHTS PROJECT
125 Broad Street
New York, NY 10004
(212) 284-7356
gthomas@aclu.org

*Class Counsel*

Dated: April 4, 2022

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNA RIES, KATLYN BARBER, JOANNE
BISHOP, and EMILY ANIBAL, on behalf of
themselves and all those similarly situated,

       Plaintiffs,

                                       Case No. 20-cv-0002-HYJ-RSK

v.

                                       Hon. Hala Y. Jarbou

McDONALD'S USA, LLC, McDONALD'S       Mag. Judge Ray Kent
CORPORATION, MLMLM CORPORATION
d/b/a McDONALD'S, and M.A.A.K.S., Inc.
d/b/a McDONALD'S of Williamston,
       Defendants.

_____

**PLAINTIFFS' BRIEF IN SUPPORT OF UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................1

II.  PROCEDURAL HISTORY.....................................................................1

III.  FACTUAL BACKGROUND...................................................................3

IV.  THE SETTLEMENT AGREEMENT AND TERMS ...............................4

    A.  The Relief and Settlement Consideration ........................................4

    B.  Settlement Class.................................................................................5

    C.  Release of Claims ..............................................................................6

    D.  Class Notice .......................................................................................6

V.  ARGUMENT...........................................................................................7

    A.  The Proposed Settlement Satisfies the Standard for Preliminary Approval ......7

        1.  The Class Representatives and Class Counsel Have Adequately Represented the Class and the Proposed Settlement Was Negotiated at Arm's-Length................................................................8

        2.  The Relief Provided to the Class Is More than Adequate..................9

        3.  The Costs, Risks, and Delay of Trial and Appeal Favor Settlement Approval ........................................................................9

        4.  The Method of Distributing Relief and Processing Claims Is Effective......................................................................................11

        5.  The Proposed Award of Attorneys' Fees is Fair..............................12

        6.  The Settlement Treats Class Members Equitably............................13

        7.  The Settlement is Consistent with the Public Interest .....................14

        8.  The Amount of Discovery Conducted Favors Approval .................14

    B.  The Proposed Notice is Proper ........................................................1

VI.  CONCLUSION......................................................................................16

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bailey v. Verso Corp.*,
  337 F.R.D. 500 (S.D. Ohio 2021) ................................................................7

*Brotherton v. Cleveland*,
  141 F. Supp. 2d 894 (S.D. Ohio 2001) .......................................................11

*Garner Props. & Mgmt., LLC v. City of Inkster*,
  2020 WL 4726938 (E.D. Mich. Aug. 14, 2020) ..........................................14

*Garner Props. & Mgmt., LLC v. City of Inkster*,
  333 F.R.D. 614 (E.D. Mich. 2020) .......................................................8, 11

*Granada Invs., Inc. v. DWG Corp.*,
  962 F. 2d 1203 (6th Cir.1992) ....................................................................14

*Hadix v. Johnson*,
  322 F.3d 895 (6th Cir. 2003) ......................................................................14

*In re Auto. Parts Antitrust Litig.*,
  2016 WL 9280050 (E.D. Mich. Nov. 28, 2016) ...........................................8

*In re Cardizem CD Antitrust Litig.*,
  218 F.R.D. 508 (E.D. Mich. 2003) ......................................................10, 14

*In re Oil Spill*,
  910 F. Supp. 2d 891 (E.D. La. 2012) .........................................................13

*In re Packaged Ice Antitrust Litig.*,
  2011 WL 717519 (E.D. Mich. Feb. 22, 2011) ...........................................11

*In re Polyurethane Foam Antitrust Litig.*,
  168 F. Supp. 3d 985 (N.D. Ohio 2016) ......................................................14

*In re Whirlpool Corp. Front-loading Washer Prods. Liab. Litig.*,
  2016 WL 5338012 (N.D. Ohio Sept. 23, 2016) ..........................................12

*IUE-CWA v. Gen. Motors Corp.*,
  238 F.R.D. 594 (E.D. Mich. 2006) .............................................................10

*Kis v. Covelli Enters., Inc.*,
  2020 WL 2812405 (N.D. Ohio May 29, 2020) ...........................................13

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ....................................................................................15

*Sheick v. Auto. Component Carrier LLC*,
    2010 WL 4136958 (E.D. Mich. Oct. 18, 2010) ............................................................10

*UAW v. Gen. Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007) .............................................................................................15

**Other Authorities**

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................................................14

Fed. R. Civ. P. 23(c)(3) .............................................................................................................15

Fed. R. Civ. P. 23(e)(1) .............................................................................................................15

Fed. R. Civ. P. 23(e)(1)(A) .........................................................................................................7

Fed. R. Civ. P. 23(e)(1)(B) .........................................................................................................7

Fed. R. Civ. P. 23(e)(2) ...........................................................................................................7, 8

Fed. R. Civ. P. 23(e)(3) ...............................................................................................................7

Fed. R. Civ. P. 23(h) .................................................................................................................12

William B. Rubenstein, 4 *Newberg on Class Actions* § 13 (5th ed.)..................................7, 11

## I.      INTRODUCTION

Plaintiffs and Settling Defendants (collectively, the "Parties") have reached a

proposed $1.5 million Settlement resolving all allegations that Defendants violated the law by

allegedly tolerating a sexually hostile work environment at the McDonald's restaurant located

at 730 North Cedar Street in Mason, Michigan (the "Mason McDonald's").

The Parties vigorously litigated this matter, including extensive discovery and

briefing on summary judgment and class certification. Following arm's-length negotiations,

they reached this Settlement Agreement. It will provide substantial relief: Class Members are

entitled to awards averaging approximately $10,000 each, with the actual amount allocated to

each individual determined proportionally by the number of shifts she worked with alleged

harasser Shawn Banks ("Banks") and the sexual harassment she experienced. The benefits to

the Settlement Class are fair, reasonable, and adequate, especially when weighed against the

risks of continued litigation.

## II.     PROCEDURAL HISTORY

On November 12, 2019, Plaintiff Ries commenced this class action against

McDonald's USA, LLC, McDonald's Corporation ("Corporate Defendants") and Franchise

Defendants in Ingham County, Michigan.[1] Plaintiff Ries alleged that both Franchise and

Corporate Defendants violated the ELCRA and Title VII's prohibitions against sexual

harassment. On January 2, 2020, Franchise Defendants removed the matter to this Court.[2]

Plaintiffs filed amended complaints adding Katlyn Barber, Joanne Bishop, and Emily

Anibal as Named Plaintiffs. The Third Amended Complaint was filed on April 8, 2021.[3]

---

[1] Complaint (ECF 1-2, PageID.10).
[2] Notice of Removal (ECF 1, PageID.1).
[3] FAC (ECF 36, PageID.377); SAC (ECF 51, PageID.685); TAC (ECF 142, PageID.2447).

1

The Parties completed extensive fact and expert discovery, which included substantial document productions, interrogatories and requests for admission, expert reports, five discovery-related motions, and twenty-two depositions.

The Court granted Corporate Defendants' motion for summary judgement, dismissing McDonald's from the case.[4] The Court granted Franchise Defendants' motion for summary judgment in part, finding that Plaintiffs' request for injunctive relief was moot, but denied the remainder of that motion on December 6, 2021.[5]

On June 25, 2021, Plaintiffs filed a motion seeking class certification for a class of approximately 97 women below the level of Assistant Manager who worked at least one shift with Banks since November 12, 2016 ("Class Members").[6] Franchise Defendants filed a motion opposing class certification.[7] The Court granted Plaintiffs' motion for class certification with respect to Franchise Defendants, certifying a class consisting of:

> All women who worked in a position below the level of Assistant Manager at Defendants' McDonald's restaurant located at 730 North Cedar Street in Mason, Michigan during at least one shift with Shawn Banks since November 12, 2016.[8]

Because the statute of limitations is shorter for Title VII, the Court also certified a Title VII subclass, consisting of:

> All members of the Class who worked during at least one shift with Shawn Banks since January 12, 2019.[9]

---

[4] Opinion (ECF 270, PageID.6330).
[5] Opinion (ECF 272, PageID.6348).
[6] Motion for Class Certification (ECF 175, PageID.3655).
[7] Motion for Determination that Class Certification is not Appropriate for this Case (ECF 160, PageID.3349).
[8] Order (ECF 286, PageID.6462).
[9] *Id.*

The Court appointed attorneys Darcie Brault of McKnight, Canzano, Smith, Radtke & Brault, P.C., Eve Cervantez of Altshuler Berzon, LLP, and Gillian Thomas of the American Civil Liberties Union as Class Counsel.[10]

Throughout this case the Parties conducted arms-length settlement negotiations, including a facilitative mediation with Mediator Jon March, and several exchanges of correspondence facilitated by Mediator March. After the Court certified the Class the Parties redoubled their efforts through calls and correspondence among counsel, and reached a settlement in principle shortly before the deadline to file a Rule 23(f) petition for permission to appeal the Court's class certification ruling. **Ex. A**.

### III.        FACTUAL BACKGROUND

Franchise Defendants operated eleven McDonald's restaurants, including the Mason McDonald's. Banks worked for Franchise Defendants as a swing manager.  Plaintiffs alleged that McDonald's Corporate Defendants were their joint employers and/or that Franchise Defendants were ostensible agents of McDonald's Corporate Defendants.

Plaintiffs alleged that Banks verbally and physically harassed them and other female employees at the Mason McDonald's: Banks constantly made inappropriate sexual comments, graphic appraisals of women's bodies, and boasts about his sexual exploits. Banks regularly demanded sex from female employees. Banks grabbed female employees' crotches, breasts, and buttocks. Banks pushed, "dry humped" and rubbed himself against female employees.[11]

---

[10] *Id.*
[11] TAC at PageID.2460, 2463, 2467.

Plaintiffs alleged that Defendants failed to employ adequate sexual harassment policies, procedures, and training and that their managerial employees failed to stop Banks' harassment when it was made known to them.[12]

Banks ultimately quit shortly after Franchise Defendants suspended him in March 2019. Franchise Defendants sold their interest in the Mason McDonald's and no longer operate any McDonald's restaurants.

## IV.       THE SETTLEMENT AGREEMENT AND TERMS

### A.       The Relief and Settlement Consideration

The Settlement provides a non-reversionary settlement fund of $1,500,000 ("Gross Settlement Payment"), which will be used to pay Court-approved litigation expenses and reasonable attorneys' fees to Class Counsel, incentive payments of $10,000 each to the Class Representatives for their assistance and releases in this matter, and settlement administrative costs, including the cost of printing and mailing Class Notice and settlement checks. The remaining funds ("Net Settlement Fund"), approximately $1,000,000, will be distributed to Class Members based on the Plan of Allocation:[13]

Class Members who submit timely Claim Forms (Ex. A, Ex. 2) will receive a pro-rata share of the Net Settlement Fund according to the following point system:

(a) One point allocated to each Settlement Class Member who worked between one and 10 shifts or fraction thereof with Banks, two points allocated to each Settlement Class Member who worked between 11-50 shifts with Banks, three points allocated to each Settlement Class Member who worked between 51-99 shifts with Banks, and four points allocated to each Settlement Class Member who worked 100 or more shifts with Banks, as determined by Franchise Defendants' time punch records and set forth in the Shift Overlap Chart, Ex. A, Ex. 5;

(b) Two points allocated to any Settlement Class Member who states that Banks touched her inappropriately;

---

[12] *Id.* at PageID.2457, 2459-2464.
[13] Ex. A at ¶¶5, 8(a)-(c), 9, 10(a)-(d).

4

(c) Two points allocated to any Settlement Class Member who states that she engaged in sexual relations with Banks because he pressured or coerced her to do so;

(d) Two points allocated to any Settlement Class Member who states that she was constructively discharged, *i.e.*, forced to quit rather than continue to work in the hostile work environment created by Banks, or was terminated after reporting the harassment.[14]

Settlement Class Members must attest to the veracity of their responses on the Claim Form under penalty of perjury, and their statements may be challenged by counsel for either Party based on Franchise Defendants' business records or prior sworn statements.[15]  If any Claim Form is found to be deficient, the Settlement Administrator will contact the Class Member and allow her an opportunity to cure the deficiency.[16]  Ultimately, the Settlement Administrator's decision with respect to the points to allocate to each Claim is final.[17]

### B.  Settlement Class

The Settlement Class is defined as:

"All women who worked in a position below the level of Assistant Manager at the McDonald's restaurant located at 730 North Cedar Street in Mason, Michigan during at least one shift with Shawn Banks since November 12, 2016."[18] Settlement Class membership will be determined by the Shift Overlap Chart, which is derived from Settling Defendants' time punch data. **Ex. A, Ex. 5.**

---

[14] *Id.* at ¶¶10(a)-(d).
[15] *Id.* at ¶17(o).
[16] *Id.* at ¶17(f).
[17] *Id.* at ¶17(o).
[18] Because certain Defendants in the original complaint were dismissed, the Parties have agreed the Settlement Class definition should reference women who worked at "the" McDonald's restaurant located at 730 North Cedar, rather than "Defendants'" McDonald's restaurant. This definition, therefore, differs slightly from the Court's.

### C.     Release of Claims

As set forth in full in the Settlement Agreement, in exchange for the above relief, the Settlement Class will release Franchise and Corporate Defendants and related entities from liability for all claims arising out of the facts alleged in the pleadings filed in this matter ("Released Claims").  Named Plaintiffs will give a broader release, releasing all claims against Franchise and Corporate Defendants arising out of their employment with any Defendant. [19]

Any Class Member who does not exercise her right to exclude herself, or "opt out" of the Settlement, will be bound by the terms of the Settlement, whether or not she files a Claim Form.[20]

### D.     Class Notice

The Settlement Administrator will mail Class Members a written "Class Notice," as approved by the Court, to their last known address.[21] *See* **Ex. A, Ex. 1**. The Class Notice notifies Class Members that they must request an exclusion to pursue any Released Claims. The Settlement Administrator will make efforts, including skip-tracing using Social Security Numbers, to locate accurate addresses for Class Members.[22] The Settlement Administrator will also mail a reminder postcard to Class Members who fail to submit a Claim Form or Opt Out request.[23] The Settlement Administrator will maintain a public website that includes copies of pleadings and other relevant information.[24]

---

[19] *Id.* at ¶7.
[20] *Id.* at ¶11(a).
[21] *Id.* at ¶11.
[22] *Id.* at ¶¶17(c)-(e).
[23] *Id.* at ¶17(e).
[24] *Id.* at ¶17(m).

After reviewing bids from three third-party settlement administrators, Plaintiffs selected Settlement Services, Inc. because of their expertise in evaluating claims forms similar to the one at issue here.

## V.      ARGUMENT

### A.      The Proposed Settlement Satisfies the Standard for Preliminary Approval.

Class action settlements require court approval. Fed. R. Civ. P. 23(e); *Bailey v. Verso Corp.*, 337 F.R.D. 500, 505 (S.D. Ohio 2021).

The first step is preliminary approval of the proposed settlement. The court's primary objective is to determine whether to notify the class of the proposed settlement, invite class members' reaction, and schedule a final fairness hearing. William B. Rubenstein, 4 *Newberg on Class Actions* § 13:10 (5th ed.).

The 2018 amendments to Rule 23 codified the preliminary approval process. "The parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A). Notice "is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2)" as "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(B).

The court should consider the following factors to determine if it could find the proposed settlement is "fair, reasonable, and adequate:" Whether the  class representatives and class counsel have adequately represented the class; whether the proposal was negotiated at arm's length; whether the relief provided for the class is adequate, taking into account,  the costs, risks, and delay of trial and appeal, the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, the terms of any proposed award of attorney's fees, including timing of payment, any agreement required to be identified under Rule 23(e)(3); and whether the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

Historically, courts in the Sixth Circuit have considered factors comparable to those in Rule 23(e)(2) in determining whether to approve class action settlements.[25]  Plaintiffs address both here.

The Court is not required at the preliminary approval stage to determine whether it will grant final approval of the proposed settlement, only that it is likely that it would. *Garner Props. & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 626 (E.D. Mich. 2020).

### 1. The Class Representatives and Class Counsel Have Adequately Represented the Class and the Proposed Settlement Was Negotiated at Arm's-Length.

The first two factors of Rule 23(e)(2) (adequate representation by the class representative and class counsel and whether the settlement was reached at arm's length) are procedural and focus on the history and conduct of the litigation and settlement negotiations. Fed. R. Civ. P. 23 Advisory Committee's Note to 2018 Amendment.

Relevant considerations may include the experience and expertise of plaintiffs' counsel, the information available to counsel negotiating the settlement, the stage of the litigation and amount of discovery taken, the pendency of other litigation concerning the subject matter, the length of the negotiations, whether a mediator or other neutral facilitator was used, the manner of negotiation, whether attorneys' fees were negotiated with the defendant and if so how they were negotiated and their amount, and other factors that may demonstrate the fairness of the negotiations. *Id.*

---

[25] *See In re Auto. Parts Antitrust Litig.*, 2016 WL 9280050, at *5 (E.D. Mich. Nov. 28, 2016) (considering "(1) the likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement; (2) the complexity, expense, and likely duration of further litigation; (3) the opinions of class counsel and class representatives; (4) the amount of discovery engaged in by the parties; (5) the reaction of absent class members; (6) the risk of fraud or collusion; and (7) the public interest").

Here, the Court previously found that Class Counsel and Class Representatives are adequate to represent the Class.[26]  They are also adequate to negotiate a class settlement. Class Counsel are experienced class action and sexual harassment litigators who are well-versed in the underlying facts and claims of this case and worked diligently to negotiate a good settlement.

The settlement negotiations were at all times conducted at arm's-length, and sometimes with the assistance of an experienced neutral mediator. The negotiations were ongoing, taking place throughout discovery and motion practice. Resolution was reached only after fact and expert discovery was complete and after the Court had ruled on summary judgment and class certification.

Attorneys' fees will be presented for Court approval and were not separately agreed to by Settling Defendants.

### 2.    The Relief Provided to the Class Is More than Adequate.

The relief provided to the Settlement Class consists of a non-reversionary cash payment by Franchise Defendants of $1.5 million. Given the limited insurance policy available to Franchise Defendants, Class Counsel believe this payment represents adequate relief for the approximately 97 Class Members.  Even after deduction of settlement administrative expenses, and Court-approved attorneys' fees and costs and incentive payments to Named Plaintiffs, the Net Settlement Fund distributed to Settlement Class Members will average approximately $10,000 per Class Member.

### 3.    The Costs, Risks, and Delay of Trial and Appeal Favor Settlement Approval.

The Court should assess adequacy of relief to the class "with regard to a 'range of reasonableness,' which 'recognizes the uncertainties of law and fact in any particular case

---

[26] Opinion Certifying Class, ECF 285, PageID.6455-6556.

and the concomitant risks and costs inherent in taking any litigation to completion.'" *Sheick v. Auto. Component Carrier LLC,* 2010 WL 4136958, at *15 (E.D. Mich. Oct. 18, 2010) (quoting *IUE-CWA v. Gen. Motors Corp.,* 238 F.R.D. 583, 594 (E.D. Mich. 2006)). Risks must be weighed against the settlement consideration: The certainty of a cash settlement of $1.5 million, with distribution expected in 2022.

The Proposed Settlement is an excellent result when weighed against the time and costs of continued litigation. Plaintiffs are optimistic about the likelihood of ultimate success in this case, but success is never certain. The Court granted Corporate Defendants' motion for summary judgment. Although Plaintiffs believe that McDonald's is their joint employer, should be held responsible for the sexual harassment they suffered, and should be enjoined to change its inadequate policies and procedures for preventing sexual harassment going forward, Plaintiffs also understand that an appeal could take many years to resolve and may not succeed.

Franchise Defendants are represented by experienced counsel, and undoubtedly would continue to deny Plaintiffs' allegations, contest liability at the class trial, contest any individual Class Members' damages in individual hearings thereafter, and appeal any contrary result. Meanwhile, Franchise Defendants would be expending their limited insurance policy coverage on defense counsel, as opposed to compensating Class Members.

Moreover, in certifying the Class, this Court noted that it would be Plaintiffs' burden to prove that "*every shift Banks worked* … created a hostile work environment" and "[t]hat will not be an easy showing to make."[27]

"[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich.

---

[27] ECF 285 at PageID.6450.

10

2003). This is particularly true for class actions, which are inherently complex. William B.

Rubenstein, 4 *Newberg on Class Actions* § 13:44 (5th ed.) ("The law favors settlement,

particularly in class actions and other complex cases where substantial resources can be

conserved by avoiding lengthy trials and appeals.").

Weighing the settlement's benefits against the risks and costs of continued litigation,

the scale tilts toward approval. See *Garner Props.*, 333 F.R.D. at 627 (granting preliminary

approval of settlement "as fair, reasonable, and adequate because it provide[d] reasonable and

adequate benefits to the Class Members and reflect[ed] the parties' informed judgment as to

the likely risks and benefits of litigation").

Counsel's judgment "that settlement is in the best interests of the class 'is entitled to

significant weight, and supports the fairness of the class settlement.'" *In re Packaged Ice*

*Antitrust Litig.*, 2011 WL 717519, at *11 (E.D. Mich. Feb. 22, 2011) (quotation omitted).

Class Counsel have extensive experience in handling class actions, have shepherded this case

through discovery, dispositive motions, and class certification, and have analyzed the risks

and benefits of trial and settlement.  Thus, their determination that the Settlement is adequate

further counsels in favor of preliminary approval.

### 4.    The Method of Distributing Relief and Processing Claims Is Effective.

To recover, Class Members must file a simple claim form, which mirrors the reality

that, if the case were tried rather than settled, each Class Member would ultimately be

required to testify in order to recover.  The claims process was designed to be clear and

efficient, with calculation of awards based on a number of objective factors, to be determined

by the Settlement Administrator based on Settling Defendants' time punch records and Class

Members' sworn statements. *See Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 901 (S.D.

Ohio 2001). Class Members may easily provide the required information, by filling out a

simple Claim Form and returning it via U.S. mail, email, or online through a website. The proposed Settlement Administrator, Settlement Services, Inc., is experienced and well qualified to administer the process, and was selected for its expertise only after counsel solicited and reviewed bids from three prospective administrators. Class members who need assistance may call the Settlement Administrator's toll free number or seek advice from Class Counsel.  Class Members who submit deficient Claim Forms will be given the opportunity to correct them.

### 5.    The Proposed Award of Attorneys' Fees is Fair.

The Settlement provides that attorneys' fees will be paid out of the Gross Settlement Fund subject to Court approval.[28]  The Court has the ultimate authority to determine what, if any, attorneys' fees should be awarded. *See* Fed. R. Civ. P. 23(h). Any amount of fees and expenses requested but not awarded will remain in the Settlement Fund to be distributed to Class Members and will not revert to Settling Defendants.

Plaintiffs will request an award of 25% of the Gross Settlement Fund, $375,000, as attorneys' fees. This amount represents much less than half of a reasonable lodestar calculation.  Plaintiffs will also request $70,000 in expenses, which represents approximately half their actual expenses, including expert fees and deposition costs. Class Counsel will file a motion for attorneys' fees within sixty days of an order granting preliminary approval and post the filed motion to the Settlement website. The post will be substantially prior to the deadline for Class Members to opt out or object to the Settlement, and prior to final approval. In this way, the motion and supporting materials can be considered by Class Members in determining how to exercise their rights under the Settlement.[29] *In re Whirlpool Corp. Front-*

---

[28] Ex. A at ¶8(b).
[29] That Counsel will be asking for attorneys' fees and the reimbursement of costs is expressly noted in the proposed Notice. The proposed Notice also provides additional information for

*loading Washer Prods. Liab. Litig.*, 2016 WL 5338012, at *19 (N.D. Ohio Sept. 23, 2016)

(addressing attorney fee motion in conjunction with final approval).

### 6.   The Settlement Treats Class Members Equitably.

The Settlement's Plan of Allocation[30] treats Class Members equitably because

"apportionment of relief among class members takes appropriate account of differences

among their claims." *Kis v. Covelli Enters., Inc.*, 2020 WL 2812405, at *5 (N.D. Ohio May

29, 2020). Plaintiffs alleged that the entire restaurant constituted a hostile work environment

during shifts when Banks was present. Accordingly, the Settlement allocates funds to any

woman who worked shifts with Banks, with the amount increasing based on the number of

overlapping shifts, as determined through Franchise Defendants' time punch records.  Class

members are awarded additional funds if they state under penalty of perjury that Banks

touched them inappropriately, that they had sexual relations with Banks because he coerced

them to do so, or if they were forced to quit as a result of Banks' harassment (constructive

discharge) or terminated because they reported the harassment.

The Plan of Allocation provides that Class members will receive awards based on the

extent of the harassment they experienced at the Mason McDonald's. By considering the

extent of injury, the Settlement apportions relief in an equitable manner among Class

Members. *See In re Oil Spill,* 910 F. Supp. 2d 891, 957 (E.D. La. 2012) ("[T]here is nothing

improper in the parties' negotiation of claims frameworks that compensate class members in

light of the strength of their claims.").

Separately, the Settlement Agreement provides that Plaintiffs may seek incentive

awards of up to $10,000 for each Class Representatives. Such awards are justified as an

---

when the motion for attorneys' fees will be filed and how Class Members can access that
information.
[30] Ex. A at ¶10(a)-(d).

incentive for the efforts that Named Plaintiffs take on behalf of the class. *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003); *In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985, 1000 (N.D. Ohio 2016) (noting "the Sixth Circuit has endorsed the use of incentive awards"). The Incentive Awards are subject to Court approval, and any amount not approved will revert to the Net Settlement Fund for distribution to the Class.

### 7.  The Settlement is Consistent with the Public Interest.

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Cardizem*, 218 F.R.D. at 530 (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F. 2d 1203, 1205 (6th Cir.1992)). Moreover, the public interest is best served in this case by providing relief to Class Members as expeditiously as possible. *Garner Props. & Mgmt., LLC v. City of Inkster*, 2020 WL 4726938, at *10 (E.D. Mich. Aug. 14, 2020) (concluding settlement was in the public interest where "allowing settlement in this matter will promote the fair and expeditious resolution of the matter").

### 8.  The Amount of Discovery Conducted Favors Approval.

The Parties completed all fact and expert discovery, except for that related to individual damages. This discovery (and the Court's rulings on summary judgment and class certification) allowed the Parties to make informed decisions while negotiating the Agreement.

### B.  The Proposed Notice is Proper.

Rule 23(e)(1) provides that a court must direct notice in a "reasonable manner" to all class members who would be bound by a proposed settlement. This should be the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B).

Rule 23(e) notice must contain a summary of the litigation sufficient "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 629 (6th Cir. 2007) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). In addition, the "notice must clearly and concisely state in plain, easily understood language:" (1) the nature of the action; (2) the class definition; (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through counsel; (5) that the court will exclude from the class any member who validly requests exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on class members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B). The Class Notice meets these requirements. **Ex. A, Ex. 1**.

The Class Notice clearly and concisely summarizes the Settlement, the available benefits, the actions that Class Members must take to participate in the Settlement, and the relevant deadline for filing a Claim Form.[31] It lays out the Class definition, and explains that Class Members may request exclusion from the Settlement, or may enter an appearance through counsel, and deadlines therefore.[32] Likewise, the Notice describes Class Members' right to object to the Settlement.[33] The Notice also directs recipients to a website which contains additional information, including pleadings.[34]

The Settlement Administrator will mail notice to Class Members and additionally email notices to available email addresses. Prior to mailing Class Notice, the Settlement

---

[31] Ex. A, Ex. 1, pp. 4-10.
[32] *Id.* at pp. 4, 6-7, 9.
[33] *Id.* at p. 8.
[34] *Id.* at p. 10.

Administrator will confirm addresses and take other action to ensure that Class Members are notified.[35]

The Notice and notice plan are calculated to inform as many potential Class Members as possible of their rights under the Settlement Agreement.

## VI.   CONCLUSION

Plaintiffs respectfully request the Court 1) preliminarily approve the Settlement Agreement using the proposed agreed upon order, Exhibit A, Exhibit 3; 2) approve the Class Notice and Claims Form, Exhibit A, Exhibits 1 and 2; 3) set an objection, opt out, and claims deadline for 60 days after Notice is mailed; and 4) schedule a Rule 23(e)(2) fairness hearing approximately 130 days after preliminary approval.

Respectfully submitted,

By:  /s/ *Darcie R. Brault*
Darcie R. Brault (P43864)
MCKNIGHT, CANZANO, SMITH,
RADTKE & BRAULT, P.C.
423 N. Main Street, Suite 200
Royal Oak, MI 48067
(248) 354-9650
dbrault@michworkerlaw.com

Gillian Thomas
AMERICAN CIVIL LIBERTIES UNION
WOMEN'S RIGHTS PROJECT
125 Broad Street
New York, NY 10004
(212) 284-7356
gthomas@aclu.org

*Class Counsel*

Dated: April 4, 2022

Eve H. Cervantez
ALTSHULER BERZON, LLP
177 Post Street, Suite 300
San Francisco, CA 94108
(415) 421-7151
ecervantez@altshulerberzon.com

---

[35] Ex. A at ¶¶17(b)-(e).

## CERTIFICATE OF COMPLIANCE WITH W.D. MICH. LCivR 7.3(b)(i)

I certify that Plaintiffs' Brief in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement contains 4287 words in compliance with W.D. Michigan Local Civil Rule 7.3(b)(i) as prepared using Microsoft Word 12 pt. Times New Roman type. The word count was verified using Microsoft Word for Windows 10.

Respectfully Submitted,

McKNIGHT, CANZANO, SMITH,
RADTKE & BRAULT, P.C.

By:  */s/Darcie R. Brault*
Darcie R. Brault (P43864)
Attorneys for Plaintiff
423 N. Main Street, Suite 200
Royal Oak, MI 48067
(248) 354-9650
dbrault@michworkerlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 4, 2022, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all ECF participants.

<div style="margin-left: 50%;">

Respectfully Submitted,

McKNIGHT, CANZANO, SMITH,
RADTKE & BRAULT, P.C.

By:  */s/Darcie R. Brault*
Darcie R. Brault (P43864)
Attorneys for Plaintiff
423 N. Main Street, Suite 200
Royal Oak, MI 48067
(248) 354-9650
dbrault@michworkerlaw.com

</div>